UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| Banyan Cay Resort & Golf, LLC, *et al.*[1] | ) | |
| | ) | Case No. 23-12386 |
| | ) | |
| Debtor. | ) | (Joint Administration Pending) |
| | ) | |

## DEBTOR IN POSSESSION'S APPLICATION FOR EMPLOYMENT OF KEEN-SUMMIT CAPITAL PARTNERS LLC AS MARKETING AGENT AND BROKER

The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") respectfully request an order of the court authorizing the employment of Keen-Summit Capital Partners LLC ("Keen-Summit") as marketing agent and broker for the Debtors, effective as of the Petition Date (as defined herein) and states as follows in support of this application (this "Application"):[2]

### Background

1.     On March 29, 2023 (the "Petition Date"), each of the Debtors, other than Banyan Cay Mezzanine Borrower, LLC, filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").  Banyan Cay Mezzanine Borrower, LLC filed its petition for relief on February 16, 2023.

---

[1]  The Debtors are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf LLC; (iv) Banyan Cay Dev. LLC; (v) Banyan Cay Villas, LLC; (vi) Banyan Cay Maintenance, LLC.  The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401 .

[2]  In support of this Application, the Debtor relies on the *Declaration of Matthew Bordwin in Support of the Application for the Employment and Retention of Keen-Summit Capital Partners, LLC as Marketing Agent and Broker to the Debtor* (the "Bordwin Declaration"), attached hereto as **Exhibit B**.

2.      The Debtors continue to operate their business and manage their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No trustee or examiner has been appointed in the Chapter 11 Cases.

4.      No committee has been appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

5.      The Debtors require services of a marketing agent and broker to assist the Debtors in the marketing and sale of substantially all of the real property owned by the Debtors in West Palm Beach, Florida (collectively, the "Properties").

## Jurisdiction and Venue

6.      The United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Bankruptcy Court in connection with this Application to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 105(a), 327(a), 330, and 507(a)(2) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2014-1 and 2016-1 of the Local Rules of the United States bankruptcy Court for the Southern District of Florida (the "Local Rules").

## Relief Requested

9.      By this application, the Debtors seek to employ Keen-Summit as marketing agent and broker, effective as of the Petition Date, in accordance with the terms and conditions set forth

in that certain Retention Agreement, dated as of March 16, 2023, and that certain Supplemented and Restated Retention Agreement, dated as of March 22, 2023, between the Debtors and Keen-Summit (collectively, the "Keen-Summit Retention Agreement"), a copy of which is attached hereto as Exhibit 1 to Exhibit B (the Bordwin Declaration) and incorporated herein by reference, except as otherwise described herein.

10.     The Debtors seek the retention of Keen-Summit as its marketing agent and broker pursuant to section 327(a) of the Bankruptcy Code, which provides that, subject to the approval of the bankruptcy court, a debtor:

> …may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11.     Additionally, Bankruptcy Rule 2014(a) requires that an application for retention of professionals pursuant to section 327 must include:

> …specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

12.     In addition, under section 328(a) of the Bankruptcy Code, with bankruptcy court approval, a debtor in possession may employ professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of Keen-Summit's employment, as disclosed in this Application, are reasonable and satisfy the standard for retention under section 328(a) of the Bankruptcy Code.

13.     Accordingly, for the reasons stated herein and in the Bordwin Declaration, the Debtors submit that it is in the best interest of its estate to retain Keen-Summit as their marketing agent and broker in these Chapter 11 Cases.

## Keen-Summit's Qualifications

14.     Keen-Summit provides real estate disposition and workout services across North America and beyond.  Their work is characterized by creativity, determination, alertness to opportunity, good judgment, flexibility, and the strong desire to help their clients meet their goals. They have been engaged in a variety of matters both in and out of bankruptcy court, including the $148,383,298 sale of the eight-property real estate portfolio of Seaboard Realty, LLC and its affiliates in *In re Newbury Common Associates, LLC, et al.*, Case No. 15-12507 (LCC) (Bankr. D. Del.) and the $100,000,000 sale of L'Ermitage Beverly Hills Hotel at the direction of Michael M. Eidelman as Special Master appointed by the United States District Court for the Central District of California at the request of the U.S. Department of Justice in *United States v. Real Prop. Known as the Viceroy L'Ermitage Beverly Hills*, Case No. 16-05368-DSF (C.D. Cal.).  Keen-Summit has a stellar reputation in the industry of real estate disposition and workout services, and is well-qualified to serve as the Debtors' marketing agent and broker in these Chapter 11 Cases.

## Services to Be Provided

15.     The Debtors submit that the services of Keen-Summit are necessary and essential to enable the Debtors to carry out the sales of the Properties.  Subject to approval by, and further order of this Court, Keen-Summit will provide various services to the Debtors in support of the Chapter 11 Cases as follows, as set forth more fully in the Keen-Summit Retention Agreement:

    a.  On request, review pertinent documents and will consult with the Debtors' counsel, as appropriate;

    b.  Coordinate with the Debtors with respect to the development of due diligence materials, the cost of which shall be the Debtors' sole responsibility;

    c.   Develop, subject to the Debtors' review and approval, a marketing plan and implement each facet of the marketing plan;

    d.   Communicate regularly with prospects and maintain records of communications;

    e.   Solicit offers for a Transaction (as defined in the Keen-Summit Retention Agreement);

    f.   Assist the Debtors in evaluating, structuring, negotiating and implementing the terms and conditions of a proposed Transaction;

    g.   If an auction is to be run, develop and implement, subject to the Debtors' review and approval, an auction plan, including arranging auction logistics, assisting the Debtors' counsel with auction bid procedures, assisting the Debtors to qualify bidders, and running the auction;

    h.   Communicate regularly with the Debtors and their professional advisors in connection with the status of its efforts; and

    i.   Work with the Debtors' attorneys responsible for the implementation of the proposed Transactions, reviewing documents, negotiating and assisting in resolving problems which may arise.

16.    Pursuant to the Keen-Summit Retention Agreement, Keen-Summit will have exclusive right to market and sell the Properties in consultation with the Debtors, through confirmation of a plan of reorganization, the closing of all Transactions (as defined therein), or twelve (12) months, whichever comes first, unless extended by mutual consent of the parties.

**<u>Keen-Summit's Disinterestedness</u>**

17.    To the best of the Debtors' knowledge, except as disclosed herein and in the Bordwin Declaration, (a) Keen-Summit is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent any interest adverse to the Debtors; and (b) the professionals of Keen-Summit have not represented and do not have any connection with the Debtors, their creditors, their equity holders, or any other party in interest in any matters relating to the Debtors or their estates, except as articulated herein and in the Bordwin Declaration.

**<u>Keen-Summit's Proposed Compensation</u>**

18.     The Debtors understand that Keen-Summit intends to be compensated for professional services rendered and reimbursed for expenses incurred in connection with these Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of the Bankruptcy Court, and the terms of the Keen-Summit Retention Agreement.

19.     Specifically, and as more fully described in the Keen-Summit Retention Agreement, Keen-Summit shall receive, in addition to the reasonable out of pocket costs and expenses thereof, the following fees:

    a.  <u>Engagement Fee</u>. On the Effective Date (of the Keen-Summit Retention Agreement), the Debtors shall pay Keen-Summit a nonrefundable advisory and consulting fee of thirty-five thousand dollars ($35,000), which fee shall be subject to set off against Keen-Summit's "Transaction Fee".

    b.  <u>"Transaction Fee"</u>. As and when the Debtors closes a Transaction, whether such Transaction is completed individually or as part of a package or as part of a sale of all or a portion of Company's business or as part of a plan of reorganization, then Keen shall have earned compensation per Transaction equal to:

        i.  With respect to the sale of one or more Properties, eighty basis points (0.80%) of Gross Proceeds; and

        ii.  With respect to a DIP, eighty basis points (0.80%) of the Gross Proceeds.

    Notwithstanding anything to the contrary contained in the Keen-Summit Retention Agreement, in the event of a sale of any of the Properties to any prospects listed on Schedule "C" attached to the Keen-Summit Retention Agreement, Keen-Summit's compensation for such sale shall be sixty basis points (0.60%) of Gross Proceeds.

    c.  <u>"Minimum Fee"</u> shall mean a minimum cash fee equal to two hundred and fifty thousand dollars ($250,000). At the conclusion of this engagement, if Keen has not earned $250,000 in fees, then Company shall pay the difference; *provided, however,* for the avoidance of doubt, in the event the Properties do not sell for at least $5,000,000.00 in Gross Proceeds, the Minimum Fee shall not be received by or owed to Keen-Summit.

6

20.     The Debtors have been advised that the rate structure that Keen-Summit will use in these Chapter 11 Cases are the same as the rate structure Keen-Summit uses in other restructuring matters, whether in court or otherwise, regardless of whether a fee application is required and regardless of the location of the bankruptcy case.  Keen-Summit's rate structure is designed to fairly compensate Keen-Summit's professionals and paraprofessionals and to cover routine expenses.  The rates and the rate structure also reflect that the restructuring and other complex matters typically are national in scope and involve great complexity, time pressure, and high stakes.

21.     Because Keen-Summit shall not be compensated on an hourly basis and shall instead be compensated in the form of its reasonable, negotiated fees and expense reimbursements discussed above and in the Keen-Summit Retention Agreement, the Debtors respectfully request that Keen-Summit (i) not be required to maintain time records, and (ii) not be required to file interim and final fee applications, subject to the following conditions:

a. in the event the Debtors seek to have Keen-Summit personnel assume positions or services that are different than the services disclosed in this Application or to materially change the terms of the engagement, an Application to modify the retention shall be filed;

b. notwithstanding anything to the contrary contained in the Application, the Keen-Summit Retention Agreement, or any exhibits thereto, during the course of the Chapter 11 Cases, Keen-Summit shall only seek reimbursement of actual and necessary expenses; and

c. unless otherwise expressly stated in the Keen-Summit Retention Agreement (e.g., the "Engagement Fee"), Keen-Summit shall be paid its fees and reimbursed any applicable expenses at the closing of the sale of the Properties from the sale proceeds (which payments shall be free and clear of all liens, claims, and encumbrances).

