## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.  23-12386-EPK |
| BANYAN CAY RESORT & GOLF, LLC, *et al.,*[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

_____/

## NOTICE OF FILING OF PROPOSED CASH
## COLLATERAL AND DEBTOR IN POSSESSION FINANCING ORDER

**PLEASE TAKE NOTICE THAT**, on April 18, 2023, the above-captioned debtors and debtors in possession filed that certain motion [Docket No. 85] (the "Motion") seeking, *inter alia*, authorization for the Debtors' use of Cash Collateral (as defined therein), authorization for the Debtors to secure post-petition debtor in possession financing ("DIP Financing") from their Prepetition Secured Lender and DIP Lender (each as defined in the Motion), granting certain adequate protection and superpriority liens and claims thereto, and approving certain conditions and terms related thereto.

**PLEASE TAKE FURTHER NOTICE THAT**, on the date hereof, the Debtors submitted a proposed interim order (the "Interim Order"), attached hereto as **Exhibit A**, granting the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE THAT**, the Debtors shall seek entry of the Interim Order at the hearing (the "Hearing") before the Bankruptcy Court scheduled for April 21, 2023 at 1:30 p.m. at 1515 North Flagler Drive, Room 801, Courtroom B, West Palm Beach, Florida 33401. To participate in the Hearing remotely using the services of Zoom Video Communications, Inc. (whether by video or by telephone), you must register in advance no later than 3:00 p.m., one business day before the date of the hearing. To resister, click or manually enter the following registration link in a browser: https://www.zoomgov.com/meeting/register/vJIsduGsrTouGn7Udkhqe_ZF90qPJ3uM95

*[Remainder of Page Intentionally Left Blank]*

---

[1] The Debtors are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf LLC; (iv) Banyan Cay Dev. LLC; (v) Banyan Cay Villas, LLC; and (vi) Banyan Cay Maintenance, LLC. The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401.

Dated:   April 20, 2023

Respectfully submitted,

**PACK LAW**
*Proposed Counsel to the Debtors and*
*Debtors-in-Possession*
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500

By:  */s/ Jessey J. Krehl*                          
     Joseph A. Pack
     Email:  joe@packlaw.com
     Florida Bar No. 117882

     Jessey J. Krehl
     Email:  jessey@packlaw.com
     Florida Bar No. 1025848

**<u>Exhibit A</u>**
**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                     Case No.  23-12386-EPK

BANYAN CAY RESORT & GOLF, LLC, *et al.,*[1]        Chapter 11

                    Debtors.                          (Jointly Administered)
_____/

**INTERIM ORDER (I) AUTHORIZING USE OF CASH
COLLATERAL PURSUANT TO 11 U.S.C.  § 363, (II) GRANTING
ADEQUATE PROTECTION PURSUANT TO 11 U.S.C.  §§ 361 AND 363,
(III) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING
PURSUANT TO 11 U.S.C.  §§ 105(a), 362, 364(c), AND 364(d), (IV) GRANTING SUPER
PRIORITY CLAIMS TO THE DIP LENDER PURSUANT TO 11 U.S.C.  364(c), AND
(V) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

**THIS CAUSE** came before the Court on April 21, 2023, at 1:30 p.m. (the "Interim

Hearing") upon the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing Use of Cash

Collateral Pursuant to 11 U.S.C.  § 363, (II), Granting Adequate Protection Pursuant to 11 U.S.C.*

---

[1] The Debtors are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf LLC; (iv) Banyan Cay Dev. LLC; (v) Banyan Cay Villas, LLC; and (vi) Banyan Cay Maintenance, LLC. The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401.

*§§ 361 and 363, (III) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105(a), 362 and 364(c) and 364(d), (IV) Granting Super Priority Claims to the DIP Lender Pursuant to 11 U.S.C. 364(c), and (V) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001* [ECF No. 85] (the "Motion") filed by the above-captioned debtors and debtors in possession (the "Debtors") for interim and final orders under sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the local bankruptcy rules for the United States Bankruptcy Court for the Southern District of Florida (the "Local Bankruptcy Rules"), seeking:

(a)     authorization for the Debtors to obtain up to $3,800,000 in principal amount of postpetition financing (plus any interest, costs and attorneys' fees), (collectively, the "DIP Financing"), all on the terms and conditions set forth in: (i) this Interim Order and as evidenced by the *Debtor in Possession Senior Secured Financing Term Sheet*, among the Borrowers and U.S. Real Estate Credit Holdings III-A, LP, or its affiliate(s) (collectively, the "DIP Lender"), in favor of the DIP Lender pursuant to and based on the form of *Secured Promissory Note* (the "DIP Note"), and together with all other documents or agreements executed and delivered by the Debtors in connection therewith, collectively, the "DIP Loan Documents") and the budget annexed hereto as **Exhibit A** (the "Budget", and together with DIP Credit Term Sheet and the Loan Documents, the "DIP Facility Documents");

(b)     authorization for the Debtors to execute and deliver the DIP Note and the other DIP Facility Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c)      authorization for the Debtors to use the proceeds from the DIP Financing as permitted in the DIP Facility Documents and in accordance with this Interim Order (as defined below), the Final Order (as defined below) and the Budget;

(d)      authorization for the Debtors to grant adequate protection to DIP Lender in its capacity as pre-petition senior secured creditor (the "Prepetition Secured Lender") to the extent of any diminution in value of its interests in the Pre-Petition Collateral (as defined below) including Cash Collateral (as defined below) and subject and subordinate to the Carve-Out;

(e)      to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") authorizing the Debtors, on an interim basis, to borrow under this Interim Order and the DIP Note up to $1,200,000.00, plus interest and fees as described in paragraph 6 below; and

(f)      to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") on the Motion to be held before this Court to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, the transactions described in the foregoing clauses (a) through (c) pursuant to the Final Order;

The Interim Hearing having been held by the Court to consider the relief sought in the Motion, and upon the record of the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1.      *Disposition*.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the interim relief sought in the Motion with respect to the entry of this Interim Order that have not been previously withdrawn, waived or settled are hereby denied and overruled.