22.     The Debtors respectfully submit that this fee and payment structure is both reasonable and in the best interest of the Debtors' estates.  Because compensation under the Keen-Summit Retention Agreement is in the form of a set-rate commission, the detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-1

would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications and could hinder Keen-Summit from performing its services in as efficient a manner possible. Moreover, because Keen-Summit's compensation will not be a function of the time spent working on this engagement, and instead constitutes, essentially, a success fee, keeping time records is completely unnecessary and would be unduly burdensome to Keen-Summit. To the extent parties in interest object to the terms of the Keen-Summit Retention Agreement or the compensation contemplated thereby, such parties shall have the opportunity to have such objections heard in connection with this Application, irrespective of whether Keen-Summit submits fee applications and time records. Therefore, no party in interest will be prejudiced by the fee and compensation structure proposed herein.

## **Indemnification**

23.     Subject to Court approval (including in accordance with the proposed order) and pursuant to the terms of the Keen-Summit Retention Agreement, in connection with Keen-Summit's engagement with the Debtors, the Debtors have agreed to provide indemnification and contribution to Keen-Summit and its affiliates pursuant to terms substantially similar to the following (collectively, the "Indemnification Provisions," capitalized terms not otherwise defined shall bear the meaning ascribed to such terms in the Keen-Summit Retention Agreement):

> A. The Seller shall defend, indemnify and hold harmless Keen and its affiliates, and its respective directors, officers, employees, agents, representatives and controlling persons (Keen and each such entity or person being an "Indemnified Party") from and against any and all losses, claims, damages, expenses and liabilities (including but not limited to counsel fees and disbursements in connection with the investigation of, preparation for, or defense of any pending or threatened claim) (collectively, "Losses"), as incurred, to which such Indemnified Party may become subject, related to or arising out of activities performed by or on behalf of an Indemnified Party pursuant to this Agreement, any transactions contemplated hereby, the Indemnified Party's role in connection therewith, the Physical Conditions of the Property or Properties, and/or Seller's title to the Property or Properties and/or the marketability of such title. The Seller shall have no obligation to

8

indemnify and hold harmless an Indemnified Party for any Losses found in a final judgment by a Court of competent jurisdiction to have resulted primarily from actions taken or omitted to be taken by the Indemnified Party in bad faith or from the Indemnified Party's gross negligence or willful misconduct in performing the services described.

B. Bankruptcy Protocol: Upon Seller's filing of a bankruptcy petition, notwithstanding anything to the contrary:

1. All requests of Keen for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Keen be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

2. In no event shall Keen be indemnified if the Seller or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, Keen's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

3. In the event that Keen seeks reimbursement for attorneys' fees from the Seller pursuant to the indemnity provisions in the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Keen's own applications for approval of indemnity payments (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy Section 330(a)(3)(C) of the Bankruptcy Code.

C. The Seller also agrees that Keen, its affiliates, and their respective directors, officers, employees, agents, representatives and controlling persons shall not be liable (whether directly or indirectly, in contract or tort or otherwise) to the Seller or its security holders or creditors, for any matter, cause or thing related to or arising out of the engagement of Keen pursuant to, or the performance by Keen of the services contemplated by, this Agreement, except to the extent that Keen is found in a final judgment by a Court of competent jurisdiction to have acted or failed to act in bad faith or with gross negligence or willful misconduct in performing the services described in this Agreement.

D. The provisions of this Section XI shall be in addition to any liability that the Seller may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Seller. These provisions shall be governed by the law of the State of New York, without regard to its conflict of law principles, and shall be

operative in full force and effect regardless of any termination or
expiration of this Agreement.

24.    Accordingly, the Debtors respectfully submit that the employment and retention of
Keen-Summit as its marketing agent and broker is in the best interests of the Debtors and that the
terms of the proposed retention are fair and reasonable.

## Notice

25.    The Debtors will provide notice of this Application to (a) the Office of the United
States Trustee and (b) all parties who have filed and served requests for notice pursuant to
Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no
other or further notice need be given.

## No Prior Request

26.    No prior application or motion for the relief requested herein has been made to this
or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated:    March 29, 2023

Respectfully submitted,

**PACK LAW**
*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500

By:    */s/ Jessey J. Krehl*
Joseph A. Pack
Email:  joe@packlaw.com
Florida Bar No. 117882

Jessey J. Krehl
Email:  jessey@packlaw.com
Florida Bar No. 1025848

11

## **Certificate of Service**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 29th day of March, 2023 to all interested parties registered to receive e-mail notice/service for this case via CM/ECF Notice of Electronic Filing.

By:    */s/ Jessey J. Krehl*
              Jessey J. Krehl, Esq.

## Exhibit A

**Proposed Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | ) |
| | ) |
| | )   Chapter 11 |
| Banyan Cay Resort & Golf, LLC, *et al.*[1] | ) |
| | )   Case No. 23-12386 |
| | ) |
| Debtor. | )   (Joint Administration Pending) |
| | ) |

**ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KEEN-**
**SUMMIT CAPITAL PARTNERS LLC AS MARKETING AGENT AND BROKER**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (the "Debtors") for entry of an order, as more fully described in the Application,

---

[1]  The Debtors are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf LLC; (iv) Banyan Cay Dev. LLC; (v) Banyan Cay Villas, LLC; and (vi) Banyan Cay Maintenance, LLC.  The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401 .

[2]  All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

authorizing the employment and retention of Keen-Summit as marketing agent and broker, pursuant to section 327 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1 and 2016-1; and upon consideration of the Bordwin Declaration submitted in support of the Application; and the Court being satisfied based on the representations in the Application and the Bordwin Declaration that Keen-Summit is "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Code, and holds no interest adverse to the Debtors or their estates in connection with the matters for which Keen-Summit is to be retained by the Debtors; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and good and sufficient notice of the Application having been given and no other or further notice being required; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and it appearing that the employment of Keen-Summit is in the best interest of the Debtors, their estates, and their creditors; and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Application is **APPROVED** as set forth in this Order.

2.    The Debtor is authorized to employ and retain Keen-Summit as their marketing agent and broker in these Chapter 11 Cases in accordance with the terms set forth in the Application and the Bordwin Declaration.

3.    The Debtors are authorized to enter into the Keen-Summit Retention Agreement attached as Exhibit 1 to the Bordwin Declaration, effective as of the Petition Date.

2

4.      Keen-Summit is authorized to perform any and all of the services for the Debtors that are necessary or appropriate in connection with the marketing agent and broker services described in the Application.

5.      Keen-Summit shall (i) not be required to maintain time records, and (ii) not be required to file interim and final fee applications, subject to the following conditions:

      a.   in the event the Debtors seek to have Keen-Summit personnel assume positions or services that are different than the services disclosed in the Application or to materially change the terms of the engagement, an Application to modify the retention shall be filed;

      b.   notwithstanding anything to the contrary contained in the Application, the Keen-Summit Retention Agreement, or any exhibits thereto, during the course of the Chapter 11 Cases, Keen-Summit shall only seek reimbursement of actual and necessary expenses; and

      c.   unless otherwise expressly stated in the Keen-Summit Retention Agreement (e.g., the "Engagement Fee"), Keen-Summit shall be paid its fees and reimbursed any applicable expenses at the closing of the sale of the Properties from the sale proceeds (which payments shall be free and clear of all liens, claims, and encumbrances.

6.      Furthermore, the Indemnification Provisions of the Keen-Summit Retention Agreement are hereby approved, *provided, however*, for the avoidance of doubt, that the Debtors shall not indemnify Keen-Summit or its affiliates for claims or liabilities arising out of or relating to any act or omission of the same to the extent such act or omission is determined to be bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

7.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

8.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

9.      In the event of any inconsistency between the Keen-Summit Retention Agreement, the Application, and this Order, this Order shall govern.

3

### ###

**Submitted by:**
Joseph Pack, Esq.
*Proposed Counsel for the Debtors and Debtors-in-Possession*
Pack Law, P.A.
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Tel: 305-916-4500
Email: joe@packlaw.com

Attorney Joseph A. Pack, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF pursuant to applicable rules.

**<u>Exhibit B</u>**

**Declaration of Matthew Bordwin**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| Banyan Cay Resort & Golf, LLC, *et al.*[1] | ) )  Case No. 23-12386 |
| Debtor. | ) )  (Joint Administration Pending) |

**DECLARATION OF MATTHEW BORDWIN IN SUPPORT OF THE
APPLICATION FOR THE EMPLOYMENT AND RETENTION OF KEEN-
SUMMIT CAPITAL PARTNERS LLC AS MARKETING AGENT AND BROKER**

I, Matthew Bordwin, being duly sworn, depose and say to the best of my knowledge:

1.     I am the Managing Director of Keen-Summit Capital Partners LLC ("Keen-Summit").  I am the lead professional from Keen-Summit working on the above-captioned chapter 11 cases (the "Chapter 11 Cases").

2.     Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein and, if called as a witness, I would testify thereto.

3.     I submit this declaration (this "Declaration") in support of the *Debtor's Application for an Order Authorizing the Employment and Retention of Keen-Summit Capital Partners LLC as Marketing Agent and Broker* (the "Application"),[2] in compliance with, and to provide disclosures pursuant to sections 327, 328 and 329 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure

---

[1]  The Debtors are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf LLC; (iv) Banyan Cay Dev. LLC; (v) Banyan Cay Villas, LLC; (vi) Banyan Cay Maintenance, LLC.  The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401 .

[2]  All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

(the "Bankruptcy Rules") and Rules 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules").