2.    *Jurisdiction and Venue.*  This Court has core jurisdiction over these chapter 11 cases (the "Chapter 11 Cases") commenced on February 16, 2023, with respect to Debtor, Banyan Cay Mezzanine Borrower, LLC, and on March 29, 2023 (the "Petition Date"), with respect to Debtors, Banyan Cay Investments, LLC, Banyan Cay Resort & Golf, LLC, Banyan Cay Dev. LLC[2], Banyan Cay Villas, LLC ("Banyan Cay Villas"), and Banyan Cay Maintenance, LLC, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C.  §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004 and the Local Bankruptcy Rules.

3.    *Notice*.  Notice of the Motion, the relief requested therein and the relief sought at the Interim Hearing was served by the Debtors by either electronic mail and/or overnight mail to, *inter alia*: (a) the Office of the United States Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33131, Attn: Heidi Feinman, heidi.a.feinman@usdoj.gov; (b) the creditors holding the twenty largest unsecured claims against the Debtors' estates; (c) Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Jordi Guso and Brian G. Rich, attorneys to the DIP Lender and Prepetition Secured Lender; (d) all other creditors asserting secured claims against Debtors' estates, including Bellefrau Group, LLC and ZJC, LLC; (e) governmental agencies required to receive notice under Bankruptcy Rule 5003(e); and (f) those parties requesting special notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes appropriate, due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (c)

---

[2] Banyan Cay Resort & Golf Club, LLC and Banyan Cay Dev. LLC are together referred to as the "Hotel Borrower", Banyan Cay Villas, LLC, Banyan Cay Resort & Golf Club, LLC and Banyan Cay Dev. LLC are collectively referred to as the "Borrowers."

and the Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4.    *Acknowledgments and Stipulations*.  The Debtors acknowledge, represent, stipulate and agree, subject to the terms of paragraph 16 below, that:

(a)    <u>Hotel Loan</u>

(i)    On June 14, 2018, Prepetition Secured Lender made a construction loan to Hotel Borrower in the original principal amount of up to $61,000,000 (the "<u>Hotel Loan</u>"). The Hotel Borrower intended to use the Hotel Loan to build the resort portion of its master-planned Banyan Cay Resort & Golf Club in West Palm Beach, including a 150-room luxury hotel.

(ii)    The Hotel Loan was advanced in accordance with the Amended and Restated Loan Agreement among Hotel Borrower and Prepetition Secured Lender dated as of September 30, 2020, as amended pursuant to that certain First Amendment to Amended and Restated Loan Agreement and other Loan Documents dated as of October 15, 2020; that certain Second Amendment to Amended and Restated Loan Agreement and other Loan Documents dated September 2, 2021; and that certain Third Amendment to Amended and Restated Loan Agreement and other Loan Documents dated December 31, 2021 (collectively, the "<u>Hotel Loan Agreement</u>").

(iii)    The Hotel Loan is also evidenced by a Second Amended, Restated and Future Advance Promissory Note dated as of September 2, 2021, payable to the order of Prepetition Secured Lender in the stated principal amount of up to Sixty-One Million and No/100 Dollars ($61,000,000.00) (the "<u>Hotel Note</u>"), which was executed by Hotel Borrower and delivered to Prepetition Secured Lender.

(b)    The Hotel Note is secured, supported, and/or guaranteed by, among other things, the:

(i)     Amended and Restated Mortgage from Hotel Borrower to Prepetition Secured Lender dated June 14, 2018 and recorded on June 18, 2018 in Official Record Book 29932, Page 121, as affected by Partial Release of Mortgage, recorded October 16, 2020 in Official Records Book 31827, Page 74, as further modified by the First Amendment to Mortgage and Other Loan Documents, dated September 30, 2020, recorded October 16, 2020 in Official Records Book 31827, Page 77, as further affected by Partial Release of Mortgage recorded December 21, 2020 in Official Records Book 32024, Page; 1376, Partial Release of Mortgage recorded September 8, 2021 in Official Records Book 32852, Page 7, as modified by Second Amendment to Mortgage and Loan Documents dated September 2, 2021 in Official Records Book 32852, Page 499, as modified by Third Amendment to Mortgage and other loan documents dated December 31, 2021, recorded in Official Records Book 33237, page 1170, all of the Public Records of Palm Beach County, Florida, (the "Hotel Mortgage"), which granted Prepetition Secured Lender a first priority lien on the property encumbered and described therein and located in West Palm Beach, Florida (the "Hotel Property").

(ii)     Assignment of Leases and Rents dated June 14, 2018 and recorded on June 18, 2018 in Official Records Book 29932, page 168, Public Records of Palm Beach County, Florida (the "Hotel Assignment of Leases and Rents");

(iii)     UCC Financing Statement recorded on June 18, 2018 in Official Records Book 29932, page 181, Public Records of Palm Beach County, Florida, as amended in UCC Financing Statement recorded on October 16, 2020 in Official Records Book 31827, page 76, Public Records of Palm Beach County, Florida, as amended in UCC Financing Statement recorded on September 8, 2021 in Official Records Book 32852, page 11 , in favor of Prepetition Secured Lender (the "Hotel UCC Financing Statement").  The UCC Financing Statement perfected

Prepetition Secured Lender's security interests in the Hotel Borrower's personal and other property;

(iv)  Second Priority Assignment of Leases and Rents by Banyan Cay Villas dated September 30, 2020 and recorded October 16, 2020 in in Official Records Book 31827, page 189, Public Records of Palm Beach County, Florida;

(v)  UCC Financing Statement recorded on October, 2020 in Official Records Book 31827, page 271, Public Records of Palm Beach County, Florida;

(vi)  Guaranty Agreement dated September 30, 2020 executed by Banyan Cay Villas, LLC (the "Villas Guaranty");

(vii)  Amended and Restated Indemnity and Guaranty Agreement dated as of September 30, 2020 executed by Domenic J. Gatto, Jr. (the "Gatto, Jr. Hotel Indemnity & Guaranty");

(viii)  Amended and Restated Indemnity and Guaranty Agreement dated September 2, 2021 executed by Kim A. Pillar (the "Pillar Hotel Indemnity & Guaranty");

(ix)  Amended and Restated Payment Guaranty dated September 2, 2021 executed by Domenic J. Gatto, Jr. to Prepetition Secured Lender (the "Gatto, Jr. Hotel Payment Guaranty");

(x)  Payment Guaranty executed by Domenic F. Gatto, Sr. dated September 2, 2021 (the "Gatto, Sr. Hotel Payment Guaranty");

(xi)  Amended and Restated Completion Guaranty Agreement dated September 30, 2020 executed by Domenic J. Gatto, Jr. to Prepetition Secured Lender (the "Gatto, Jr. Completion Guaranty"); and

(xii)  Acknowledgement and Agreement of Guarantors dated December 31, 2021 (the "Hotel Guaranty Acknowledgement").