4.     Unless otherwise stated in this Declaration, the facts set forth in this Declaration are based upon my personal knowledge or Keen-Summit's client/matter records that were reviewed by me or other Keen-Summit professionals acting under my supervision and direction. To the extent any information disclosed in this Declaration requires amendment or modification upon Keen-Summit's completion of further review or as additional information becomes available, a supplemental declaration will be submitted to the Bankruptcy Court reflecting such amended or modified information.

### Keen-Summit's Qualifications

5.     Keen has extensive expertise in providing real estate and lease transaction services (i.e., lease renegotiations and lease restructuring services, accelerated sales of real estate and leases via real estate brokerage, auction and/or M&A processes), and corporate finance and strategic advisory services (i.e., distressed sell-side M&A services and capital raises). With a particular expertise in workouts and restructurings, Keen represents, among others, businesses in and out of Chapter 11 as well as Chapter 7 trustees, shareholders, lenders, property owners, retail and commercial tenants, investors, developers, creditors and other stakeholders across numerous industries.

### Disclosure Concerning Disinterestedness

6.     The Debtors have provided me the list of creditors in this case and I have reviewed that list.

7.     This Declaration is based on the information available to Keen-Summit on the date hereof.  Keen-Summit maintains records of all of its clients.  Keen-Summit has reviewed the schedule of creditors provided to it by the Debtors and has no connection to any party listed.  Keen-

2

Summit is a subsidiary of Summit Investment Management LLC ("Summit").  Summit is primarily in the business of buying debt from secured creditors in arms-length transactions.  This Declaration of disinterestedness is not on behalf of Summit.  However, to the best of my knowledge, after due inquiry to Summit, I have been advised that Summit has no connections with the Debtors or their creditors.

8.    Keen-Summit may have represented in the past, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors and these Chapter 11 Cases.  As part of its practice, Keen-Summit also appears in cases, proceedings, and transactions involving many different attorneys, accountants, advisors and/or parties in interest, some of which may represent claimants and parties-in-interest in these Chapter 11 Cases.  Keen-Summit does not represent any such entity in connection with these Chapter 11 Cases or have any relationship with any such entity, attorneys, accountants or advisors that would be adverse to the Debtors or their estates.

9.    Accordingly, Keen-Summit is a "disinterested person" within the meaning of 11 U.S.C. Section 101(14).  Keen-Summit has no business, professional, or other connection with the Debtors herein or with their attorneys, and does not represent, nor will it represent, any interest adverse to the estates in the matters in which it is to be engaged.  Specifically, to the best of my knowledge, Keen-Summit, its members, and its employees:

   a.  are not creditors, equity security holders, or insiders;

   b.  are not and were not investment bankers for any outstanding security of the Debtors;

   c.  have not been, within three years before the date of the filing of the petition, investment bankers for a security of the debtors, or attorneys for such an investment bankers in connection with the offer, sale, or issuance of a security of the Debtors;

3

    d.   are not and were not, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtors or of an investment banker specified in subparagraph (b) or (c) above; and

    e.   do not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker specified in the subparagraph (b) or (c) above, or for any other reason.

10.    Despite the efforts described above to identify and disclose Keen-Summit's connections with parties in interest in these Chapter 11 Cases, Keen-Summit is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Keen-Summit discovers additional material information that it determines requires disclosure, it shall promptly file a supplemental disclosure with this Court.

<u>**Services to be Provided and Terms of Engagement**</u>

11.    In connection with these Chapter 11 Cases, the Debtors have requested Court authorization to retain Keen-Summit as its marketing agent and broker.  In this capacity, the professional services that Keen-Summit will provide to the Debtors will be focused upon marketing the Debtors' real properties in West Palm Beach, Florida.  More particularly, Keen's services will include the following:

    a.   On request, review pertinent documents and will consult with the Debtors' counsel, as appropriate;

    b.   Coordinate with the Debtors the development of due diligence materials, the cost of which shall be the Debtors' sole responsibility;

    c.   Develop, subject to the Debtors' review and approval, a marketing plan and implement each facet of the marketing plan;

    d.   Communicate regularly with prospects and maintain records of communications;

    e.   Solicit offers for a Transaction (as defined in the Keen-Summit Retention Agreement);

    f.   Assist the Debtors in evaluating, structuring, negotiating and implementing the terms and conditions of a proposed Transaction;

g.  If an auction is to be run, develop and implement, subject to the Debtors' review and approval, an auction plan, including arranging auction logistics, assisting the Debtors' counsel with auction bid procedures, assisting the Debtors to qualify bidders, and running the auction;

h.  Communicate regularly with the Debtors and their professional advisors in connection with the status of its efforts; and

i.  Work with the Debtors' attorneys responsible for the implementation of the proposed Transactions, reviewing documents, negotiating and assisting in resolving problems which may arise.

12.     The scope of the services to be performed by Keen-Summit and the associated fee structure are accurately set forth in the Keen-Summit Retention Agreement and Application, as are the other terms of Keen-Summit's retention.

13.     Compensation under the Keen-Summit Retention Agreement is in the form of a set-rate commission, and accordingly, the detailed filing requirements of Bankruptcy Rule 2016 and the informational requirements of Local Rule 2016-1 would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications that could hinder Keen-Summit from performing its services in as efficient a manner possible.  Moreover, because Keen-Summit's compensation will not be a function of the time spent working on this engagement, and instead constitutes, essentially, a success fee, keeping time records is completely unnecessary and would be unduly burdensome to Keen-Summit.  Therefore, I have been advised that the Debtors request that Keen-Summit (i) not be required to maintain time records, and (ii) not be required to file interim and final fee applications, subject to the conditions set forth in the Application and the Proposed Order.

14.     In the event the Debtors seek to have Keen-Summit personnel assume positions or services that are different than the services disclosed in the Application or to materially change the terms of the engagement, an Application to modify the retention shall be filed.

15.     Notwithstanding anything to the contrary contained in the Application, the Keen-Summit Retention Agreement, or any exhibits thereto, during the course of the Chapter 11 Cases, Keen-Summit shall only seek reimbursement of actual and necessary expenses.

16.     Unless otherwise expressly stated in the Keen-Summit Retention Agreement (e.g., the "Engagement Fee"), Keen-Summit shall be paid its fees and reimbursed any applicable expenses at the closing of the sale of the Properties from the sale proceeds.

17.     Pursuant to Bankruptcy Rule 2016(b), Keen-Summit has not shared nor agreed to share (a) any compensation it has received or may receive from the Debtors with another party or person or (b) any compensation another person or party has received or may receive.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury under the laws of the United States and the State of

Florida that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 29, 2023

By: _/s/ Matthew Bordwin_____
Matthew Bordwin, Principal and Co-President
Keen-Summit Capital Partners LLC
1 Huntington Quadrangle, Suite 2C04
Melville, NY 11747
Phone: 646-381-9222
Email: mbordwin@Keen-Summit.com

7

**<u>Composite Exhibit 1</u>**
**<u>to the Declaration of Matthew Bordwin</u>**

**Keen-Summit Retention Agreement**

RETENTION AGREEMENT

*Between*
**Banyan Cay Dev. LLC *et al*.**

*and*
**Keen-Summit Capital Partners LLC**

March 14, 2023

In consideration of the mutual agreements herein contained, "Seller" (as defined below) hereby retains "Keen" (as defined below) to act as Seller's real estate advisor upon the terms and conditions set forth herein.

I.      Definitions

The following terms as used herein have the following meanings.

A.      "Company" or "Seller" means Banyan Cay Dev. LLC, Banyan Cay Resort & Golf, LLC, Banyan Cay Villas, LLC, and related entities that own real estate as part of the Banyan Cay development. Company has the right, subject to Keen's approval, to add additional entities to this agreement that own Property.

B.      "Effective Date" means the date of mutual execution of this Agreement.

C.      "Gross Proceeds" means the sum of the total consideration transferred to, or for the benefit of, Seller and shall be inclusive of, but not limited to, cash or its equivalent, value of debt assumed or released, liabilities assumed or released, forfeited deposits, and any other consideration, paid or payable, directly or indirectly, in connection with a Transaction. The computation of Gross Proceeds as well as the computation of Keen's fee shall not be affected by the costs of advertising, Seller's legal fees, break-up fees, Keen's expenses nor any closing costs and/or adjustments, including but not limited to adjustments and/or payments of whatever kind to lienholders, secured parties or offerors.

D.      "Keen" means Keen-Summit Capital Partners LLC.

E.      "Order" shall mean, if and when Seller files for protection pursuant to Chapter 11 of the United States Bankruptcy Code, then an Order issued by the Bankruptcy Court approving Seller's assumption of this Agreement.

F.      "Property" or "Properties" refers to, individually and collectively, as the case may be, those parcels of fee-owned, real property listed on Schedule "A" attached hereto and incorporated by reference.

G.      "Transaction" means any transaction involving the Company's pecuniary interests arising from or relating to Keen's services rendered under this Agreement, including, but not limited to:

1.      the sale or transfer of title to: (a) Company, (b) all or a portion of Company's assets, and/or (c) all or a portion of the Properties; and/or

2.      the raising of "debtor in possession" financing ("DIP"), other than the DIP currently being negotiated between the Company and 364 Capital/EFO, Fuse Capital Fort Lauderdale, Eyal Peretz and/or any of their respective entities or affiliates.



LEGAL02/42738251v3



*Banyan Cay - Keen-Summit Capital Partners*
*March 14, 2023*
*Page 2 of 13*

**II.    Services**

    **A.  Authority**

        1.    Keen shall have the sole and exclusive authority to represent Seller, on an exclusive right to sell, in the negotiation of Transactions.

        2.    In order to coordinate our efforts with respect to possible Transactions, during the term of this Agreement neither the Seller nor any representative thereof (other than Keen) will initiate discussions with a third party regarding a Transaction except through Keen. If the Seller or any of its professional advisors receives an inquiry regarding a Transaction, it will promptly advise Keen of such inquiry in order that Keen may evaluate the inquiry and assist the Seller in any resulting negotiations.