(The loan documents listed in this paragraph 4(a) and paragraph 4(b) are collectively referred to as the "Hotel Loan Documents").

      (c)    The Villas Loan

      (i)    On September 30, 2020, Prepetition Secured Lender extended to Borrowers a loan in the original principal amount of up to Nineteen Million and No/100 Dollars ($19,000,000.00) (as the same has been increased to the new principal amount of up to $24,000,000.00 as described below, the "Villas Loan");

      (ii)    The Villas Loan was advanced in accordance with a loan agreement among Borrowers and Prepetition Secured Lender dated as of September 30, 2020, as amended pursuant to that certain First Amendment to Loan Agreement and other Loan Documents dated September 2, 2022 which, among other things, evidenced a future advance in the amount of $5,000,000.00, increasing the Maximum Principal amount from $19,000,000.00 to $24,000,000.00; as further amended pursuant to that certain Amended and Restated Loan Agreement dated December 31, 2021 (the "Villas Loan Agreement" collectively with the Hotel Loan Agreement, the "Loan Agreements"); and

      (iii)    The Villas Loan is also evidenced by the Second Amended, Restated and Future Advance Promissory Note dated December 31, 2021, in the original principal amount of $13,000,000 executed by Borrowers (the "A&R Note") and that certain Future Advance Promissory Note in the principal amount of $20,000,000.00 (the "Future Advance Note" together with the A&R Note, the "Villas Note" and collectively with the Hotel Note, the "Notes").

      (d)    The Villas Note is secured, supported, and/or guaranteed by, among other things:

      (i)    Mortgage from Banyan Cay Villas to Prepetition Secured Lender, recorded in Official Record Book 31827, Page 95, as modified by First Amendment to Mortgage

and Other Loan Documents between Borrowers and Prepetition Secured Lender, dated September 2, 2021 and recorded September 9, 2021 in Official Records Book 32852, Page 521, of the Public Records of Palm Beach County, Florida, as modified by Second Amendment to Mortgage and Other Loan Documents between Borrowers and Prepetition Secured Lender, dated December 31, 2021 and recorded January 21, 2022 in Official Records Book 33237, Page 1160, of the Public Records of Palm Beach County, Florida (the "Villas First Mortgage");

(ii)    Assignment of Leases and Rents between Banyan Cay Villas and Prepetition Secured Lender, dated September 30, 2020 and recorded in Official Records Book 31827, page 131, Public Records of Palm Beach County, Florida (the "Villas Assignment of Leases and Rents");

(iii)    UCC Financing Statement recorded in Official Records Book 31827, page 143, Public Records of Palm Beach County, Florida, in favor of Prepetition Secured Lender.  The UCC Financing Statement perfected Prepetition Secured Lender's security interests in the Banyan Cay Villas' personal and other property;

(iv)    Second Priority Mortgage, Security Agreement and Financing Statement dated September 30, 2020 from Banyan Cay Villas and recorded on October 16, 2020 in Official Records Book 31827, page 154, Public Records of Palm Beach County, Florida, as modified by the First Amendment to Second Priority Mortgage and Second Priority Assignment of Leases and Rents from Banyan Cay Villas dated September 2, 2021 and recorded on September 9, 2021 in Official Records Book 32852, page 512, Public Records of Palm Beach County;

(v)    Second Priority Assignment of Leases and Rents by Banyan Cay Villas dated September 30, 2020 and recorded October 16, 2020 in in Official Records Book 31827, page 189, Public Records of Palm Beach County, Florida;

(vi)    UCC Financing Statement recorded in Official Records Book 31827, page 202, Public Records of Palm Beach County, Florida, in favor of Prepetition Secured Lender.  The UCC Financing Statement perfected Prepetition Secured Lender's security interests in the Banyan Cay Villas' personal and other property;

(vii)    Second Priority Mortgage, Security Agreement and Financing Statement dated September 30, 2020 from Hotel Borrower and recorded on October 16, 2020 in Official Records Book 31827, page 209, Public Records of Palm Beach County, Florida, as modified by the First Amendment to Second Priority Mortgage and Second Priority Assignment of Leases and Rents from Hotel Borrower dated September 2, 2021 and recorded on September 9, 2021 in Official Records Book 32852, page 530, Public Records of Palm Beach County;

(viii)    Second Priority Assignment of Leases and Rents dated September 30, 2020 from Hotel Borrower and recorded October 16, 2020 in in Official Records Book 31827, page 251, Public Records of Palm Beach County, Florida;

(ix)    Payment Guaranty dated September 2, 2021 executed by Domenic F. Gatto, Sr. to Prepetition Secured Lender (the "Gatto, Sr. Villas Payment Guaranty");

(x)    Indemnity and Guaranty Agreement dated September 30, 2020 executed by Domenic J. Gatto, Jr. to Prepetition Secured Lender (the "Gatto, Jr. Villas Guaranty");

(xi)    Indemnity and Guaranty Agreement dated September 2, 2021 executed by Kim A. Pillar to Prepetition Secured Lender (the "Pillar Villas Guaranty");

(xii)    Payment Guaranty dated August 27, 2021 executed by Domenic J. Gatto, Jr. to Prepetition Secured Lender ("Gatto, Jr. Villas Payment Guaranty"); and

(xiii)    Completion Guaranty Agreement dated September 30, 2020 executed by Domenic J. Gatto, Jr. ("Villas Completion Guaranty").