        3.    Seller shall retain the complete discretion to accept or reject any proposed Transaction.

        4.    Should Seller not file for protection pursuant to Chapter 11 of the United States Bankruptcy Code and Keen is required to work with a state licensed real estate broker, Keen has the authority to engage a local broker to assist in this engagement.

    **B.    Marketing Services**

      Keen's services may include those generally described below, as appropriate. Keen will:

        1.    On request, review pertinent documents and will consult with Seller's counsel, as appropriate;

        2.    Coordinate with Seller the development of due diligence materials, the cost of which shall be Seller's sole responsibility;

        3.    Develop, subject to Seller's review and approval, a marketing plan and implement each facet of the marketing plan;

        4.    Communicate regularly with prospects and maintain records of communications;

        5.    Solicit offers for a Transaction;

        6.    Assist Seller in evaluating, structuring, negotiating and implementing the terms and conditions of a proposed Transaction;

        7.    If an auction is to be run, develop and implement, subject to Seller's review and approval, an auction plan, including arranging auction logistics, assisting Seller's counsel with auction bid procedures, assisting the Seller to qualify bidders, and running the auction;

        8.    Communicate regularly with Seller and its professional advisors in connection with the status of its efforts; and

        9.    Work with Seller's attorneys responsible for the implementation of the proposed Transactions, reviewing documents, negotiating and assisting in resolving problems which may arise.



III.   **Compensation**

   A.   Engagement Fee. On the Effective Date, Company shall pay Keen a nonrefundable advisory and consulting fee of thirty-five thousand dollars ($35,000), which fee shall be subject to set off against Keen's "Transaction Fee".

   B.   "Transaction Fee".   As and when Company closes a Transaction, whether such Transaction is completed individually or as part of a package or as part of a sale of all or a portion of Company's business or as part of a plan of reorganization, then Keen shall have earned compensation per Transaction equal to:

      1.   With respect to the sale of one or more Properties, eighty basis points (0.80%) of Gross Proceeds; and

      2.   With respect to a DIP, eighty basis points (0.80%) of the Gross Proceeds.

Notwithstanding anything to the contrary contained herein, in the event of a sale of any of the Properties to any prospects listed on Schedule "C" attached hereto, Keen's compensation for such sale shall be sixty basis points (0.60%) of Gross Proceeds.

   C.   "Minimum Fee" shall mean a minimum cash fee equal to two hundred and fifty thousand dollars ($250,000). At the conclusion of this engagement, if Keen has not earned $250,000 in fees, then Company shall pay the difference.

   D.   Timing of Payment. All Transaction Fees and expense reimbursements shall be paid, in full, off the top, from the Transaction proceeds or otherwise, simultaneously with the closing or other consummation of each Transaction.   Seller hereby authorizes and instructs any escrow agent or counsel (without need for further authorization or permission) to pay Keen its fees earned in strict compliance with the provisions of this Agreement, time being of the essence, directly from the proceeds of the Transaction, in full, simultaneously with the closing or other consummation of the Transaction. The rights provided by this paragraph and the Order approving same (as applicable) shall be deemed to supplement and not supersede other rights provided to Keen.

   E.   Survival:  In the event Seller and any third party should enter into an agreement providing for a Transaction before the expiration of this Agreement and the closing does not occur until after said expiration, then (notwithstanding whether during the Survival term Seller engages another advisor to close a Transaction), Keen shall be entitled to a fee in accordance with the terms of this Agreement.  If Seller, after the expiration of said period, arranges for a Transaction with a third party whom Keen solicited or otherwise introduced to a Property or introduced to the Seller or with whom Keen dealt in connection with a Property or Seller prior to said expiration, and the contract signing or closing takes place within nine (9) months after said expiration, then (notwithstanding whether during the Survival term Seller engages another advisor to close a Transaction), Keen shall be entitled to a fee in accordance with the terms of this Agreement.

IV.   **Expenses**

   A.   All reasonable out of pocket costs and expenses incurred by Keen in connection with performing the services required by this Agreement, including but not limited to travel, lodging, FedEx, UPS or other overnight carrier, postage, photocopying charges, and the fees and reasonable expenses of counsel, etc., shall be borne by Seller.

   B.   With regards to the marketing of a Property, Keen shall prepare a marketing plan and budget.   Following Seller's approval of the budget, Seller shall advance to Keen the



budgeted amount and agrees to pay all approved, reasonable, additional costs and expenses within five (5) business days of the proper presentation of an invoice. Keen shall be under no obligation to incur marketing expenses until such time as Keen receives funds from Seller.

C.    Keen shall not be responsible for any out-of-pocket due diligence costs and expenses, if any, including but not limited to updating appraisals, title reports, surveys, environmental reports, property condition assessments, etc.

**V.    Seller Responsibilities**

A.    Seller warrants and represents that it currently has good and marketable title to the Properties;

B.    Upon the Effective Date, Seller will deliver to Keen a list of all brokers, principals, tenants or other prospects who have expressed an interest in using or acquiring a Property along with all correspondence and other records that relate to any such interest.

C.    With respect to each Property, Seller warrants and represents that it will immediately inform Keen as to:

1.    any known or suspected risk of environmental hazard or contamination; and

2.    any known, existing or pending violation(s) of federal, state or local environmental laws or regulations.

Seller shall have the continuing obligation to assess the accuracy of the representations contained herein and to advise Keen in writing as soon as it becomes aware of any inaccuracy, inconsistency, incompleteness or change of circumstances and to correct same. Additionally, if Seller has ordered environmental reports or studies, as soon as such become available, Seller will immediately provide a true and complete copy of such reports to Keen and Keen is hereby authorized to disseminate such reports to prospects.

D.    Seller shall maintain the Property and shall furnish utilities and public liability insurance as well as casualty/property insurance covering the Properties. Seller shall cause Keen to be covered as an Additional Insured under all policies of General Liability insurance and any Umbrella insurance policies and to waive subrogation against Keen for injury or damage insured under all such casualty and public liability insurance.

E.    Physical Conditions. Seller acknowledges that Keen is not obligated to and has not made an independent investigation of the physical conditions of the Properties, including, but not limited to, the condition of any improvements on the Properties, or of any environmental matters with respect thereto, or of hazardous substances thereon, if any (collectively, the "Physical Conditions"). All documents and materials, investigations, reports and information with respect to the Physical Conditions shall be prepared by or for Seller and shall be furnished to prospective purchasers on behalf of Seller, who (as between the Seller and Keen) shall be solely responsible for same. During the Covid-19 pandemic, Keen reserves the right, in its sole discretion, to determine whether or not to travel to a Property.

F.    Accurate & Complete Information:

1.    Seller shall make available to Keen all information reasonably requested by Keen for the purpose of enabling Keen to perform its obligations pursuant to this Agreement. All information provided by Seller shall be materially accurate and complete at the time it is furnished and Seller shall, as soon as it becomes aware



*Banyan Cay - Keen-Summit Capital Partners*
*March 14, 2023*
*Page 5 of 13*

of any inaccuracy or incompleteness in any information then or later provided to Keen, promptly advise Keen in writing of such inaccuracy or incompleteness and correct the same. In performing its services hereunder, Keen shall under all circumstances be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all information that has been furnished to it by, or on behalf of, the Seller and shall have no obligation to verify the accuracy or completeness of any such information and shall not be responsible for the inaccuracy or incompleteness of any information provided to Keen.

2.     Seller covenants that when Keen presents offering materials to Seller for review and approval, Seller will promptly and diligently review same for accuracy and completeness and will advise Keen, in writing, of any corrections or modifications. Once Keen has revised such offering materials in a manner consistent with Seller's recommendations, Seller shall promptly review and approve, in writing, such offering materials before Keen disseminates same. Keen shall be under no obligation: (A) to disseminate offering materials that it has reason to believe are inaccurate or are materially misleading, and (B) to disseminate such offering materials until such time as Keen receives Seller's written approval of same.

G.     If Seller files an application with the Bankruptcy Court for Keen's retention, Seller will use its best efforts to obtain an Order approving Keen's retention. With respect to the application and Order:

1.     Seller acknowledges that this Agreement in its entirety will be attached to and made a part of Seller's application to the Bankruptcy Court and will be referenced to in the Order.

2.     The application shall seek an Order authorizing the employment of Keen as of the date of this Agreement, as professional persons pursuant to Section 327 of the Code (with compensation subject to the standard of review of Section 328(a) of the Code and not any other standard, including that provided in Section 330 of the Code). The employment application and the Order shall be provided to Keen sufficiently in advance of their filing, and must be acceptable to Keen in its sole discretion. In the event that the Bankruptcy Court does not enter an order acceptable to Keen, neither Keen nor the Company shall have any further obligations under the terms of this Agreement.

3.     Seller agrees that an Order approving Keen's retention incorporates by reference this entire Agreement inclusive of the below provisions even if not specifically mentioned in the Order. Seller agrees that:

a)     none of the fees payable to Keen hereunder shall constitute a "bonus" under applicable law;

b)     Keen is exempt from the requirement to keep time records (unless Keen services are being billed by the hour);

c)     Keen is exempt from the necessity of filing a fee application;

d)     Keen's fees and expenses shall be treated as administrative expense claims in the Seller's bankruptcy case;



*Banyan Cay - Keen-Summit Capital Partners*
*March 14, 2023*
*Page 6 of 13*

e)      Keen's fees and expenses shall be entitled to a carve-out for payment pursuant to Section 506(c) of the Bankruptcy Code;

f)      Consistent with Section 504(a) of the Bankruptcy Code, Keen may not share or agree to share any compensation or reimbursement with another person or any compensation or reimbursement received by another person under Section 502(b)(2) or 503(b)(4) of the Bankruptcy Code;

g)      The terms and conditions of this Agreement are "reasonable." If the Order authorizing the employment of Keen is obtained, Seller shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement and the Order without the need for further application to or order of the Bankruptcy Court; and

h)      Bankruptcy Court has and shall retain core jurisdiction to hear and determine all matters arising from the implementation of this Agreement, and neither the Seller nor Keen shall be required to seek authorization from any other jurisdiction with respect to the relief granted by the Order approving this Agreement.