(The loan documents listed in this paragraph 4(c) and (d) are collectively referred to as the "Villa Loan Documents", and together with the Hotel Loan Documents, the "Pre-Petition Loan Documents").

      (e)      Final Judgment of Foreclosure.

      (i)      On July 16, 2022, Prepetition Secured Lender filed a foreclosure action in the Palm Beach County Circuit Court against each of the Borrowers, Domenic J. Gatto, Jr., Domenic F. Gatto, Sr., Kim A. Pillar, and several entities, including Jacob Industries, LLC f/k/a Jacob Erecting & Construction, LLC assigned Case No. 50-2022-CA-006815-XXXX-MB (the "State Court Case").

      (ii)      On February 28, 2023, Prepetition Secured Lender obtained a Final Foreclosure Judgment in the State Court Case in the amount of $95,084,509.61, plus accruing interest, fees and expenses, in the State Court Case (the "Foreclosure Judgment"). Prepetition Secured Lender filed a Motion in the State Court seeking to amend the Foreclosure Judgment to include, accruing interest, fees, expenses and other obligations under the Pre-Petition Loan Documents. Prepetition Secured Lender asserts that it is due in excess of $97 million.

      (f)      Acknowledgement of Pre-Petition Indebtedness. The Debtors and the Prepetition Secured Lender stipulate and agree that pursuant to the Pre-Petition Loan Documents and the Final Judgment of Foreclosure, the Borrowers are indebted to Prepetition Secured Lender in the amount of: (a) $96.5 million (the "Agreed Pre-Petition Principal Amount"), plus (b) simple interest on the Agreed Pre-Petition Principal Amount of 6.25% per annum, which shall accrue from the Petition Date and which shall be paid monthly to the Prepetition Secured Lender in accordance with the DIP Facility Documents, plus (c) costs and attorneys' fees incurred from and after March 24, 2023 (the aggregate of the foregoing (a), (b) and (c), the "Pre-Petition Obligations"). The Pre-Petition Obligations are not subject to any setoff, defense, claim or

counterclaim of the Debtors, save and except the reservation of rights relating to fees and expenses set forth in paragraph 4(g) below.

(g)     Validity, Perfection and Priority of Prepetition Secured Lender's Secured Claims. The Pre-Petition Obligations are secured by first priority liens on and security interests in and upon (the "Pre-Petition Liens") substantially all of the real and personal property of the Borrowers, as more particularly described in the Pre-Petition Loan Documents (the "Pre-Petition Collateral"). The Pre-Petition Collateral includes "Cash Collateral" as defined in section 363 of the Bankruptcy Code. As of the Petition Date, (I) the Pre-Petition Liens constitute valid, binding, enforceable and perfected liens in the Pre-Petition Collateral, with priority over any and all other liens in the Pre-Petition Collateral, and subject only to liens senior by operation of law or permitted by the Pre-Petition Loan Documents (the "Permitted Priority Liens"), and the Debtors shall not raise or join any challenge or defense seeking, without limitation, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, recoupments, objections, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity; (II) the Pre-Petition Liens are senior in priority over any and all other liens on the Pre-Petition Collateral (other than Permitted Priority Liens); (III) the Pre-Petition Obligations are unconditionally owing by the Borrowers and constitute legal, valid, binding and non-avoidable obligations of the Borrowers enforceable in accordance with the terms of the Final Judgment and Pre-Petition Loan Documents; (IV) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature by the Borrowers to any of the Pre-Petition Obligations exist, and no portion of the Pre-Petition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, reductions, set-off, offset, disgorgement, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims,

cross-claims, defenses or any other challenges by the Borrowers pursuant to the Bankruptcy Code or any applicable law or regulation; and (V) the Debtors shall not raise or join in any assertion of any claims, objections, challenges, causes of action and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against Prepetition Secured Lender, or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Pre-Petition Loan Documents or the Final Judgment; and (F) the Debtors have waived, discharged and released any right to challenge any of the DIP Obligations, the priority of any of the DIP Obligations and the validity, extent and priority of the Pre-Petition Liens.  Notwithstanding anything in this paragraph 4(g) or paragraph 16(a) to the contrary, the Debtors reserve their right to object to Prepetition Secured Lender's entitlement to the recovery of attorneys' fees in connection with the defense of the claims asserted by Banyan Cay Resort Fund, LLC against Prepetition Secured Lender in the United States District Court for the Southern District of New York assigned Case No. 1:23-cv-01345-JPO (the "New York Action") and defending the counterclaim asserted by Jacobs Industries against the Prepetition Secured Lender in Case No. 50-2022-CA-006815-XXXX-MB (the "Florida Action").

(h)    Payments in Respect of Pre-Petition Secured Claims.  Any payments made on account of the Pre-Petition Obligations prior to the Petition Date were (A) payments from the proceeds or out of the Pre-Petition Collateral, and/or (B) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors.

(i)    Use of Cash Collateral and Adequate Protection.  The Debtors have requested that Prepetition Secured Lender consent to, among other things, (a) the incurrence of the DIP Obligations by the Debtors under the DIP Facility Documents, (b) the Debtors' granting of the priming DIP Liens (as defined below) on the Pre-Petition Collateral, and (c) the use of

Prepetition Secured Lender's Cash Collateral. Prepetition Secured Lender is entitled, pursuant to sections 361, 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of its interests in the Pre-Petition Collateral for any diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any the Pre-Petition Collateral, the priming of the Pre-Petition Liens by the DIP Lender pursuant to this Interim Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise.

     5.    *Findings Regarding the DIP Financing*.

     (a)    Good and sufficient cause has been shown for the entry of this Interim Order.

     (b)    The Debtors have an immediate need to obtain the DIP Financing to preserve their assets, including to pay insurance, taxes and payroll. The Debtors' access to and use of the proceeds of the DIP Financing is necessary and vital to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of their estates, to make adequate protection payments to Prepetition Secured Lender as provided in this Interim Order, and to facilitate a reorganization of the Debtors or a sale of the Debtors' assets.

     (c)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the DIP Facility Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Facility Documents without the Debtors granting the DIP Liens (as defined in paragraph 8 below) and the DIP Superpriority Claims (as defined in paragraph 7 below) under the terms and conditions set forth in this Interim Order and the DIP Facility Documents.