4.      If Seller obtains an order of the Bankruptcy Court authorizing financing or cash collateral use and such order requires the submission of a budget by Seller delineating its post-petition expenditures, such budget shall expressly include all amounts projected to be paid to Keen pursuant to the terms of this Agreement. In addition, any stipulation or order for financing or cash collateral use shall include all amounts to be paid to Keen pursuant to the terms of this Agreement among any carve-out to be provided professionals in the Seller's bankruptcy case.

5.      The terms of Section V.G are solely for the benefit and protection of Keen and may be waived, in whole or in part, only by Keen.

**VI.**      **Miscellaneous**

A.      <u>Terms & Conditions</u>. The terms and conditions set forth on Schedule "B" attached hereto are incorporated by reference such that, when referring to this "Agreement" herein or in Schedule "B," all references shall include the terms and conditions set forth herein and on Schedule "B." The provisions of this section of the Agreement shall survive the termination of this Agreement.

B.      <u>Notice</u>. Any correspondence or required notice shall be addressed as follows and shall be sent by email and/or by UPS, FedEx, or similar overnight delivery service with proof of delivery. Such notice shall be effective as of the earlier of (i) the date when the recipient confirms receipt of the email, or (ii) the date of actual receipt of the overnight delivery. A notice shall be effective only upon receipt (or refusal by the intended recipient to accept delivery). Any notice which is received on a Saturday, Sunday or legal holiday, or after 5:00 pm prevailing local time at the place of receipt, shall be deemed received on the next business day. Such notice shall be addressed as follows (or to such other address as the parties hereto may designate in writing in the manner set forth herein and as updated from time to time):

     If to Keen, to:          Keen-Summit Capital Partners LLC
                             1 Huntington Quadrangle, Suite 2C04



*Banyan Cay - Keen-Summit Capital Partners*
*March 14, 2023*
*Page 7 of 13*

<div style="margin-left:35%">
Melville, NY 11747
ATTN: Matthew Bordwin
Telephone: (646) 381-9202
Email: <u>mbordwin@Keen-Summit.com</u>
</div>

If to Seller:                Banyan Cay Resort & Golf
ATTN: Domenic Gatto Jr.
1900 Banyan Club Rd
West Palm Beach, FL 33401
Telephone: (732) 407-7807
Email: <u>Domenic@banyancaydev.com</u>

With a copy to:        Joseph Pack, Esq.
Pack Law, P.A.
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
+1 305 916 4500(O) / +1 305 916 8700 (M)
Email: <u>joe@packlaw.com</u>

**(remainder of page left blank)**



*Banyan Cay - Keen-Summit Capital Partners*
*March 14, 2023*
*Page 8 of 13*

If the foregoing correctly sets forth the agreement between the Seller and Keen, please sign and return the enclosed copy of this Agreement, whereupon it shall become our binding agreement.

**AGREED & ACCEPTED**
This 14th day of March, 2023

**KEEN-SUMMIT CAPITAL PARTNERS LLC**

By: _____
Matthew Bordwin, Co-President

**AGREED & ACCEPTED**
This 16 day of MARCH, 2023

**BANYAN CAY DEV. LLC, BANYAN CAY RESORT & GOLF, LLC, AND BANYAN CAY VILLAS, LLC**

By: _____
Jerry McHale, Chief Restructuring Officer



## SCHEDULE A

### Property

- **Property known as Banyan Cay Resort & Golf located at: 2020 Banyan Resort Way, West Palm Beach, FL 33401**



## SCHEDULE B

## TERMS & CONDITIONS

I.  **Term of Agreement**

    A.    The term of Keen's retention shall be from the date of Seller's execution of this Agreement through the confirmation of a plan of reorganization, the closing of all Transactions contemplated by this Agreement or for a period of twelve (12) months, whichever comes first, which term can be extended pursuant to the same terms and conditions and by the mutual consent of the parties.

    B.    Upon the filing of a bankruptcy petition, this Agreement shall be binding upon the Seller only upon approval of the Bankruptcy Court. In the event this Agreement is not so approved for any reason, then this Agreement shall be deemed to be terminated and Keen shall have an allowed *quantum meruit* claim for its services. The provisions of this section of the Agreement shall survive the termination of this Agreement.

II.  **Announcement**. Keen may, at its option and expense, place announcements and advertisements or otherwise publicize Keen's role (which may include the reproduction of the Seller's logo and a hyperlink to the Seller's web site) on Keen's internet web site and in such newspapers and periodicals and in its marketing materials as it may choose stating that Keen has acted as advisor to the Seller with respect to the Transactions.

III.  **Authority**. The parties hereto warrant and represent that this Agreement has been approved by all requisite corporate action and that the party executing this Agreement has full power and authority to do so.

IV.  **Construction**

    A.    Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

    B.    This Agreement shall be construed fairly as to all parties and there shall be no presumption against the party who drafted this Agreement in the interpretation of this Agreement. By executing or otherwise accepting this Agreement, Seller and Keen acknowledge and represent that they are represented by and have consulted with legal counsel with respect to the terms and conditions contained herein.

V.  **Counterparts**. This Agreement may be executed in two or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Facsimile and electronic transmission (including the email delivery of documents in Adobe PDF format) of any signed original counterpart or retransmission of any signed facsimile transmission shall be deemed the same as the delivery of the original.

VI.  **Dispute Resolution.**

    A.    Choice of Law; Jury Trial. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to any principles of conflict of laws. To the extent permitted by law, the parties to this Agreement waive any right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Keen pursuant to, or the performance by Keen of the services contemplated by, this Agreement.

    B.    Attorneys' Fees. If any party to this Agreement brings an action directly or indirectly based upon this Agreement or the matters contemplated hereby against any other party, the prevailing party shall be entitled to recover from the non-prevailing party, in addition to any other appropriate amounts, its reasonable costs and expenses in connection with such proceeding, including, but not limited to, reasonable attorneys' fees and arbitration and/or court costs.

    C.    **Jurisdiction**

        1.    Bankruptcy Court. The Bankruptcy Court has and shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation or execution of this Agreement. Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from, this Agreement or Keen's services hereunder, shall be settled by the Bankruptcy Court. The Bankruptcy Court shall be limited to awarding compensatory damages and the parties hereto hereby waive their right to seek punitive, consequential, exemplary or similar types of special damages.

    D.    Survival. The provisions of this section of the Agreement shall survive the termination of this Agreement.



VII.    **Electronic Communications**. The parties hereto may communicate with each other by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. The parties hereto each accept the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices).

VIII.   **Entire Agreement**. This Agreement contains the entire agreement between the parties hereto, and no representations, inducements, promises or agreements, oral or otherwise, entered into prior to the execution of this Agreement will alter the covenants, agreements and undertakings herein set forth. This Agreement shall not be modified in any manner, except by an instrument in writing executed by the parties.

IX.     **Force Majeure**. Keen shall have no obligation to travel or engage in in-person meetings if, in the exercise of Keen's judgement, to do so would create an unacceptable risk of Covid-19 infection.   Keen shall have no liability for delays, failure in performance, or damages due to acts or omissions of civil or military authorities, acts or omissions of communications carriers, acts of god, civil disturbances, epidemics, explosion, fire, fuel or energy shortages, lightning, pandemics, power surges or failures, strikes or labor disputes, telecommunications failure, war, water, or other causes beyond Keen's control whether or not similar to the foregoing.

X.      **Good Faith**. The parties hereto shall deal with each other fairly and in good faith so as to allow each party to perform its duties and earn the benefits of this Agreement and shall not interfere, prevent or prohibit the other, in any manner, prior to or during the term of this Agreement from carrying out its duties and obligations under the Agreement.

XI.     **Indemnification**.

    A.    The Seller shall defend, indemnify and hold harmless Keen and its affiliates, and its respective directors, officers, employees, agents, representatives and controlling persons (Keen and each such entity or person being an "Indemnified Party") from and against any and all losses, claims, damages, expenses and liabilities (including but not limited to counsel fees and disbursements in connection with the investigation of, preparation for, or defense of any pending or threatened claim) (collectively, "Losses"), as incurred, to which such Indemnified Party may become subject, related to or arising out of activities performed by or on behalf of an Indemnified Party pursuant to this Agreement, any transactions contemplated hereby, the Indemnified Party's role in connection therewith, the Physical Conditions of the Property or Properties, and/or Seller's title to the Property or Properties and/or the marketability of such title. The Seller shall have no obligation to indemnify and hold harmless an Indemnified Party for any Losses found in a final judgment by a Court of competent jurisdiction to have resulted primarily from actions taken or omitted to be taken by the Indemnified Party in bad faith or from the Indemnified Party's gross negligence or willful misconduct in performing the services described.

    B.    Bankruptcy Protocol: Upon Seller's filing of a bankruptcy petition, notwithstanding anything to the contrary:

        1.    All requests of Keen for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Keen be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

        2.    In no event shall Keen be indemnified if the Seller or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, Keen's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

        3.    In the event that Keen seeks reimbursement for attorneys' fees from the Seller pursuant to the indemnity provisions in the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Keen's own applications for approval of indemnity payments (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy Section 330(a)(3)(C) of the Bankruptcy Code.

    C.    The Seller also agrees that Keen, its affiliates, and their respective directors, officers, employees, agents, representatives and controlling persons shall not be liable (whether directly or indirectly, in contract or tort or otherwise) to the Seller or its security holders or creditors, for any matter, cause or thing related to or arising out of the engagement of Keen pursuant to, or the performance by Keen of the services contemplated by, this Agreement, except to the extent that Keen is found in a final judgment by a Court of competent jurisdiction to



*Banyan Cay - Keen-Summit Capital Partners*
*March 14, 2023*
*Page 12 of 13*

<div style="margin-left:2em">

have acted or failed to act in bad faith or with gross negligence or willful misconduct in performing the services described in this Agreement.