14

(d)  The terms of the DIP Facility Documents pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)  The DIP Facility Documents and the DIP Financing have been the subject of extensive negotiations conducted in good faith and at arms'-length among the Debtors, and the DIP Lender, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including, without limitation, (i) all loans made to the Debtors pursuant to the DIP Facility Documents and (ii) all other obligations of the Debtors under the DIP Facility Documents or this Interim Order owing to the DIP Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lender and its affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing in accordance with the terms of this Interim Order and the DIP Facility Documents is therefore in the best interest of the Debtors' estates and is consistent with the Debtors' exercise of their fiduciary duties.

6.  *Authorization of the DIP Financing and the DIP Facility Documents*.

(a)  The Debtors are hereby authorized to execute, enter into and perform under the DIP Facility Documents and to borrow thereunder up to an aggregate principal amount of $1,200,000.00 (plus interest, fees and other expenses provided for in the DIP Facility Documents),

pending entry of the Final Order, all of the foregoing in accordance with the terms of this Interim Order, the DIP Note and the other DIP Facility Documents.  All of the amounts borrowed shall be used solely for the purposes permitted under this Interim Order, the DIP Note and the other DIP Facility Documents and in accordance with the Budget.

(b)     In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized and directed to perform all acts and to execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) and to pay all reasonable fees and expenses that the DIP Lender incurs in connection with the preparation, execution and delivery of the DIP Facility Documents, or the Debtors' performance of their obligations under the DIP Facility Documents and the DIP Financing, including without limitation:

(i)      the execution, delivery and performance of the DIP Facility Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Facility Documents, in these cases in such form as the Debtors and the DIP Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Facility Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications are material; and

(iii)    the performance of all other acts required under or in connection with the DIP Facility Documents.

(c)     Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Interim Order and the DIP

Facility Documents.  No obligation, payment, transfer or grant of security under the DIP Facility

Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable

under the Bankruptcy Code or under any applicable nonbankruptcy law (including without

limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or

common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.      *DIP Superpriority Claims*.  Subject to the Carve-Out (as defined in paragraph 13

below), pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall

constitute allowed senior administrative expense claims (the "DIP Superpriority Claims") against

the Debtors with priority over any and all administrative expenses and all other claims against each

the Debtors, now existing or hereafter arising, of any kind whatsoever, including without

limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the

Bankruptcy Code, and over any and all administrative expenses or other claims arising under

sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the

Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien

or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of

section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed

under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be

payable from and have recourse to all prepetition and postpetition property of the Debtors and all

proceeds thereof including, subject to the entry of the Final Order, causes of action under chapter

5 of the Bankruptcy Code and the proceeds thereof (collectively, "Avoidance Actions").

8.      *DIP Liens*.  As security for the DIP Obligations, and subject to the Carve-Out (as

defined in paragraph 13 below), effective and perfected upon the date of this Interim Order and

without the necessity of the execution by the Debtors (or recordation or other filing) of security

agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any Collateral (as defined in this paragraph 8), the following security interests and liens are hereby granted by the Debtors to DIP Lender (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "Collateral", and all such liens and security interests granted to the DIP Lender, pursuant to this Interim Order and the DIP Facility Documents, the "DIP Liens"):

   (a)  First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority senior lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors , whether existing on or as of the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, enforceable and unavoidable liens or are not subject to valid, enforceable and unavoidable liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, the real property described in the attached **Exhibit B** ("Lot 21") and any and all unencumbered cash, cryptocurrency, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing;

   (b)  Junior Liens on Encumbered Collateral.  Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected second priority senior lien on, and security interest in the real property and

improvements more particularly described on the attached **Exhibit C** (the "Encumbered Lots"), that shall be junior and subordinate only to the lien (if any) of Bellefrau Group, LLC and ZJC, LLC; and

(c)    First Priority Priming Liens.    Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, automatically perfected, non-avoidable, security interest in all tangible and intangible prepetition and postpetition property of the Debtors constitutes the Pre-Petition Collateral (the "DIP Priming Lien").  The DIP Priming Lien on the Pre-Petition Collateral is senior in priority and superior to any security, mortgage, collateral interest, lien, claim or interest to or on, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

9.    *Adequate Protection for Prepetition Secured Lender.*  As adequate protection for and to the extent of any diminution in the value of the Pre-Petition Collateral resulting from, among other things, the use of Cash Collateral, the incurrence of the DIP Obligations, and the granting of the DIP Liens and the agreement of Prepetition Secured Lender to subordinate its right to receive payment from the proceeds of Pre-Petition Collateral to the Carve-Out (collectively, the "Prepetition Lender Diminution Claim"), Prepetition Secured Lender is hereby granted (in each case subject and subordinate to the DIP Liens, the DIP Superpriority Claims and the Carve-Out) the following adequate protection (collectively, the "Adequate Protection Obligations"):

(a)    Adequate Protection Liens.    Subject to paragraph 16 hereof, to secure the Prepetition Lender Diminution Claim, Prepetition Secured Lender is, solely to the extent of the Prepetition Lender Diminution Claim, hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security

agreements, pledge agreements, financing statements and/or other agreements or instruments) valid, perfected, postpetition security interests and liens (the "Replacement Liens") in and on all of the on all property that constitutes the Pre-Petition Collateral, *provided*, *however*, that the Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof, and (ii) the Carve-Out.

(b)    Adequate Protection Superpriority Claims.  Subject to paragraph 16 hereof, as further adequate protection for and solely to the extent of the Prepetition Lender Diminution Claim, Prepetition Secured Lender is hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Superpriority Claim").  The Adequate Protection Superpriority Claim shall be subject and subordinate only to the DIP Superpriority Claims and the Carve-Out.