D.    The provisions of this Section XI shall be in addition to any liability that the Seller may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Seller. These provisions shall be governed by the law of the State of New York, without regard to its conflict of law principles, and shall be operative in full force and effect regardless of any termination or expiration of this Agreement.

</div>

XII.    **Multiple Clients**.  From time to time, Keen, or one of its related entities, may and shall have the right to advise or provide services to several industry participants, some of which may be competitors of the Seller.  The Seller waives any right to commence any action, suit or proceeding or make any demand, complaint or claim against Keen, its subsidiaries or affiliates, or their partners, directors, officers or other personnel, that arises out of Keen's, or one of its related entities', right to advise or provide services to industry competitors of the Seller.

XIII.    **No Time Records**. The services to be provided by Keen pursuant to this Agreement are transactional in nature and except with respect to hourly fees, for which Keen will maintain contemporaneous time records in half-hour increments and not on a project category basis, Keen will not be billing Seller by the hour nor keeping a record of its time spent on behalf of Seller.

XIV.    **Relationship**.

<div style="margin-left:2em">

A.    Keen's role shall be as the Seller's agent and Keen hereby acknowledges its fiduciary responsibilities to Seller. Nevertheless, Seller shall remain fully responsible for all decisions and matters as to which Keen's advice is sought.  Keen is assuming no management responsibilities.  Seller acknowledges and agrees that its engagement of Keen hereunder does not and is not intended to confer rights upon any person not a party hereto, including but not limited to any security holders or creditors of Seller's bankruptcy estate.

B.    Keen's duties hereunder run solely to the Seller. All advice, written or oral, provided by Keen to the Seller pursuant to this Agreement is intended solely for the use and benefit of the Seller, which agrees that such advice may not be disclosed publicly or made available to third parties without the prior written consent of Keen. Keen may condition the granting of such prior written consent upon obtaining a non-reliance letter and release from any such third parties.

C.    The provisions of this section of the Agreement shall survive the termination of this Agreement.

</div>

XV.    **Successors and Assigns/Change of Control**.  Upon the commencement of this Agreement, it shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.  The Seller's obligations hereunder shall survive any change in control of Seller's business affairs.  In the event the proceeding is converted from the Chapter 11 to Chapter 7, this Agreement shall remain in full force and effect.  The provisions of this section of the Agreement shall survive the termination of this Agreement.

SUPPLEMENTED AND RESTATED RETENTION AGREEMENT

*Between*
**Banyan Cay Mezzanine Borrower, LLC**

*and*
**Keen-Summit Capital Partners LLC**

March 21, 2023

---

In consideration of the mutual agreements herein contained, "Seller" (as defined below) hereby retains "Keen" (as defined below) to act as Seller's real estate advisor upon the terms and conditions set forth herein, effective as of the date of that certain *Retention Agreement* between Keen and each of Banyan Cay Dev. LLC, Banyan Cay Resort & Golf, LLC, and Banyan Cay Villas, LLC, executed on March 16, 2023, the terms of which substantially conform to this *Supplemented and Restated Retention Agreement* (this "Agreement"), which is being entered into by Keen and Banyan Cay Mezzanine Borrower, LLC in an abundance of caution given Banyan Cay Mezzanine Borrower, LLC's pending bankruptcy and Keen's retention by its subsidiary entities.

I. Definitions

The following terms as used herein have the following meanings.

A. "Company" or "Seller" means Banyan Cay Mezzanine Borrower, LLC, Banyan Cay Dev. LLC, Banyan Cay Resort & Golf, LLC, Banyan Cay Villas, LLC, and related entities that own real estate as part of the Banyan Cay development. Company has the right, subject to Keen's approval, to add additional entities to this agreement that own Property.

B. "Effective Date" means, upon the mutual execution of this Agreement, March 16, 2023, the date upon which the *Retention Agreement* between Keen and each of Banyan Cay Dev. LLC, Banyan Cay Resort & Golf, LLC, and Banyan Cay Villas, LLC was executed.

C. "Gross Proceeds" means the sum of the total consideration transferred to, or for the benefit of, Seller and shall be inclusive of, but not limited to, cash or its equivalent, value of debt assumed or released, liabilities assumed or released, forfeited deposits, and any other consideration, paid or payable, directly or indirectly, in connection with a Transaction. The computation of Gross Proceeds as well as the computation of Keen's fee shall not be affected by the costs of advertising, Seller's legal fees, break-up fees, Keen's expenses nor any closing costs and/or adjustments, including but not limited to adjustments and/or payments of whatever kind to lienholders, secured parties or offerors.

D. "Keen" means Keen-Summit Capital Partners LLC.

E. "Order" shall mean, if and when Seller files for protection pursuant to Chapter 11 of the United States Bankruptcy Code, then an Order issued by the Bankruptcy Court approving Seller's assumption of this Agreement.

F. "Property" or "Properties" refers to, individually and collectively, as the case may be, those parcels of fee-owned, real property listed on Schedule "A" attached hereto and incorporated by reference.

G. "Transaction" means any transaction involving the Company's pecuniary interests arising from or relating to Keen's services rendered under this Agreement, including, but not limited to:



LEGAL02/42738251v3



1.  the sale or transfer of title to: (a) Company, (b) all or a portion of Company's assets, and/or (c) all or a portion of the Properties; and/or

2.  the raising of "debtor in possession" financing ("DIP"), other than the DIP currently being negotiated between the Company and 364 Capital/EFO, Fuse Capital Fort Lauderdale, Eyal Peretz and/or any of their respective entities or affiliates.

## II.  Services

### A.  Authority

1.  Keen shall have the sole and exclusive authority to represent Seller, on an exclusive right to sell, in the negotiation of Transactions.

2.  In order to coordinate our efforts with respect to possible Transactions, during the term of this Agreement neither the Seller nor any representative thereof (other than Keen) will initiate discussions with a third party regarding a Transaction except through Keen.  If the Seller or any of its professional advisors receives an inquiry regarding a Transaction, it will promptly advise Keen of such inquiry in order that Keen may evaluate the inquiry and assist the Seller in any resulting negotiations.

3.  Seller shall retain the complete discretion to accept or reject any proposed Transaction.

4.  Should Seller not file for protection pursuant to Chapter 11 of the United States Bankruptcy Code and Keen is required to work with a state licensed real estate broker, Keen has the authority to engage a local broker to assist in this engagement.

### B.  Marketing Services

Keen's services may include those generally described below, as appropriate.  Keen will:

1.  On request, review pertinent documents and will consult with Seller's counsel, as appropriate;

2.  Coordinate with Seller the development of due diligence materials, the cost of which shall be Seller's sole responsibility;

3.  Develop, subject to Seller's review and approval, a marketing plan and implement each facet of the marketing plan;

4.  Communicate regularly with prospects and maintain records of communications;

5.  Solicit offers for a Transaction;

6.  Assist Seller in evaluating, structuring, negotiating and implementing the terms and conditions of a proposed Transaction;

7.  If an auction is to be run, develop and implement, subject to Seller's review and approval, an auction plan, including arranging auction logistics, assisting Seller's counsel with auction bid procedures, assisting the Seller to qualify bidders, and running the auction;

8.  Communicate regularly with Seller and its professional advisors in connection with the status of its efforts; and



9. Work with Seller's attorneys responsible for the implementation of the proposed Transactions, reviewing documents, negotiating and assisting in resolving problems which may arise.

III.   **Compensation**

A.   <u>Engagement Fee</u>. On the Effective Date, Company shall pay Keen a nonrefundable advisory and consulting fee of thirty-five thousand dollars ($35,000), which fee shall be subject to set off against Keen's "Transaction Fee" and shall be paid by Banyan Cay Resort & Golf LLC. For the avoidance of doubt, Banyan Cay Mezzanine Borrower, LLC shall not pay the Engagement Fee.

B.   <u>"Transaction Fee"</u>.   As and when Company closes a Transaction, whether such Transaction is completed individually or as part of a package or as part of a sale of all or a portion of Company's business or as part of a plan of reorganization, then Keen shall have earned compensation per Transaction equal to:

1. With respect to the sale of one or more Properties, eighty basis points (0.80%) of Gross Proceeds; and

2. With respect to a DIP, eighty basis points (0.80%) of the Gross Proceeds.

Notwithstanding anything to the contrary contained herein, in the event of a sale of any of the Properties to any prospects listed on Schedule "C" attached hereto, Keen's compensation for such sale shall be sixty basis points (0.60%) of Gross Proceeds.

C.   <u>"Minimum Fee"</u> shall mean a minimum cash fee equal to two hundred and fifty thousand dollars ($250,000). At the conclusion of this engagement, if Keen has not earned $250,000 in fees, then Company, excluding Banyan Cay Mezzanine Borrower, LLC, shall pay the difference. For the avoidance of doubt, Banyan Cay Mezzanine Borrower, LLC shall not pay the Minimum Fee.

D.   <u>Timing of Payment.</u> All Transaction Fees and expense reimbursements shall be paid, in full, off the top, from the Transaction proceeds or otherwise, simultaneously with the closing or other consummation of each Transaction.   Seller hereby authorizes and instructs any escrow agent or counsel (without need for further authorization or permission) to pay Keen its fees earned in strict compliance with the provisions of this Agreement, time being of the essence, directly from the proceeds of the Transaction, in full, simultaneously with the closing or other consummation of the Transaction. The rights provided by this paragraph and the Order approving same (as applicable) shall be deemed to supplement and not supersede other rights provided to Keen.

E.   <u>Survival</u>: In the event Seller and any third party should enter into an agreement providing for a Transaction before the expiration of this Agreement and the closing does not occur until after said expiration, then (notwithstanding whether during the Survival term Seller engages another advisor to close a Transaction), Keen shall be entitled to a fee in accordance with the terms of this Agreement. If Seller, after the expiration of said period, arranges for a Transaction with a third party whom Keen solicited or otherwise introduced to a Property or introduced to the Seller or with whom Keen dealt in connection with a Property or Seller prior to said expiration, and the contract signing or closing takes place within nine (9) months after said expiration, then (notwithstanding whether during the Survival term Seller engages another advisor to close a Transaction), Keen shall be entitled to a fee in accordance with the terms of this Agreement.