(c)    Adequate Protection Payments.  As additional adequate protection, Prepetition Secured Lender shall be entitled to cash payments on the first day of each month, which payments shall each be in the amount calculated as (A) the amount of the Prepetition Obligations as of the Petition Date *multiplied by* (B) a rate of 6.25% per annum (computed on the basis of a 360-day year of twelve 30-day months); (ii) the Debtors shall maintain any insurance policies that were applicable to the Prepetition Collateral as of the Petition Date and shall maintain the Prepetition Collateral in good working order; and (iii) Prepetition Secured Lender shall be entitled to the additional benefits set forth in this Interim Order, including paragraphs 16 (Challenge

Period), 17 (Preservation of Rights Granted Under the Order) and 18 (Limitation on Use of DIP Financing Proceeds and Collateral) hereof.

(d)      <u>Reservation of Rights</u>.    Until such time as DIP Lender and Prepetition Secured Lender have each received Indefeasible Payment of the DIP Obligations and the Pre-Petition Obligations (including post-petition interest, costs and attorneys' fees) respectively, Prepetition Secured Lender and DIP Lender retain all their respective rights and remedies under the Pre-Petition Loan Documents and the DIP Facility Loan Documents, respectively, and at law and in equity.  "Indefeasible Payment" means the payment in full, in cash, of all Pre-Petition Obligations and DIP Obligations owing to Prepetition Secured Lender and DIP Lender that is not subject to any pending or threatened demand, claim demand or cause of action, seeking avoidance, recharacterization, equitable subordination, marshaling or any other form of recovery (in whole or in part) including, without limitation, on account of or in connection with the claims asserted in the New York Action and/or the Florida Action.  For the avoidance of doubt, the Indefeasible Payment to the Prepetition Secured Lender shall not terminate, modify or limit the indemnitors' obligations under the Hazardous Substances Indemnity Agreement dated June 14, 2018, which shall survive and remain fully enforceable by its terms.

(e)      <u>Consent to Priming and Adequate Protection</u>.  Prepetition Secured Lender consents to the priming provided for herein; *provided*, *however*, that such consent to the priming and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Interim Order relating to the DIP Facility Documents and DIP Note set forth herein, and such consent shall not be deemed to extend to any replacement or other debtor-in-possession financing other than the DIP Note provided under the DIP Facility Documents; *provided*, *further*, that such consent shall be of no force and effect in the event this Interim Order is not entered and the DIP Facility Documents and DIP Note as set forth herein are not approved.

10.     *Events of Default.*  The occurrence of any of the following events, unless waived in writing in accordance with the DIP Facility Documents, shall constitute an "Event of Default": (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order; (b) the Debtors seek any modification or extension of this Interim Order or the Final Order without the consent of the DIP Lender; (c) any application is filed by the Debtors for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or otherwise, or any lien in the Chapter 11 Cases, which are *pari passu* with or senior to the DIP Obligations or the DIP Liens; (d) the (i) commencement of any action by the Debtors or (ii) support by the Debtors of the commencement of any action by any other party-in-interest with standing against DIP Lender to subordinate or avoid any liens made in connection with the DIP Facility Documents or to avoid any obligations incurred in connection with the DIP Facility Documents; (e) any order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any Collateral; (f) the Debtors shall assert in any pleading filed in any court that any material provision of this Interim Order or the Final Order is not valid and binding for any reason; or (g) the occurrence of an "Event of Default" under the DIP Credit Agreement.

11.     *Remedies after Event of Default.*  Upon the occurrence and during the continuation of an Event of Default and notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to the expiration of the Remedies Notice Period (as defined herein), the DIP Lender, in its discretion, may declare (a) all DIP Obligations owing under the DIP Facility Documents to be immediately due and payable, (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (c) the

termination of the DIP Financing and the DIP Facility Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations, (d) that the Carve-Out has been triggered through the delivery of written notice, (e) the termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, and (f) the imposition of the default rate of interest set forth in the DIP Credit Agreement (any of the foregoing shall be referred to as a "Termination Declaration").  The Termination Declaration shall be given by electronic mail or facsimile (or other electronic means) to counsel to the Debtors, counsel for the official committee of unsecured creditors (if appointed) (the "Committee"), and the U.S.  Trustee and filed on docket of the Chapter 11 Cases (and the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date").  Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that four (4) business days after the Termination Declaration Date (such four (4) business day period, the "Remedies Notice Period") the DIP Lender shall be entitled to immediately exercise its rights and remedies in accordance with the DIP Facility Documents and/or this Interim Order, as the case may be, and shall be permitted to satisfy the DIP Obligations, the DIP Superpriority Claim and the DIP Liens in each case subject to the Carve-Out (as defined in paragraph 13 below).  During the Remedies Notice Period (A) the Debtors may use Cash Collateral solely to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Budget, and (B) the Debtors shall be entitled to seek an emergency hearing before the Court, within the Remedies Notice Period, for the purpose of contesting whether a Termination Event has occurred and/or is not continuing. Unless during the Remedies Notice Period (a) the Debtors seek emergency or expedited relief before the Bankruptcy Court, and (b) the Bankruptcy Court issues a notice scheduling a hearing (which hearing may take place based on the Bankruptcy Court's availability after the Remedies Notice Period has or will expire) (the events described in subparagraphs (a) and (b) of this

paragraph 15 are together defined as an "Abatement"), the automatic stay, as to the DIP Lender, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Unless an Abatement has occurred, upon expiration of the Remedies Notice Period, the DIP Lender shall be permitted to exercise all remedies set forth herein and in the DIP Facility Documents, and as otherwise available at law, without further order of or application or motion to the Court.

12. *Limitation on Charging Expenses Against Collateral*.  Subject only to and effective upon entry of the Final Order, notwithstanding anything to the contrary contained herein, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

13. *Carve-Out.*  The DIP Superpriority Claims and DIP Liens granted to the DIP Lender pursuant to this Interim Order shall be junior and subordinate to (a) all fees required to paid by the Debtors to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (b) all fees due the Clerk of the Court, (c) the allowed fees and disbursements as may be awarded to the professionals of the Debtors (the "Debtor Professionals") from time to time pursuant to Bankruptcy Code § 330, in the aggregate amount set forth in the Budget and only to the extent such fees were incurred prior to an Event of Default but not yet paid, and (d) up to $25,000.00 in

24

aggregate fees and expenses incurred by the Debtor Professionals following an Event of Default (collectively, the "Carve-Out").

14. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Lender or Prepetition Secured Lender pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

15. *Perfection of DIP Liens.*

(a)     The DIP Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of this Interim Order.  The Debtors shall execute and deliver to the DIP Lender, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c)     Any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Debtors to pledge, grant, sell, assign or otherwise transfer any such interest or the proceeds thereof or other Collateral, is hereby and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting the DIP Lender a security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Borrowers in favor of the DIP Lender in accordance with the terms of the DIP Facility Documents and this Interim Order.

16.     *Reservation of Certain Third Party Rights and Bar of Challenges and Claims*.

(a)     Upon entry of this Interim Order, the Debtors' acknowledgements, agreements and stipulations set forth in paragraph 4 above (the "Stipulations") shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors) in all circumstances and for all purposes.  Notwithstanding anything to the contrary in this Interim Order, nothing herein shall waive, release or otherwise affect any of the rights, claims and defenses of Domenic J. Gatto, Jr., Kim A. Pillar and Domenic F. Gatto, Sr., on the one hand, and the Prepetition Secured Lender, on the other,  against each other arising from or related to any of the Pre-Petition Loan Documents .

(b)     The Stipulations shall be binding upon each other party in interest, including the Committee, if any, unless such Committee or any other party in interest having standing other

than the Debtors (or if the Chapter 11 Cases are converted to cases under chapter 7 (the "Successor Case") prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case), first commences, by the later of (x) the date that is sixty (60) calendar days from the entry of this Interim Order and (y) any later date as has been agreed to, in writing, by Prepetition Secured Lender (such time period established by the later of clauses (x) and (y), the "Challenge Period"), and the date that is the next calendar day after the termination of the Challenge Period with respect to Prepetition Secured Lender, in the event that (i) no Challenge (as defined below) is properly raised during the Challenge Period with respect to Prepetition Secured Lender, or (ii) such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Stipulations or (B) a contested matter, adversary proceeding or other action against Prepetition Secured Lender, in connection with or related to the DIP Obligations or the validity, priority , or the actions or inactions of Prepetition Secured Lender arising out of or related to the DIP Obligations or the Pre-Petition Loan Documents, or otherwise, including, without limitation, any claim against Prepetition Secured Lender, in the nature of a "lender liability" cause of action, setoff, counterclaim or defense to the DIP Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code (in each case including a contested matter, adversary proceeding or other action or "claim" brought derivatively on behalf of the Debtors' estates but excluding those under section 506(c) of the Bankruptcy Code) ((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding or other action.

(c)    Upon the applicable Challenge Period Termination Date with respect to Prepetition Secured Lender, and for all purposes in the Chapter 11 Cases and any Successor Case, (i) all payments made to or for the benefit of Prepetition Secured Lender pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Pre-Petition Obligations, shall be deemed to be a fully allowed and fully secured claim within the meaning of section 506 of the Bankruptcy Code and (iv) the Stipulations in paragraph 4 hereof shall be binding on all parties in interest, including any Committee, as if such parties had made such Stipulations.

17.    *Preservation of Rights Granted Under the Order*.

(a)    Subject to the Carve-Out (as defined in paragraph 13 above), no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order or the DIP Facility Documents to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding and the Commitment (as defined in the DIP Note) has not been terminated, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitment shall have been terminated (i) the Debtors shall not seek, and it shall constitute an immediate Event of Default under the DIP Note if the Debtors seek, or if there is entered, any modification of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP

Lender, or (ii) it shall constitute an immediate Event of Default under the DIP Note if any order is entered converting or dismissing the Chapter 11 Cases.  If an order dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (w) the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Superpriority Claims and the Replacement Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, and the Commitment shall have been terminated, (x) such DIP Superpriority Claims, DIP Liens, Adequate Protection Superpriority Claims and Replacement Liens shall, notwithstanding such dismissal, remain binding on all parties in interest, (y) the other rights granted by this Interim Order shall not be affected, and (z) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender, or Prepetition Secured Lender of the effective date of such reversal, stay, modification or vacation, as applicable, or (ii) the validity, priority or enforceability of the DIP Liens or the Replacement Liens. Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the DIP Lender prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender, or Prepetition Secured Lender, shall be entitled to all of the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Facility Documents with respect to all DIP Obligations and Adequate Protection Obligations.

(d)    Except as expressly provided in this Interim Order or in the DIP Facility Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the Replacement Liens and all other rights and remedies of the DIP Lender and Prepetition Secured Lender granted by the provisions of this Interim Order and the DIP Facility Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Cases, or (ii) the entry of an order confirming a plan of reorganization for the Debtors and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Facility Documents shall continue in the Chapter 11 Cases, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Replacement Liens, the Adequate Protection Obligations, the Adequate Protection Superpriority Claims and all other rights and remedies of the DIP Lender or Prepetition Secured Lender as applicable, granted by the provisions of this Interim Order and the DIP Facility Documents shall continue in full force and effect until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash, and the Commitment has been terminated.

18.    *Limitation on Use of DIP Financing Proceeds and Collateral*.  The Debtors shall use the proceeds of the DIP Financing solely as provided in this Interim Order and in the DIP Facility Documents (including, but not limited to, the Budget).  Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Note may be used

(a) for professional fees and expenses incurred for any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise) against the DIP Lender or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by the DIP Lender or Prepetition Secured Lender or asserting any defense, claim, cause of action, counterclaim, or offset with respect to the Pre-Petition Obligations, the DIP Obligations or the security interests in or liens on the Collateral or against the DIP Lender or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (b) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Facility Documents or this Interim Order, (c) to seek to modify any of the rights granted to the DIP Lender under this Interim Order or under the DIP Facility Documents, in these cases without the DIP Lender's prior written consent, which may be given or withheld by the DIP Lender in the exercise of its respective sole discretion, or (d) pay any amount on account of any claims arising prior to the Petition Date without the DIP Lender's prior written consent, which may be given or withheld by the DIP Lender in the exercise of its respective sole discretion, unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Facility Documents (including, but not limited to, the Budget).