IV.     **Expenses**

    A.     All reasonable out of pocket costs and expenses incurred by Keen in connection with performing the services required by this Agreement, including but not limited to travel, lodging, FedEx, UPS or other overnight carrier, postage, photocopying charges, and the fees and reasonable expenses of counsel, etc., shall be borne by Seller.

    B.     With regards to the marketing of a Property, Keen shall prepare a marketing plan and budget.   Following Seller's approval of the budget, Seller shall advance to Keen the budgeted amount and agrees to pay all approved, reasonable, additional costs and expenses within five (5) business days of the proper presentation of an invoice.  Keen shall be under no obligation to incur marketing expenses until such time as Keen receives funds from Seller.

    C.     Keen shall not be responsible for any out-of-pocket due diligence costs and expenses, if any, including but not limited to updating appraisals, title reports, surveys, environmental reports, property condition assessments, etc.

V.     **Seller Responsibilities**

    A.     Seller warrants and represents that it currently has good and marketable title to the Properties;

    B.     Upon the Effective Date, Seller will deliver to Keen a list of all brokers, principals, tenants or other prospects who have expressed an interest in using or acquiring a Property along with all correspondence and other records that relate to any such interest.

    C.     With respect to each Property, Seller warrants and represents that it will immediately inform Keen as to:

        1.     any known or suspected risk of environmental hazard or contamination; and

        2.     any known, existing or pending violation(s) of federal, state or local environmental laws or regulations.

    Seller shall have the continuing obligation to assess the accuracy of the representations contained herein and to advise Keen in writing as soon as it becomes aware of any inaccuracy, inconsistency, incompleteness or change of circumstances and to correct same.  Additionally, if Seller has ordered environmental reports or studies, as soon as such become available, Seller will immediately provide a true and complete copy of such reports to Keen and Keen is hereby authorized to disseminate such reports to prospects.

    D.     Seller shall maintain the Property and shall furnish utilities and public liability insurance as well as casualty/property insurance covering the Properties.  Seller shall cause Keen to be covered as an Additional Insured under all policies of General Liability insurance and any Umbrella insurance policies and to waive subrogation against Keen for injury or damage insured under all such casualty and public liability insurance.

    E.     Physical Conditions.  Seller acknowledges that Keen is not obligated to and has not made an independent investigation of the physical conditions of the Properties, including, but not limited to, the condition of any improvements on the Properties, or of any environmental matters with respect thereto, or of hazardous substances thereon, if any (collectively, the "Physical Conditions").  All documents and materials, investigations, reports and information with respect to the Physical Conditions shall be prepared by or for



Seller and shall be furnished to prospective purchasers on behalf of Seller, who (as between the Seller and Keen) shall be solely responsible for same. During the Covid-19 pandemic, Keen reserves the right, in its sole discretion, to determine whether or not to travel to a Property.

F.   Accurate & Complete Information:

    1.   Seller shall make available to Keen all information reasonably requested by Keen for the purpose of enabling Keen to perform its obligations pursuant to this Agreement. All information provided by Seller shall be materially accurate and complete at the time it is furnished and Seller shall, as soon as it becomes aware of any inaccuracy or incompleteness in any information then or later provided to Keen, promptly advise Keen in writing of such inaccuracy or incompleteness and correct the same. In performing its services hereunder, Keen shall under all circumstances be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all information that has been furnished to it by, or on behalf of, the Seller and shall have no obligation to verify the accuracy or completeness of any such information and shall not be responsible for the inaccuracy or incompleteness of any information provided to Keen.

    2.   Seller covenants that when Keen presents offering materials to Seller for review and approval, Seller will promptly and diligently review same for accuracy and completeness and will advise Keen, in writing, of any corrections or modifications. Once Keen has revised such offering materials in a manner consistent with Seller's recommendations, Seller shall promptly review and approve, in writing, such offering materials before Keen disseminates same. Keen shall be under no obligation: (A) to disseminate offering materials that it has reason to believe are inaccurate or are materially misleading, and (B) to disseminate such offering materials until such time as Keen receives Seller's written approval of same.

G.   If Seller files an application with the Bankruptcy Court for Keen's retention, Seller will use its best efforts to obtain an Order approving Keen's retention. With respect to the application and Order:

    1.   Seller acknowledges that this Agreement in its entirety will be attached to and made a part of Seller's application to the Bankruptcy Court and will be referenced to in the Order.

    2.   The application shall seek an Order authorizing the employment of Keen as of the date of this Agreement, as professional persons pursuant to Section 327 of the Code (with compensation subject to the standard of review of Section 328(a) of the Code and not any other standard, including that provided in Section 330 of the Code). The employment application and the Order shall be provided to Keen sufficiently in advance of their filing, and must be acceptable to Keen in its sole discretion. In the event that the Bankruptcy Court does not enter an order acceptable to Keen, neither Keen nor the Company shall have any further obligations under the terms of this Agreement.

    3.   Seller agrees that an Order approving Keen's retention incorporates by reference this entire Agreement inclusive of the below provisions even if not specifically mentioned in the Order. Seller agrees that:



*Banyan Cay - Keen-Summit Capital Partners*
*March 21, 2023*
*Page 6 of 13*

a) none of the fees payable to Keen hereunder shall constitute a "bonus" under applicable law;

b) Keen is exempt from the requirement to keep time records (unless Keen services are being billed by the hour);

c) Keen is exempt from the necessity of filing a fee application;

d) Keen's fees and expenses shall be treated as administrative expense claims in the Seller's bankruptcy case;

e) Keen's fees and expenses shall be entitled to a carve-out for payment pursuant to Section 506(c) of the Bankruptcy Code;

f) Consistent with Section 504(a) of the Bankruptcy Code, Keen may not share or agree to share any compensation or reimbursement with another person or any compensation or reimbursement received by another person under Section 502(b)(2) or 503(b)(4) of the Bankruptcy Code;

g) The terms and conditions of this Agreement are "reasonable." If the Order authorizing the employment of Keen is obtained, Seller shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement and the Order without the need for further application to or order of the Bankruptcy Court; and

h) Bankruptcy Court has and shall retain core jurisdiction to hear and determine all matters arising from the implementation of this Agreement, and neither the Seller nor Keen shall be required to seek authorization from any other jurisdiction with respect to the relief granted by the Order approving this Agreement.

4. If Seller obtains an order of the Bankruptcy Court authorizing financing or cash collateral use and such order requires the submission of a budget by Seller delineating its post-petition expenditures, such budget shall expressly include all amounts projected to be paid to Keen pursuant to the terms of this Agreement. In addition, any stipulation or order for financing or cash collateral use shall include all amounts to be paid to Keen pursuant to the terms of this Agreement among any carve-out to be provided professionals in the Seller's bankruptcy case.

5. The terms of Section V.G are solely for the benefit and protection of Keen and may be waived, in whole or in part, only by Keen.

**VI.   Miscellaneous**

A. <u>Terms & Conditions</u>.  The terms and conditions set forth on Schedule "B" attached hereto are incorporated by reference such that, when referring to this "Agreement" herein or in Schedule "B," all references shall include the terms and conditions set forth herein and on Schedule "B." The provisions of this section of the Agreement shall survive the termination of this Agreement.

B. <u>Notice</u>. Any correspondence or required notice shall be addressed as follows and shall be sent by email and/or by UPS, FedEx, or similar overnight delivery service with proof of delivery.  Such notice shall be effective as of the earlier of (i) the date when the recipient confirms receipt of the email, or (ii) the date of actual receipt of the overnight delivery.  A



notice shall be effective only upon receipt (or refusal by the intended recipient to accept delivery).  Any notice which is received on a Saturday, Sunday or legal holiday, or after 5:00 pm prevailing local time at the place of receipt, shall be deemed received on the next business day.  Such notice shall be addressed as follows (or to such other address as the parties hereto may designate in writing in the manner set forth herein and as updated from time to time):

If to Keen, to:       Keen-Summit Capital Partners LLC
                      1 Huntington Quadrangle, Suite 2C04
                      Melville, NY 11747
                      ATTN: Matthew Bordwin
                      Telephone: (646) 381-9202
                      Email: mbordwin@Keen-Summit.com

If to Seller:         Banyan Cay Mezzanine Borrower, LLC
                      ATTN: Jerry McHale, Proposed Chief Restructuring Officer
                      1900 Banyan Club Rd
                      West Palm Beach, FL 33401
                      Telephone: (732) 407-7807
                      Email:  jerrym@thereceiver.net

With a copy to:       Joseph Pack, Esq.
                      Pack Law, P.A.
                      51 Northeast 24th Street, Suite 108
                      Miami, Florida 33137
                      +1 305 916 4500(O) / +1 305 916 8700 (M)
                      Email: joe@packlaw.com

**(remainder of page left blank)**



*Banyan Cay - Keen-Summit Capital Partners*
*March 21, 2023*
*Page 8 of 13*

If the foregoing correctly sets forth the agreement between the Seller and Keen, please sign and return the enclosed copy of this Agreement, whereupon it shall become our binding agreement.

**AGREED & ACCEPTED**
This 21st day of March, 2023

**KEEN-SUMMIT CAPITAL PARTNERS LLC**

By:
Matthew Bordwin, Co-President

**AGREED & ACCEPTED**
This 22 day of March , 2023

**BANYAN CAY MEZZANINE BORROWER, LLC**

By:
Jerry McHale, Proposed Chief Restructuring Officer



*Banyan Cay - Keen-Summit Capital Partners*
*March 21, 2023*
*Page 9 of 13*

## SCHEDULE A

### Property

- **Property known as Banyan Cay Resort & Golf located at: 2020 Banyan Resort Way, West Palm Beach, FL 33401**



Banyan Cay - Keen-Summit Capital Partners
March 21, 2023
Page 10 of 13

## SCHEDULE B

## TERMS & CONDITIONS

**I.**     **Term of Agreement**

        A.     The term of Keen's retention shall be from the date of Seller's execution of this Agreement through the confirmation of a plan of reorganization, the closing of all Transactions contemplated by this Agreement or for a period of twelve (12) months, whichever comes first, which term can be extended pursuant to the same terms and conditions and by the mutual consent of the parties.