19.    *Lender's Fees and Expenses.*  Provided that the closing contemplated by and in the DIP Facility Documents occurs, the Debtors are authorized and directed to pay all reasonable and documented out-of-pocket expenses of the DIP Lender incurred in connection with the monitoring of the Chapter 11 Cases, the representation of the Prepetition Secured Lender, the DIP Financing and the preparation and negotiation of the DIP Facility Documents, as provided in the DIP Facility Documents, including without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and

indemnification and reimbursement of fees and expenses (collectively, the "DIP Negotiation Expenses").  Payment of all such DIP Negotiation Expenses shall not be subject to allowance by the Court.  Professionals for the DIP Lender shall not be required to comply with the U.S.  Trustee fee guidelines; provided, however, that on or before receiving payment or reimbursement after the Petition Date for any professional fees incurred by the DIP Lender pursuant to the DIP Facility Documents, the DIP Lender shall provide a summary fee statement along with a summary of tasks performed by all professionals during such period (such statement, a "Fee Statement") to the U.S. Trustee and counsel for the Committee (if appointed) contemporaneously with the delivery thereof to the Debtors.  To the extent that the Debtors, the U.S.  Trustee, or the Committee has an objection to the reasonableness of the fees and expenses of any such professional and cannot resolve such objection within ten (10) days of receipt of the Fee Statement, then the Debtors, the U.S.  Trustee, or Committee, as applicable, shall file with this Court and serve on such professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such professionals' fees and expenses, and any failure by the Debtors, the U.S.  Trustee, or Committee to file a Fee Objection within the ten (10) day period shall constitute a waiver of any right of such party to object to the applicable Fee Statement.  The Fee Statement shall not be required to comply with any particular format, may be in summary form only, but must at a minimum include a general, brief description of the nature of the matters worked on, a list of the professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, shall include the year of law school graduation for each attorney; *provided*, that the Debtors, the U.S.  Trustee, and the Committee reserve the right to seek that copies of such invoices containing the detailed time entries of the applicable professional be provided to such party (and each applicable professional reserves all rights to object to such request and to redact privileged, confidential or sensitive information from any

information provided to such parties). Any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a Fee Statement shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall promptly pay (a) the undisputed fees, costs, and expenses reflected on any Fee Statement to which a Fee Objection has been timely filed, (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed, and (c) all fees, costs and expenses subject to a Fee Objection that are ultimately allowed by a final, non-appealable order resolving such Fee Objection, or pursuant to a consensual resolution of the Fee Objection reached by the DIP Lender and the party timely submitting such Fee Objection. All unpaid fees, costs, expenses, and charges of the DIP Lender that have not been disallowed by this Court on the basis of a timely filed Fee Objection shall constitute DIP Obligations and shall be secured by the Collateral.

20. *Exculpation.* Nothing in this Interim Order, the DIP Facility Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses or maintenance of assets, or in connection with its restructuring and sale efforts. So long as the DIP Lender complies with its obligations under the DIP Facility Documents and its obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

21. *Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order and the DIP Facility Documents, the provisions of this Interim Order shall govern.

22. *Retention of Jurisdiction.*  The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

23. *Binding Effect; Successors and Assigns.*  The DIP Facility Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including without limitation, the DIP Lender, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) and shall inure to the benefit of the DIP Lender and the Debtors and their respective successors and assigns, *provided* that the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

24. *Limitation of Liability.*  The Debtors shall seek in the Final Order, in addition to the protections offered to the DIP Lender in this Interim Order, the following provision:  "In determining to make any loan or other extension of credit under the DIP Note, or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the DIP Facility Documents, the DIP Lender shall not (i) be deemed to be in "control" of the operations of the Debtors, (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estate, and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are

34

used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C.  §§ 9601, et seq., as amended, or any similar federal or state statute)."

25.    *Credit Bid.*  The DIP Lender and Prepetition Secured Lender shall be permitted, but not compelled, to credit bid up to the full amount of the (x) Pre-Petition Obligations, plus (y) the DIP Obligations in connection with any sale of the Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for the Debtors under section 725 of the Bankruptcy Code.

26.    *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable effective as of the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

27.    *Headings.*  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

28.    *Final Hearing*.  The Final Hearing will be held by this Court on _____, **2023** at _____ (prevailing Eastern time).  The Debtors shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Committee.  Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon: (i) the Debtors' chief restructuring officer, McHale, P.A., at 1601 Jackson Street, # 200, Fort Myers, Florida 33901, jerrym@thereceiver.com; (ii) the counsel to the Debtors, Pack Law, at 51 NE 24th Street,

#108, Miami, Florida 33137, joe@packlaw.com and jessey@packlaw.com; (iii) the Prepetition Secured Lender's and DIP Lender's counsel, Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, Florida 33131, brich@bergersingerman.com and jguso@bergersingerman.com; (iv) Bellefrau Group, LLC's counsel, Venable LLP, 100 S.E. Second Street, 44thth Floor, Miami, Florida 33131, pjbattista@venable.com; and (v) ZJC, LLC's counsel, Cohen Norris Wolmer Ray Telepman Berkowitz & Cohen, 712 U.S. Highway One, Suite 400, North Palm Beach, Florida 33408, jst@cohennorris.com; (vi) the Office of the United States Trustee, Region 21, 51 SW First Avenue, Suite 1204, Miami, Florida 33130, heidi.a.feinman@usdoj.gov; and (v) all other parties who have requested notice in these Chapter 11 Cases (the "Notice Parties"), and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of Florida, in the Chapter 11 Cases to allow actual receipt by the foregoing no later than _____, 2023 at 4:30 p.m. (prevailing Eastern time). All replies to objections shall be served on the objecting party and the Notice Parties, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of Florida, in the Chapter 11 Cases to allow actual receipt by the foregoing no later _____, 2023 at 4:30 p.m. (prevailing Eastern Time).

# # #

<u>Submitted by:</u>
Joseph A. Pack, Esq.
Jessey J. Krehl, Esq.
Pack Law
*Proposed Counsel for the Debtors*
51 Northeast 24th Street, Suite 108
Miami, FL 33137
Tel. (305) 916-4500
Email:  joe@packlaw.com
Email:  jessey@packlaw.com

*(Attorney Pack is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*