        B.     Upon the filing of a bankruptcy petition, this Agreement shall be binding upon the Seller only upon approval of the Bankruptcy Court. In the event this Agreement is not so approved for any reason, then this Agreement shall be deemed to be terminated and Keen shall have an allowed *quantum meruit* claim for its services. The provisions of this section of the Agreement shall survive the termination of this Agreement.

**II.**     **Announcement**. Keen may, at its option and expense, place announcements and advertisements or otherwise publicize Keen's role (which may include the reproduction of the Seller's logo and a hyperlink to the Seller's web site) on Keen's internet web site and in such newspapers and periodicals and in its marketing materials as it may choose stating that Keen has acted as advisor to the Seller with respect to the Transactions.

**III.**     **Authority**. The parties hereto warrant and represent that this Agreement has been approved by all requisite corporate action and that the party executing this Agreement has full power and authority to do so.

**IV.**     **Construction**

        A.     Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

        B.     This Agreement shall be construed fairly as to all parties and there shall be no presumption against the party who drafted this Agreement in the interpretation of this Agreement. By executing or otherwise accepting this Agreement, Seller and Keen acknowledge and represent that they are represented by and have consulted with legal counsel with respect to the terms and conditions contained herein.

**V.**     **Counterparts**. This Agreement may be executed in two or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. Facsimile and electronic transmission (including the email delivery of documents in Adobe PDF format) of any signed original counterpart or retransmission of any signed facsimile transmission shall be deemed the same as the delivery of the original.

**VI.**     **Dispute Resolution.**

        A.     <u>Choice of Law; Jury Trial</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to any principles of conflict of laws. To the extent permitted by law, the parties to this Agreement waive any right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Keen pursuant to, or the performance by Keen of the services contemplated by, this Agreement.

        B.     <u>Attorneys' Fees</u>. If any party to this Agreement brings an action directly or indirectly based upon this Agreement or the matters contemplated hereby against any other party, the prevailing party shall be entitled to recover from the non-prevailing party, in addition to any other appropriate amounts, its reasonable costs and expenses in connection with such proceeding, including, but not limited to, reasonable attorneys' fees and arbitration and/or court costs.

        C.     **Jurisdiction**

            1.     <u>Bankruptcy Court</u>. The Bankruptcy Court has and shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation or execution of this Agreement. Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from, this Agreement or Keen's services hereunder, shall be settled by the Bankruptcy Court. The Bankruptcy Court shall be limited to awarding compensatory damages and the parties hereto hereby waive their right to seek punitive, consequential, exemplary or similar types of special damages.

        D.     <u>Survival</u>. The provisions of this section of the Agreement shall survive the termination of this Agreement.



VII.    **Electronic Communications**. The parties hereto may communicate with each other by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. The parties hereto each accept the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices).

VIII.   **Entire Agreement**. This Agreement contains the entire agreement between the parties hereto, and no representations, inducements, promises or agreements, oral or otherwise, entered into prior to the execution of this Agreement will alter the covenants, agreements and undertakings herein set forth. This Agreement shall not be modified in any manner, except by an instrument in writing executed by the parties.

IX.     **Force Majeure**. Keen shall have no obligation to travel or engage in in-person meetings if, in the exercise of Keen's judgement, to do so would create an unacceptable risk of Covid-19 infection.   Keen shall have no liability for delays, failure in performance, or damages due to acts or omissions of civil or military authorities, acts or omissions of communications carriers, acts of god, civil disturbances, epidemics, explosion, fire, fuel or energy shortages, lightning, pandemics, power surges or failures, strikes or labor disputes, telecommunications failure, war, water, or other causes beyond Keen's control whether or not similar to the foregoing.

X.      **Good Faith**. The parties hereto shall deal with each other fairly and in good faith so as to allow each party to perform its duties and earn the benefits of this Agreement and shall not interfere, prevent or prohibit the other, in any manner, prior to or during the term of this Agreement from carrying out its duties and obligations under the Agreement.

XI.     **Indemnification**.

A.      The Seller shall defend, indemnify and hold harmless Keen and its affiliates, and its respective directors, officers, employees, agents, representatives and controlling persons (Keen and each such entity or person being an "Indemnified Party") from and against any and all losses, claims, damages, expenses and liabilities (including but not limited to counsel fees and disbursements in connection with the investigation of, preparation for, or defense of any pending or threatened claim) (collectively, "Losses"), as incurred, to which such Indemnified Party may become subject, related to or arising out of activities performed by or on behalf of an Indemnified Party pursuant to this Agreement, any transactions contemplated hereby, the Indemnified Party's role in connection therewith, the Physical Conditions of the Property or Properties, and/or Seller's title to the Property or Properties and/or the marketability of such title. The Seller shall have no obligation to indemnify and hold harmless an Indemnified Party for any Losses found in a final judgment by a Court of competent jurisdiction to have resulted primarily from actions taken or omitted to be taken by the Indemnified Party in bad faith or from the Indemnified Party's gross negligence or willful misconduct in performing the services described.

B.      Bankruptcy Protocol: Upon Seller's filing of a bankruptcy petition, notwithstanding anything to the contrary:

1.      All requests of Keen for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based on the circumstances of the litigation or settlement in respect of which indemnity is sought, <u>provided, however</u>, that in no event shall Keen be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

2.      In no event shall Keen be indemnified if the Seller or a representative of the estate, asserts a claim for, and a court determines by final order that such claim arose out of, Keen's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct;

3.      In the event that Keen seeks reimbursement for attorneys' fees from the Seller pursuant to the indemnity provisions in the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Keen's own applications for approval of indemnity payments (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of Sections 330 and 331 of the Bankruptcy code without regard to whether such attorney has been retained under Section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy Section 330(a)(3)(C) of the Bankruptcy Code.

C.      The Seller also agrees that Keen, its affiliates, and their respective directors, officers, employees, agents, representatives and controlling persons shall not be liable (whether directly or indirectly, in contract or tort or otherwise) to the Seller or its security holders or creditors, for any matter, cause or thing related to or arising out of the engagement of Keen pursuant to, or the performance by Keen of the services contemplated by, this Agreement, except to the extent that Keen is found in a final judgment by a Court of competent jurisdiction to



*Banyan Cay - Keen-Summit Capital Partners*
*March 21, 2023*
*Page 12 of 13*

have acted or failed to act in bad faith or with gross negligence or willful misconduct in performing the services described in this Agreement.

D.  The provisions of this Section XI shall be in addition to any liability that the Seller may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs, and personal representatives of the Seller. These provisions shall be governed by the law of the State of New York, without regard to its conflict of law principles, and shall be operative in full force and effect regardless of any termination or expiration of this Agreement.

XII.   **Multiple Clients**.  From time to time, Keen, or one of its related entities, may and shall have the right to advise or provide services to several industry participants, some of which may be competitors of the Seller.  The Seller waives any right to commence any action, suit or proceeding or make any demand, complaint or claim against Keen, its subsidiaries or affiliates, or their partners, directors, officers or other personnel, that arises out of Keen's, or one of its related entities', right to advise or provide services to industry competitors of the Seller.

XIII.  **No Time Records**. The services to be provided by Keen pursuant to this Agreement are transactional in nature and except with respect to hourly fees, for which Keen will maintain contemporaneous time records in half-hour increments and not on a project category basis, Keen will not be billing Seller by the hour nor keeping a record of its time spent on behalf of Seller.

XIV.   **Relationship**.

A.  Keen's role shall be as the Seller's agent and Keen hereby acknowledges its fiduciary responsibilities to Seller. Nevertheless, Seller shall remain fully responsible for all decisions and matters as to which Keen's advice is sought.  Keen is assuming no management responsibilities.  Seller acknowledges and agrees that its engagement of Keen hereunder does not and is not intended to confer rights upon any person not a party hereto, including but not limited to any security holders or creditors of Seller's bankruptcy estate.

B.  Keen's duties hereunder run solely to the Seller. All advice, written or oral, provided by Keen to the Seller pursuant to this Agreement is intended solely for the use and benefit of the Seller, which agrees that such advice may not be disclosed publicly or made available to third parties without the prior written consent of Keen. Keen may condition the granting of such prior written consent upon obtaining a non-reliance letter and release from any such third parties.

C.  The provisions of this section of the Agreement shall survive the termination of this Agreement.

XV.    **Successors and Assigns/Change of Control**.  Upon the commencement of this Agreement, it shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.  The Seller's obligations hereunder shall survive any change in control of Seller's business affairs.  In the event the proceeding is converted from the Chapter 11 to Chapter 7, this Agreement shall remain in full force and effect.  The provisions of this section of the Agreement shall survive the termination of this Agreement.



*Banyan Cay - Keen-Summit Capital Partners*
*March 21, 2023*
*Page 13 of 13*

**SCHEDULE C**

Entire resort & condo property:
1. Witkoff
2. Ari Pearl
3. Urgo & Lerner
4. Galbut
5. Alex Vadia
6. Wheelock
7. Bradford Allen
8. ECI Seth
9. Alchemy
10. Michael Burns

Hotel & Golf only:
1. EFO Renzo Renzi
2. Peeblebrook / Sean Mullen Nobel House
3. Urgo

Condo only:
1. Ken Endelson
2. ECI Seth

Estate Lots (28) only:
1. Wally

Villas only:
1. Breslin
2. Forester

Four (4) seperate Estate lots:
1. Forester
2. Wally

S