UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

_____

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | Chapter 11 |
| Banyan Cay Resort & Golf, LLC, *et al.*,[1] | ) | |
| | ) | |
| | ) | Case No. 23-12386-EPK |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

_____

**DISCLOSURE STATEMENT FOR THE DEBTORS' JOINT
PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**PACK LAW**
51 NE 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500

Joseph A. Pack
Email:  joe@packlaw.com
Florida Bar No. 117882

Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*

Dated: June 11, 2023

---

[1]  The Debtors are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf, LLC; (iv) Banyan Cay Dev., LLC; (v) Banyan Cay Villas, LLC; and (vi) Banyan Cay Maintenance, LLC. The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401.

THE ABOVE-CAPTIONED DEBTORS AND DEBTORS IN POSSESSION (COLLECTIVELY, THE "**DEBTORS**" OR THE "**PLAN PROPONENTS**") PROVIDE THE INFORMATION IN THIS DISCLOSURE STATEMENT (THE "**DISCLOSURE STATEMENT**") IN CONNECTION WITH THEIR JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (THE "**PLAN**") TO HOLDERS OF CLAIMS AND INTERESTS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE," OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS. ANY DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, BASED UPON INFORMATION CURRENTLY AVAILABLE TO THE DEBTORS.

AS TO CONTESTED MATTERS, EXISTING LITIGATION INVOLVING, OR POSSIBLE ADDITIONAL LITIGATION TO BE BROUGHT BY, OR AGAINST, THE DEBTORS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, A STIPULATION, OR A WAIVER, BUT RATHER AS A STATEMENT MADE WITHOUT PREJUDICE SOLELY FOR SETTLEMENT PURPOSES, WITH FULL RESERVATION OF RIGHTS, AND IS NOT TO BE USED FOR ANY LITIGATION PURPOSE WHATSOEVER BY ANY PERSON, PARTY OR ENTITY. AS SUCH, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NONBANKRUPTCY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY IN INTEREST, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, FINANCIAL OR OTHER EFFECTS OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS OR MAY CONTAIN, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THIS CHAPTER 11 CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT MAY BE ATTACHED HERETO AND/OR INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE

SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.   IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.  THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTORS' MANAGEMENT AND LEGAL COUNSEL HAVE REVIEWED THE FINANCIAL INFORMATION PROVIDED HEREIN.   ALTHOUGH THE DEBTORS USED REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED. THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, FACTS HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS FILED.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.   THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING DEBTOR OR THE VALUE OF THE PROPERTY OTHER THAN AS SET FORTH HEREIN.  **PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS, ALTERNATIVES TO CONFIRMATION, AND CONSUMMATION OF THE PLAN, ALL DESCRIBED IN GREATER DETAIL HEREIN.**

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY ......................................................................... 1
    A. Overview of Chapter 11 ............................................................................... 1
    B. Rules of Interpretation and Construction ................................................... 1
    C. Recommendation ......................................................................................... 2
II. BACKGROUND INFORMATION ....................................................................... 2
    A. The Bankruptcy Case .................................................................................. 2
    B. Debtors' Operations ..................................................................................... 2
    C. Selection, Court Approval, and Powers of Independent Chief Restructuring Officer. ......... 3
    D. Controversy with the Prepetition Secured Lender ...................................... 3
    E. Controversy with the EB-5 Lender and Inter-Creditor Dispute ................. 4
    F. Controversy with Jacob Industries, LLC ..................................................... 5
    G. The Sale Process; Cancellation of the Auction ........................................... 5
    H. Claims in the Chapter 11 Case .................................................................... 6
    I. Allocation and Construction Lien Disputes; Risk of Non-Payment to Junior Classes ........... 6
III. SUMMARY OF THE PLAN .............................................................................. 7
    A. Treatment of Claims and Interests under the Plan ...................................... 7
        1.    Classification and Treatment of Claims ........................................ 7
        2.    Treatment of Unclassified Claims under the Plan ........................ 8
        a.    Administrative Expense Claims ..................................................... 8
        b.    Professional Claims ........................................................................ 8
        c.    Priority Tax Claims ........................................................................ 9
        3.    Treatment of Classified Claims and Interests under the Plan ...... 9
        1.    Class 1 – Other Secured Claims .................................................... 9
        2.    Class 2 – Priority Non-Tax Claims ................................................ 10
        3.    Class 3 – Prepetition Secured Loan Claims .................................. 10
        4.    Class 4 – General Unsecured Claims ............................................ 11
        5.    Class 5 – EB-5 Claims ................................................................... 11
        6.    Class 6 – Intercompany Claims ..................................................... 11
        7.    Class 7 – Section 510(b) Claims ................................................... 11
        8.    Class 8 – Intercompany Interests ................................................... 12
        9.    Class 9 – Interests in Maintenance ................................................ 12
        10.    Class 10 – Class B Interests in Parent ......................................... 12
        11.    Class 11 – Class A Interests in Parent ......................................... 12
    B. Voting Procedures and Requirements ......................................................... 13
        1.    Vote Required for Acceptance by a Class ..................................... 13
        2.    Impaired Classes of Claims and Interests Entitled to Vote ......... 13
        3.    Claims and Interests Not Entitled to Vote .................................... 13
        4.    Voting Procedures .......................................................................... 13
        5.    Cramdown ...................................................................................... 14
    C. Substantive Consolidation ........................................................................... 14
    D. Implementation of the Plan ......................................................................... 15
    E. Distributions under the Plan ........................................................................ 16
        1.    Distribution Record Date ............................................................... 16
        2.    Distribution Process ....................................................................... 16
        3.    The Plan Administrator .................................................................. 16
        4.    Setoffs ............................................................................................ 17
        5.    Allocation of Distributions Between Principal and Interest ......... 17
    F. Procedures for Disputed Claims and Interests ............................................ 17
        1.    Disputed Claims Process ................................................................ 17
        2.    Claims Administration Responsibilities ........................................ 17
        4.    Single Satisfaction of Claims ........................................................ 18
        5.    Disallowance of Claims and Interests ........................................... 18

G. Executory Contracts and Unexpired Leases ................................................................ 18
H. Conditions Precedent to Effective Date ...................................................................... 18
    1.    Conditions Precedent ........................................................................................ 18
    2.    Waiver of Conditions ........................................................................................ 18
    3.    Effect of Non-Occurrence of Conditions to Consummation ............................ 18
I. Effect of Confirmation ................................................................................................. 19
    1.    Binding Effect ................................................................................................... 19
    2.    Injunction .......................................................................................................... 19
    3.    Debtor Releases ................................................................................................. 19
    4.    Releases by Holders of Claims and Interests .................................................... 20
    5.    Exculpation ....................................................................................................... 20
    6.    Release of Liens ................................................................................................ 20
J. Retention of Jurisdiction .............................................................................................. 21
K. Miscellaneous Provisions of the Plan ......................................................................... 22
    1.    Payment of Statutory Fees ................................................................................ 22
    2.    Transfer Taxes .................................................................................................. 22
    3.    Modifications to Plan and Plan Supplement ..................................................... 23
    4.    Other Amendments ........................................................................................... 23
    5.    Revocation or Withdrawal of the Plan .............................................................. 23
    6.    Governing Law .................................................................................................. 23
    7.    Time .................................................................................................................. 23
    8.    Binding Effect of Plan ...................................................................................... 23
    9.    Entire Agreement .............................................................................................. 24
    10.   Section 1125(e) Good Faith Compliance .......................................................... 24
    11.   Notices .............................................................................................................. 24
IV. RISKS AND CONSIDERATIONS .............................................................................. 24
    A. Bankruptcy Considerations ...................................................................................... 24
    B. Tax Consequences .................................................................................................... 25
    C. No Duty to Update Disclosures ................................................................................ 25
    D. Representations Outside this Disclosure Statement .................................................. 25
    E. No Admission ........................................................................................................... 26
V.  PLAN CONFIRMATION AND CONSUMMATION ................................................. 26
    A. Plan Confirmation Hearing ...................................................................................... 26
    B. Plan Confirmation Requirements under the Bankruptcy Code .................................. 26
    C. Plan Consummation .................................................................................................. 27
    D. Best Interests of Creditors Test ................................................................................ 27
    E. Liquidation Analysis ................................................................................................ 27
    F. Feasibility ................................................................................................................ 28
    G. Acceptance by Impaired Classes .............................................................................. 28
    H. Section 1129(b) ........................................................................................................ 28
    1.    No Unfair Discrimination ................................................................................. 28
    2.    Fair and Equitable ............................................................................................ 29
    3.    Fair and Equitable ............................................................................................ 29
VI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ............ 30
    A. Chapter 7 Liquidation .............................................................................................. 30
    B. Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code ............................ 30
    C. Dismissal of the Debtor's Chapter 11 Case .............................................................. 30
VII. RECOMMENDATION AND CONCLUSION ............................................................. 31

## I.      INTRODUCTION AND SUMMARY

You are receiving this package because you hold a Claim against one or more of the Debtors and are entitled to vote on the enclosed Plan.   You are encouraged to read the remaining sections of this Disclosure Statement, providing important information regarding both the Plan and the bankruptcy process itself.  For the reasons set forth below, the Debtors strongly recommend that you vote to **ACCEPT** the Plan.  A copy of the Plan is attached hereto as **Exhibit A** and is incorporated by reference.

**PURSUANT TO THE BANKRUPTCY CODE, ONLY CREDITORS WHO ACTUALLY VOTE ON THE PLAN WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER THE REQUIRED NUMBER OF ACCEPTANCES HAS BEEN OBTAINED.  FAILURE TO FILE WITH THE COURT A PROPERLY COMPLETED BALLOT BY THE VOTING DEADLINE WILL RESULT IN AN ABSTENTION AND, CONSEQUENTLY, THE VOTE MAY NOT BE COUNTED AS EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN.**

### A.      Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  In addition to permitting debtor rehabilitation, Chapter 11 provides a mechanism for businesses to liquidate their assets in a way that promotes equality of treatment for similarly situated holders of claims and equity interests, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the commencement of the chapter 11 case.  The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a plan is the principal objective of a Chapter 11 case.  A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code, to the terms and conditions of the confirmed plan. Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan provides for the treatment of claims and equity interests in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, Section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the chapter 11 plan.  This Disclosure Statement is being submitted in accordance with the requirements of Section 1125 of the Bankruptcy Code, and the Debtors shall seek approval of this Disclosure Statement concomitantly with confirmation of the Plan.

### B.      Rules of Interpretation and Construction

Unless otherwise specified, all section or exhibit references in the Disclosure Statement are to the respective section in, or exhibit to, the Disclosure Statement, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Disclosure Statement as a whole and not to any particular section, subsection, or clause contained therein. The rules of construction contained in Section 1102 of the Bankruptcy Code shall apply to the Disclosure Statement. The headings in this Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the interpretation of the Disclosure Statement. Unless otherwise provided, any reference in this Disclosure Statement to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is

gender neutral. In computing any period of time set forth in the Disclosure Statement, the provisions of Bankruptcy Rule 9006(a) shall apply.

### C.    Recommendation

The Debtors believe that the Plan will maximize the value of Debtors' Estates and accomplish the objectives of chapter 11 of the Bankruptcy Code and that acceptance of the Plan is in the best interests of Debtors, creditors, the Estates, and all parties in interest.  Accordingly, they urge creditors to vote to accept the Plan.

## II.    BACKGROUND INFORMATION

### A.    The Bankruptcy Case

On March 29, 2023 (the "Petition Date"), each of the Debtors other than Banyan Cay Mezzanine Borrower, LLC commenced the above-captioned bankruptcy cases (the "Bankruptcy Cases" or "Cases") by filing a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code.  Debtor Banyan Cay Mezzanine Borrower, LLC filed its Petition on February 16, 2023.  The Debtors' Bankruptcy Cases are being jointly administered under Case No. 23-12386.  The Debtors remain in possession of its property and continues to manage their businesses and affairs as a debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.  No official committee of unsecured creditors has been appointed in the Case.

### B.    Debtors' Operations

The Debtors constitute a business enterprise that invests in, owns, and operates an approximately 200-acre resort and golf complex in West Palm Beach, Florida called Banyan Cay Resort & Golf Club, along with the ownership of certain real property incidental thereto and the provision of services related thereto (the "Development").  The Debtors are comprised of six entities that collectively own and operate the Banyan Cay Resort & Golf Club in West Palm Beach, Florida.  The Debtors first acquired the property upon which the Development sits in August 2015 from Palm Tree Golf Management, LLC.

Debtor Banyan Cay Resort & Golf, LLC is primarily responsible for the ownership, management, and operation of the golf club and restaurant portion of the Development, and oversaw the construction of the hotel portion of the Development.  The golf club has been operating since November 2017 in its current form and has garnered a reputation as a premier golf club and mainstay of the community.  For example, since opening in late 2017, the club has hosted professionally-sanctioned tournaments, including the Honda Classic Open Qualifier of the South Florida Section of the Professional Golfers' Association of America ("PGA"), has hosted the Royal Bank of Canada Wealth Management High Net Worth Tournament, attended by several PGA tour players including some of the best players in the world, and engaged in robust community work, including hosting first responders meetings for local fire fighters, police, and nurses, and extensive support of the Hope for Warriors program, through which the club allows wounded veterans to play on course and attend clinics and lessons sponsored by the club.  Before the most recent season renewal, the club supported an impressive 236 members, and despite the recent financial and construction difficulties (and associated negative press), maintains a membership of under 200 members.

Debtor Banyan Cay Villas, LLC is primarily responsible for the ownership and development of certain duplex units to-be constructed on the lots directly adjacent to the resort portion of the Development, called the "Villas."  The Villas are scheduled to be comprised of eleven total buildings, each with a pair of two-story units of 2,200 square feet each.

Debtor Banyan Cay Dev. LLC was initially formed to accomplish the acquisition of the Development property and serve as the master developer.  Currently, the material assets of this Debtor

entity include twenty-eight lots zoned for single-family development, and a "condo pad" zoned for 179 units.

Debtor Banyan Cay Mezzanine Borrower, LLC owns the membership interests of Banyan Cay Resort & Golf, LLC, Banyan Cay Villas, LLC, and Banyan Cay Dev. LLC. It is also the borrower party under the loan that forms the basis of the EB-5 Lender's Claim.

Debtor Banyan Cay Maintenance, LLC owns certain real property in the Development that is not encumbered by the Debtors' primary Prepetition Secured Lender, including the maintenance parcel related thereto, and provides access to such maintenance parcel to the operating Debtors.

Debtor Banyan Cay Investment directly owns Debtor Banyan Cay Mezz Borrower, and in its current form serves as a joint venture between two classes of members: (a) Class A members; DJG Dev. LLC, a Florida corporation with a 70.25% total ownership interest in Banyan Cay Investment; and Lexxcom LLC, a Florida limited liability company with a 20% total ownership interest; and (b) Class B (non-voting) members; 1900 Congress LLC, a Florida limited liability company with a 5% total ownership interest; Rough Rider Enterprises, LLC, a Texas limited liability company with a 3.25% total ownership interest; Bellefrau Group, LLC, a Florida limited liability company with a 1% total ownership interest ("Bellefrau"); and ConsultEnergy, Inc., a Florida corporation with a .5% total ownership interest. Class B members contributed preferred equity to Banyan Cay Investment to fund certain equity benchmark requirements (as described in greater detail below) toward the end of 2020 and beginning of 2021, and benefit from priority distributions over the Class A members.

### C.      Selection, Court Approval, and Powers of Independent Chief Restructuring Officer.

In order to ensure efficient administration of the Debtors' estates and a successful Chapter 11 Process, the Debtors engaged the firm of McHale, P.A. to be each of the Debtors' respective Chief Restructuring Officer ("CRO") and Chief Executive Officer ("CEO"). McHale, P.A., as CRO, has been the primary decision maker for the Debtors during the Chapter 11 Cases and in the preparatory period therebefore. McHale, P.A. has been involved in the bankruptcy arena for over 35 years, serving as court-appoint trustee and examiner, serving stakeholders as chief restructuring officer, financial advisor for creditors' committees, expert witnesses and accountants for debtors. Through these various fiduciary roles, McHale, P.A. has recovered and distributed more than $1 billion to affected investors, creditors and beneficiaries. Gerard McHale ("McHale") is the owner and President of McHale, P.A. He is a nationally recognized forensic accountant and bankruptcy trustee with over 45 years of experience. For the past 20 years, McHale has worked extensively in asset administration, management and recovery. He has served as a Chapter 11 bankruptcy trustee in various cases in several districts in Florida, the Southern District of New York, the Eastern District of Virginia, the Eastern District of California, and the District of Alaska. McHale is a licensed CPA in the states of Florida and New York. He is certified in financial forensics and is a licensed Real Estate Broker in the State of Florida.

The Debtors applied before the Bankruptcy Court to approve McHale, P.A. as their CRO, CEO, and general lead, independent restructuring decisionmaker. The Bankruptcy Court entered a final order [Docket No. 108], approving the employment of McHale, P.A. and setting forth McHale, P.A.'s rights and powers as primary decision maker in the Chapter 11 Cases. McHale has been the primary professional of McHale, P.A. responsible for the Debtors and has had the ultimate business decisions regarding the Plan, this Disclosure Statement, and the Sale Transactions contemplated thereby, to ensure a fair and independent process.

### D.      Controversy with the Prepetition Secured Lender

The Debtors' secured debt consists primarily of a first-lien, secured loan on substantially all of the Debtors' assets (other than Banyan Cay Mezzanine Borrower, LLC and Banyan Cay Maintenance, LLC)

presently owned by U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership (the "Prepetition Lender" or "Calmwater"), which was fixed by judgment (the "Foreclosure Judgment") in that certain foreclosure action that was commenced by the Prepetition Lender against the Debtors and certain non-debtor affiliates in the Fifteenth Judicial Circuit Court, in and for Palm Beach County, Florida, Case No. 50-2022-CA-006815-XXXX-MB, styled as *U.S. Real Estate Credit Holdings III-A, LP v. Banyan Cay Resort & Golf, LLC, et al.* (the "Foreclosure Action"). The Foreclosure Judgment stems from a series of loans made by the Prepetition Lender for the benefit of the Debtors. A more detailed description of the prepetition loan documents, the various amendments and modifications thereto, the specific of the various collateral therefor, the conduct of the parties with respect thereto, and the ultimate entry of the Foreclosure Judgment therefor can be found in the First Day Declaration [Docket No. 2] and the Prepetition Lender's complaint (the "Foreclosure Complaint") filed in the Foreclosure Action on July 16, 2022.

The Debtors and the Prepetition Lender have been in active and productive discussions and negotiations throughout the Chapter 11 Cases. These negotiations culminated in the *Final Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, (III) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105(a), 362, 364(c), and 364(d), and (IV) Granting Super Priority Claims to the DIP Lender Pursuant to 11 U.S.C. 364(C)* [Docket No. 131] (the "Final DIP Order"). The Final DIP Order, *inter alia*, provided for the use of Cash Collateral (as defined therein) by the Debtors during the pendency of the Chapter 11 Cases, the provision of up to $3.8 million in debtor in possession financing by the Debtors from the Prepetition Lender during the pendency of the Chapter 11 Cases, and a clarification and acknowledgement of the Debtors' prepetition indebtedness to the Prepetition Lender as (a) $96.5 million (the "Agreed Pre-Petition Principal Amount"), plus (b) simple interest on the Agreed Pre-Petition Principal Amount of 6.25% per annum, which shall accrue from the Petition Date and which shall be paid monthly to the Prepetition Secured Lender in accordance with the DIP Facility Documents, plus (c) certain costs and attorneys' fees incurred from and after March 24, 2023.

### E.    Controversy with the EB-5 Lender and Inter-Creditor Dispute

In addition to the secured claim of the Prepetition Lender, the assets of Debtor Banyan Cay Mezzanine Borrower, LLC, comprising solely of the equity interests in Debtors Banyan Cay Resort & Golf, LLC; Banyan Cay Dev. LLC; and Banyan Cay Villas, LLC; are subject to a security interest owned by Banyan Cay Resort Fund LLC, the Debtors' EB-5 lender (the "EB-5 Lender"), in the principal amount of $5,000,000. The EB-5 Lender has filed a Proof of Claim [Claim No. 2 in Case No. 23-11281], asserting a claim in the amount of $7,179,463.69. As originally conceived, the EB-5 Lender was to provide significant financing to fund construction of the development plan, however, the inability of EB-5 lender to realize the requisite financing contributed to Debtors entering into the loan agreements with the Prepetition Lender.

Concomitantly with the Foreclosure Action against the Debtors by the Prepetition Lender, as well as the operational and development difficulties associated therewith, the Debtors soon found themselves saddled with maturity of the EB-5 Lender's loans with no liquidity and even larger financial strains due to the Foreclosure Action. The Debtors were, at that time, moving forward with an out-of-court restructuring that would have provided significant recovery to EB-5 Lender. However, the EB-5 Lender nevertheless sent formal notices of default and began efforts to schedule a strict foreclosure sale of the equity pledged by Banyan Cay Mezz Borrower on account of the EB-5 loan. The EB-5 Lender proceeded to schedule a UCC public auction sale of the pledged equity for February 17, 2023 (the "UCC Sale").

On February 16, 2023, in order to stave off the UCC Sale and vindicate the Debtors' rights, as well as those of all of its creditor constituencies, Debtor Banyan Cay Mezzanine Borrower, LLC filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Due to the EB-5 Lender's aggressive actions, the Debtors were forced to file Banyan Cay Mezzanine Borrower, LLC, and any hope for

maximizing value outside of bankruptcy was eviscerated, in no small part due to the EB-5 Lender's obstinance.

In addition to the claims asserted against the estate by the EB-5 Lender, which are fully disputed, the EB-5 Lender also commenced an intercreditor action against the Prepetition Lender, which case is ongoing in the United States Court for the Southern District of New York (Case No. 23-01345) (the "Intercreditor Dispute"). In the Intercreditor Dispute, the EB-5 Lender alleges that the Prepetition Lender in contravention of governing loan documents extended additional capital to the detriment of the EB-5 Lender. The Debtors have an interest in the Prepetition Lender succeeding in this litigation because of the settlement reached between the Debtors and the Prepetition Lender requiring that the Prepetition Lender be indefeasibly paid under the terms of the Final DIP Order described above.

**F.    Controversy with Jacob Industries, LLC**

Jacob Industries, LLC ("Jacob Industries"), owned and operated by Don Perry, was in charge of construction and served as the General Contractor for the Development. On behalf of Jacob Industries and affiliated entities thereof, Jacob Industries has filed a proof of claim [Claim No. 62] in the amount of $6,686,279.23, of which Jacob Industries asserts $6,104,111.39 is secured. The Debtors dispute these claims and the asserted liens therefor in their entirety until an accounting is able to occur such that the Debtors are able to reconcile amounts paid to Don Perry and his affiliated entities with the amounts that were or were supposed to be paid to subcontractors who worked on the Development. Jacob Industries and the Prepetition Lender are engaged in litigation in and before the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (Case No. 50-2022-CA-00618-XXXX-MB). Like the litigation between the EB-5 Lender and the Prepetition Lender, the Debtors have an interest in the Prepetition Lender succeeding in this litigation because of the settlement reached between the Debtors and the Prepetition Lender requiring that the Prepetition Lender be indefeasibly paid under the terms of the Final DIP Order described above.

**G.    The Sale Process; Cancellation of the Auction**

On March 16, 2023, the Debtors retained Keen-Summit Capital Partners ("Keen-Summit") to act as their marketing agent and broker, which retention was approved by this Court on April 18, 2023 [Docket No. 88].

On April 2, 2023, the Debtors filed that certain motion [Docket No. 31] (the "Bid Procedures and Sale Motion") seeking, *inter alia*, approval of certain bid procedures, setting the date for an auction of the majority of the property of the Debtors' estates, setting the date for a hearing to approve of such sale, and approving Westside Property Investment Company, Inc. as stalking horse bidder (the "Stalking Horse Bidder") with a Bid of $102,100,000.00. The Debtors filed a further motion [Docket No. 99] (the "Amended Bid Procedures Motion") requesting substantially similar relief to that requested in the Bid Procedures and Sale Motion, including certain amendments thereto agreed to by parties in interest. The Court held hearings on the Bid Procedures and Sale Motion and the Amended Bid Procedures Motion on April 17, 2023 and April 28, 2023, and entered an order [Docket No. 109] (the "Bid Procedures Order"). Such Bid Procedures Order established June 8, 2023 at 5:00 p.m. as the deadline to submit a Bid to be considered for the Auction, June 13, 2023 at 10:00 a.m. as the date of the Auction, and June 15, 2023 at 1:30 p.m. as the date of the Sale Hearing (as defined therein). At the conclusion of the Bid deadline, the Debtors did not receive any additional Bids. Accordingly, the Debtors filed a *Notice of Cancelation of Auction and Debtors' Intention to Proceed with Stalking Horse Bidder as Successful Bidder* [Docket No. 158] and intend to close the Sale Transactions with the Stalking Horse Bidder.

Additionally, on June 16, 2021, Debtor Banyan Cay Dev. LLC ("BC Dev.") and an entity called Banyan Cay Estates, LLC ("BC Estates") entered into that certain *Agreement to Purchase and Sale of Real Property* (the "Original Agreement"), pursuant to which BC Dev. agreed to sell and BC Estates agreed to

purchase forty-nine (49) single-family estate lots (collectively, the "Estate Lots") owned by BC Dev. Pursuant to the Original Agreement, on August 31, 2021, BC Dev. and BC Estates closed on the sale and purchase of twenty-one (21) of the Estate Lots (the "L1 Lots"), as set forth in that certain Memorandum of Right to Purchase, recorded at Page 26 of Book 32852 of the Official Records of Palm Beach County, Florida, which further described BC Estates' right to purchase the remaining twenty-eight (28) Estate Lots (the "Contract L2 Lots") under the Original Agreement. The Debtors and BC Estates entered into various amendments to the Original Agreement, including a postpetition amendment, pursuant to which, *inter alia*, BC Estates agreed to purchase certain remaining L2 Estate Lots in exchange for an increase in the overall purchase price under the Original Agreement. The Debtors filed a motion [Docket No. 97] seeking to assume the Original Agreement and the amendments thereto, and the Court entered an order [Docket No. 105] granting the same on April 28, 2023. The closing of the L2 Estate Lots to BC Estates is scheduled to occur concomitantly with the closing with the Stalking Horse Bidder.

**H.    Claims in the Chapter 11 Case**

That certain *Notice of Chapter 11 Bankruptcy* Case [Docket No. 20] was entered on March 31, 2023, setting forth the deadline for filing Proofs of Claim against each of the Debtors other than Banyan Cay Mezzanine Borrower, LLC. Additionally, on May 31, 2023, the Court entered an order [Docket No. 55; Case No. 23-11281] extending the deadlines to file Proofs of Claim against Banyan Cay Mezzanine Borrower, LLC to conform with the above-referenced deadlines with respect to each of the other Debtors. Accordingly, June 7, 2023 is the deadline for each person or entity (including without limitation, each individual, partnership, joint venture, corporation, estate, or trust) other than a governmental unit (as defined in § 101(27) of the Bankruptcy Code) (a "Governmental Unit") to file a Proof of Claim in respect of a prepetition Claim against any of the Debtors (the "General Bar Date"). Additionally, September 25, 2023 is the deadline for Governmental Units to file a Proof of Claim in respect of a prepetition Claim against any of the Debtors (together with the General Bar Date, the "Bar Dates").

As of the date hereof, the Debtors estimate a General Unsecured Claims pool of approximately $18,223,186.77, notwithstanding any issues as to allocation of the Sale Proceeds (as disclosed in Section II.I *infra*, and without prejudicing the Debtors' rights to file any forthcoming objections to any claims, as contemplated by and set forth in the Plan. Please note that to the extent the Wind-Down Debtor successfully objects to any General Unsecured Claim and such General Unsecured Claim becomes Disallowed under the Plan, the relative recoveries of other Holders of General Unsecured Claims will increase.

**I.    Allocation and Construction Lien Disputes; Risk of Non-Payment to Junior Classes**

As mentioned above, in addition to the Prepetition Secured Lender, Assets of the Debtors are subject to a variety of construction, contractor, and subcontractor liens (collective, the "Construction Liens"). Furthermore, Bellefrau and an entity called ZJC, LLC each hold mortgages on certain real property presently owned by Banyan Cay Maintenance, LLC, which real property is *not* subject to the mortgage owned by the Prepetition Secured Lender.

Specifically, ZJC, LLC has asserted a mortgage in the maintenance parcel owned by Debtor Banyan Cay Maintenance, LLC in the amount of $1,300,198.08 [Claim No. 1; Case No. 23-12389], arising from a mortgage in the facial amount of $1,100,000 dated as of March 10, 2020.

Additionally, Bellefrau has asserted a mortgage in two ancillary parcel, each part of the Development, presently owned by Debtor Banyan Cay Maintenance, LLC (the "Bellefrau Lots") in the amount of $1,671,750.00 [Claim No. 4; Case No. 23-12389], arising from a mortgage in the facial amount of $1,500,000 dated as of August 23, 2021 (the "Bellefrau Mortgage"). The Bellefrau Mortgage was originally entered into by Bellefrau as lender and DJG Realty, LLC, Banyan Cay Maintenance, LLC's sole member and then-owner of the Bellefrau Lots, as borrower. DJG Realty, LLC held legal title to the Bellefrau Lots on behalf of its subsidiary and the whole of the Development, and also held (and still holds)

title to a condominium unit wholly unrelated to the Development. Shortly before the Petition Date, DJG Realty, LLC transferred title in and to the Bellefrau Lots to Banyan Cay Maintenance, LLC, its wholly-owned subsidiary, as the only Debtor which held collateral not subject to the mortgage of the Prepetition Secured Lender. The Debtors believe that the inclusion of the Bellefrau Lots in the Debtors' estates was and is necessary to achieve the maximum value of the estates through the Debtors' sale process described above. The Debtors believe that the transfer of the Bellefrau Lots and their inclusion in the Debtors' sale process will achieve the best possible sale price for such lots, the greatest recovery for Bellefrau, and will not prejudice any party in interest. The Debtors are of the belief that neither such transfers nor any other action taken in connection with or incidental to the Chapter 11 Cases prejudice Bellefrau's rights or recovery, including Bellefrau's rights to proceed against the unrelated condominium owned by DJG Realty, LLC in the event Bellefrau is not paid in full in the Chapter 11 Cases.

Please note, that the Debtors reserve all rights with respect to the amount of the ZJC, LLC claim and the Bellefrau claim asserted in their respective proofs of claim, including, without limitation, the value of their respective collateral, the calculation and inclusion of interest, and partial prepetition payments with respect thereto. Furthermore, the Debtors reserve all rights with respect to, *inter alia*, the amount of, existence of, computation with respect to, and liability stemming from the Construction Liens.

On or before the deadline for parties in interest to object to the Sale Transactions disclosed above, various parties filed limited objections to the Sale Transactions, reserving their rights with respect to the ultimate allocation of the Sale Proceeds [Docket Nos. 152, 154, and 156]. Moreover, the Bid Procedures Order specifically reserves the rights of various parties to contest the allocation of the Sale Proceeds at the hearing before the Bankruptcy Court to approve the Sale Transactions. In the event of a dispute as to the allocation of the Sale Proceeds, the ultimate Distribution to Holders of General Unsecured Claims may be materially affected, as set forth in the Liquidation Analysis.

## III.    SUMMARY OF THE PLAN

### A.    Treatment of Claims and Interests under the Plan

#### 1.    Classification and Treatment of Claims

The following table designates the Classes of Claims against and Interests in the Debtors' Estates, and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with Section 1126 of the Bankruptcy Code, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| Class | Description | Treatment | Entitled to Vote | Estimated Plan Recovery |
|---|---|---|---|---|
| --- | Administrative Expense Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Compensation and Reimbursement Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Priority Tax Claims | Payment in full or consent to other treatment | No | 100% |
| --- | United States Trustee Fees | Payment in full or consent to other treatment | No | 100% |
| 1 | Other Secured Claims | Unimpaired | No (Deemed to Accept) | 100% |

| Class | Description | Treatment | Entitled to Vote | Estimated Plan Recovery |
|-------|-------------|-----------|------------------|-------------------------|
| 2 | Priority Non-Tax Claims | Unimpaired | No (Deemed to Accept) | 100% |
| 3 | Prepetition Secured Loan Claims | Unimpaired | No (Deemed to Accept) | 100% |
| 4 | General Unsecured Claims | Impaired | Yes | .6%-24% |
| 5 | EB-5 Claims | Impaired | No (Deemed to Reject) | 0% |
| 6 | Intercompany Claims | Impaired | No (Deemed to Reject) | N/A (Cancelled) |
| 7 | Section 510(b) Claims | Impaired | No (Deemed to Reject) | N/A (Cancelled) |
| 8 | Intercompany Interests | Impaired | No (Deemed to Reject) | N/A (Cancelled) |
| 9 | Interests in Maintenance | Impaired | No (Deemed to Reject) | N/A (Cancelled) |
| 10 | Class B Interests in Parent | Impaired | No (Deemed to Reject) | 0% |
| 11 | Class A Interest in Parent | Impaired | No (Deemed to Reject) | 0% |

### 2.    Treatment of Unclassified Claims under the Plan

#### a.    Administrative Expense Claims

On the Effective Date or as soon thereafter as such Allowed Administrative Expense Claims become due and payable according to their terms, unless otherwise agreed to by the Holder of an Allowed Administrative Expense Claim and the Debtors or the Wind Down Debtor, as applicable, each Holder of an Allowed Administrative Expense Claim (other than Holders of Professional Claims and Priority Tax Claims) will receive in full and final satisfaction, settlement, release, and discharge of, and, in exchange for, such Holder's Administrative Expense Claim (i) an amount of Cash equal to the unpaid amount of such Allowed Administrative Expense Claim, or (ii) receive treatment as is consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

The Debtors estimate a total of $650,000.00 in Administrative Expense Claims, other than Professional Claims.  Holders of Administrative Expense Claims are not entitled to vote on the Plan, as they are deemed to have accepted the Plan.

#### b.    Professional Claims

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and serve final requests for payment of Professional Claims no later than July 10, 2023.  Objections to any Professional Claim must be filed and served on the Wind Down Debtor and the applicable Professional before the day that is two (2) Business Days before the hearing that is set with respect to such Professional Claim.

From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind Down Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors estimate a total of $1,796,876.50 in Professional Claims. Holders of Professional Claims are not entitled to vote on the Plan. Please be advised that some or all of these fees and expenses may be paid pursuant to the Debtors' debtor in possession financing facility, and accordingly shall not be included in the ultimate amount of Administrative Expense Claims. In that event, the amount of such fees and expenses will decrease in the Liquidation Analysis and the DIP Obligations (see Note 4 of Liquidation Analysis) shall increase by an equal amount. Accordingly, whether such fees are deemed Allowed Administrative Expenses or paid pursuant to the DIP Obligations, the ultimate estimated recoveries provided herein will not change

### c.    Priority Tax Claims

On the Effective Date, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Wind Down Debtor, as applicable, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

The Debtors estimate a total of approximately $1,298,516.38 in real estate taxes and $220,000.00 in sales taxes, for a total of $1,518,516.38 in tax liability due and owing under the Plan. Holders of Priority Tax Claims are not entitled to vote on the Plan, as they are deemed to have accepted the Plan.

### 3.    Treatment of Classified Claims and Interests under the Plan

1.    Class 1 – Other Secured Claims

    a.    *Classification*: Class 1 consists of any Other Secured Claims against the Debtors.

    b.    *Treatment*: Each Holder of an Allowed Other Secured Claim, as determined by the Debtors or the Wind Down Debtor, as applicable, shall receive, at the Plan Administrator's Election:

        (i)    payment in full in Cash in an amount equal to its Allowed Other Secured Claim with a distribution from the Other Secured Claims Reserve;

        (ii)    the Wind Down Debtor's interest in the collateral securing such Holder's Allowed Other Secured Claims; or

        (iii)    such other treatment agreed to by the Holder of such Allowed Other Secured Claim and the Debtor or the Wind Down Debtor.

    c.    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

9

2.       Class 2 – Priority Non-Tax Claims

    a.     *Classification*: Class 2 consists of any Priority Non-Tax Claims against the Debtors.

    b.     *Treatment*: Each Holder of an Allowed Priority Non-Tax Claim, as determined by the Debtors or the Wind Down Debtor, as applicable, shall receive:

        (i)     payment by the Plan Administrator from the Priority Non-Tax Claims Reserve, as set forth in Article VIII of this Plan, the amount of such Holder's Allowed Class 2 Claim on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), and (B) fifteen Business Days following the date such Claim is Allowed by non-appealable order. The Cash payment shall be in exchange for and in full satisfaction and discharge of the Holder's Allowed Priority Claim; or

        (ii)    such other treatment on account of such Allowed Priority Non-Tax Claim as determined by the Debtors or the Wind Down Debtor, as applicable, as agreed to in writing by such Holder of such Allowed Priority Non-Tax Claim.

    c.     *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

3.       Class 3 – Prepetition Secured Loan Claims

    a.     *Classification*: Class 3 consists of the Prepetition Secured Loan Claims.

    b.     *Treatment*: Each Holder of an Allowed Prepetition Secured Loan Claim, as determined by the Debtors or the Wind Down Debtor, as applicable, shall receive, at the Plan Administrator's Election:

        (i)     payment in full in Cash in an amount equal to its Allowed Prepetition Secured Loan Claim;

        (ii)    the Wind Down Debtor's interest in the collateral securing such Holder's Allowed Prepetition Secured Loan Claim; or

        (iii)   such other treatment agreed to by the Holder of such Allowed Prepetition Secured Loan Claim and the Debtor or the Wind Down Debtor.

    c.     *Voting*: Class 3 is Unimpaired under the Plan. Holders of Allowed Prepetition Secured Loan Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Allowed Prepetition Secured Loan Claims are not entitled to vote to accept or reject the Plan.

4.      Class 4 – General Unsecured Claims

     a.      *Classification*: Class 4 consists of any General Unsecured Claims against the Debtors.

     b.      *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive Cash in an amount equal to its Pro Rata share of the Cash held in the GUC Reserve as set forth in Article VIII of this Plan.

     c.      *Voting*: Class 4 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      Class 5 – EB-5 Claims

     a.      *Classification*: Class 5 consists of any EB-5 Claims.

     b.      *Treatment*: Each Holder of an Allowed Class 5 Claim shall receive available Cash from the General Account in an amount equal to its Allowed EB-5 Claim after the payment of all Administrative Expense Claims, Priority Tax Claims, Other Secured Claims, Priority Non-Tax Claims, Prepetition Secured Loan Claims, and General Unsecured Claims in full.

     c.      *Voting*: Class 5 is Impaired under the Plan.  Holders of Allowed EB-5 Claims are entitled to receive a Distribution under the Plan only after the payment in full of each Claim senior to Allowed Class 5 EB-5 Claims, which contingency may never occur.  Accordingly, Holders of Allowed Class 5 EB-5 Claims are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Allowed EB-5 Claims are not entitled to vote to accept or reject the Plan.

6.      Class 6 – Intercompany Claims

     a.      *Classification*: Class 6 consists of any Intercompany Claims.
     b.      *Treatment*: Class 6 Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 6 Claim will not receive any distribution on account of such Class 6 Claim.
     c.      *Voting*: Class 6 is Impaired. Each Holder of a Class 6 Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

7.      Class 7 – Section 510(b) Claims

     a.      *Classification*: Class 7 consists of any Section 510(b) Claims against the Debtors.

     b.      *Treatment*: Each Allowed Section 510(b) Claim shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 7 Claim will not receive any distribution on account of such Class 7 Claim.  The Debtors are not aware of any valid Section 501(b) Claims and believe that no such Section 510(b) Claims exist.

    c.      *Voting*: Class 7 is Impaired under the Plan. Holders of Allowed General Unsecured Claims are not entitled to vote to accept or reject the Plan.

8.      Class 8 – Intercompany Interests

    a.      *Classification*: Class 8 consists of all Intercompany Interests.

    b.      *Treatment*: Class 8 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 8 Interest will not receive any distribution on account of such Class 8 Interest.

    c.      *Voting*: Class 8 is Impaired. Each Holder of a Class 8 Interest is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

9.      Class 9 – Interests in Maintenance

    a.      *Classification*: Class 9 consists of all Interests in Banyan Cay Maintenance, LLC.

    b.      *Treatment*: Class 9 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 9 Interest will not receive any distribution on account of such Class 9 Interest.

    c.      *Voting*: Class 9 is Impaired. Each Holder of a Class 9 Interest is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

10.      Class 10 – Class B Interests in Parent

    a.      *Classification*: Class 10 consists of all Class B Interests in Parent.

    b.      *Treatment*: Each Holder of an Allowed Class 10 Interest will receive its Pro Rata share of available Cash from the General Account for Holders of Class B Interests in Parent after the payment of EB-5 Claims in full.

    c.      *Voting*: Class 10 is Impaired under the Plan. Holders of Allowed Class B Interest in Parent are entitled to receive a Distribution under the Plan only after the payment in full of each Claim senior to Allowed Class B Interests in Parent, which contingency may never occur. Accordingly, Holders of Allowed Class B Interests in Parent are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class B Interests in Parent are not entitled to vote to accept or reject the Plan.

11.      Class 11 – Class A Interests in Parent

    a.      *Classification*: Class 11 consists of all Class A Interests in Parent.

    b.      *Treatment*: Each Holder of an Allowed Class 11 Interest will receive its Pro Rata share of available Cash from the General Account for Holders of Class A Interests in Parent after the payment of Class B Interests in full.

  c.  *Voting*: Class 11 is Impaired under the Plan. Holders of Allowed Class A Interest in Parent are entitled to receive a Distribution under the Plan only after the payment in full of each Claim and Interest senior to Allowed Class A Interests in Parent, which contingency may never occur. Accordingly, Holders of Allowed Class A Interests in Parent are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class A Interests in Parent are not entitled to vote to accept or reject the Plan.

## B. Voting Procedures and Requirements

Only Impaired Classes of Claims are entitled to vote to accept or reject the Plan. Please refer to the estimated recovery for Impaired Classes. If the Claim or Claims you hold are not in one of those Impaired Classes, you are not entitled to vote on the Plan and thus you will not receive a ballot. Holders of Claims that are entitled to vote should read the ballot and follow the accompanying instructions carefully.

### 1. Vote Required for Acceptance by a Class

A Class of Claims entitled to vote to accept or reject this Plan shall be deemed to accept the Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept the Plan.

### 2. Impaired Classes of Claims and Interests Entitled to Vote

Pursuant to Section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to the Plan may vote separately to accept or reject the Plan. Each Holder of an Allowed Claim in an Impaired Class as of the Voting Record Date shall receive a ballot and may cast a vote to accept or reject the Plan.

Class 4 is impaired and entitled to vote on the Plan. Holders of Claims and Interests in Classes 5, 10, and 11 are entitled only to the contingent right to receive Distributions after satisfaction in full of all other Classes senior thereto, as set forth herein, which contingency may never occur. As such Classes 5, 10, and 11 are deemed to have rejected the Plan in accordance with Section 1126(g) of the Bankruptcy Code. Furthermore, the Holders of Claims and Interests in Classes 6, 7, 8, and 9 shall have such Claims or Interests cancelled. Classes 6, 7, 8, and 9 are not expected to receive any Distributions under this Plan and are, therefore, conclusively presumed to have rejected this Plan pursuant to Section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

### 3. Claims and Interests Not Entitled to Vote

Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (a) has been disallowed; (b) is the subject of a pending objection, whether adversary proceeding, contested matter, or similar proceeding, unless such proceeding is being settled with this Plan; or (c) (i) was not listed on Debtors' Schedules or was listed on Debtors' Schedules as unliquidated, contingent or disputed, and (ii) a Proof of Claim was not filed or was filed for an unliquidated, contingent or disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed or Disputed in part, the Holder shall be entitled to vote the Allowed portion of the Claim. Insiders are entitled to vote on the Plan subject to and in accordance with the provisions of this Plan and the Bankruptcy Code.

### 4. Voting Procedures

The Debtors' counsel, Pack Law, shall serve as the "Solicitation Agent" and will facilitate the solicitation and voting process. If you have any questions regarding voting procedures or your eligibility to vote to accept or reject the Plan, or if you need additional copies of documents included in the Solicitation Package, please contact the Solicitation Agent, attention Joseph Pack, Esq. – (i) by first class mail at 51 Northeast 24th Street, Suite 108, Miami, Florida 33137; (ii) by email at joe@packlaw.com *and*

jessey@packlaw.com (please reference "Banyan Cay" in the subject line of your email); or (iii) by phone at (305) 916-4500 .

Ballots must submitted to the Bankruptcy Court, consistent with Local Rule 3018-1, either electronically by registered users or conventionally at:

**CLERK OF UNITED STATES BANKRUPTCY COURT**
**1515 NORTH FLAGLER DRIVE, ROOM 801**
**WEST PALM BEACH, FL 33401**

**BALLOTS CAST BY HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST BE <u>ACTUALLY</u> RECEIVED BY THE BANKRUPTCY COURT AT THE ABOVE ADDRESS (OR ELECTRONICALLY BY REGISTERED USERS) BY THE VOTING DEADLINE.**

Please note that if the instructions on your ballot require you to return the ballot to your agent, financial institution, broker, or other nominee, or to their agent, you must deliver your ballot to the relevant party in sufficient time for the designated party to process the ballot and deliver it to the Bankruptcy Court before the Voting Deadline. If a ballot is damaged or lost, you may contact the Solicitation Agent to request another ballot. Any ballot received by the Bankruptcy Court which does not indicate an acceptance or rejection of the Plan will not be counted.

**5.      Cramdown**

In the event that any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each such Impaired Class or Classes, the Plan "does not discriminate unfairly" and is "fair and equitable." The Debtors intend to invoke the cramdown provisions of Section 1129(b) of the Bankruptcy Code as to any Impaired Class that does not accept the Plan. In the event one or more Classes does not accept the Plan, the Bankruptcy Court will determine at the Plan Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any such Impaired Classes of Claims.

**C.      Substantive Consolidation**

The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating each of the Estates of the Debtors into a single consolidated Estate solely for the limited purposes of voting, Confirmation, and distribution. For the avoidance of doubt, the Plan shall not serve as a motion by the Debtors seeking entry of an order substantively consolidating the Debtors for any other purposes. Notwithstanding anything in this Article IV of the Plan, all distributions under the Plan shall be made in accordance with Article VI of the Plan.

If the Debtors' Estates are substantively consolidated, on and after the Effective Date, all assets and liabilities (including Allowed Claims) of the Debtors shall be treated as though they were merged into one Estate solely for purposes of voting, Confirmation, and distribution. The limited substantive consolidation described herein shall not affect the legal and organizational structure of the Debtors or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or, with respect to Executory Contracts or Unexpired Leases that were assumed or entered into during the Chapter 11 Cases, if any. **Moreover, any alleged defaults under any applicable agreement with the Debtors, the Wind Down Debtor, or their respective Affiliates arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.**

If the Debtors' Estates are not substantively consolidated, then (1) the Plan shall be deemed to constitute a separate sub-plan for each of the Debtors and each Class of Claims against or Interests in the Debtors shall be deemed to constitute separate sub-Classes of Claims against and Interests in each of the Debtors, as applicable, (2) the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to each sub-plan, (3) any Claim against any of the Debtors shall be treated as a Claim only against the applicable Debtor, as applicable, for purposes of voting and Confirmation, (4) such Claims shall be administered as provided in the Plan, (5) the portion of the GUC Reserve available for distributions to Holders of General Unsecured Claims against each Debtor shall be equal to the proportion that the Allowed General Unsecured Claims against each Debtor bears to the aggregate amount of Allowed General Unsecured Claims against all of the Debtors; and (6) the Debtors shall not, nor shall they be required to, re-solicit votes with respect to the Plan, nor will the failure of the Court to approve limited substantive consolidation of the Debtors alter the distributions set forth in the Plan.

Notwithstanding the substantive consolidation provided for herein, nothing shall affect the obligation of each and every Debtor to pay all fees and charges assessed under section 1930 of chapter 123 of title 28 of the United States Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted.

### D.      Implementation of the Plan

The Debtors shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan. The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing Debtors and any other necessary party to perform any act, including the satisfaction of any lien, or the avoidance, subordination, or recharacterization of any Claim or Lien, that is necessary for the consummation of this Plan.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

Except as otherwise provided in the Plan or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in the Estates, all Causes of Action, and any property acquired by the Debtors pursuant to the Plan shall vest in the Wind Down Debtor, free and clear of all liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Wind Down Debtor may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Debtors estimate that Holders of Allowed General Unsecured Claims, shall receive distributions in the amount of approximately .6% to 24% of such Allowed Claims or Interests, depending on a variety of factors including, but not limited to, (i) the resolution of any allocation disputes as to the Sale Proceeds and (ii) the Debtors' or Wind-Down Debtor's successful objection to any Claims such that such Claim is deemed Disallowed under the Plan.

### E.        Distributions under the Plan

#### 1.        Distribution Record Date

On the Distribution Record Date, the Claims Register shall be closed and the Plan Administrator shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim or Interest is transferred and the Debtors have been notified in writing of such transfer less than ten (10) days before the Effective Date, the Plan Administrator shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

#### 2.        Distribution Process

The Plan Administrator shall make or facilitate all distributions required under the Plan.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to Holders of record as of the Distribution Record Date by the Plan Administrator, as appropriate: (1) to the address of such Holder as set forth in the books and records of the Debtors (or if the Debtors have been notified in writing, on or before the date that is ten (10) days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Plan Administrator has not received a written notice of a change of address on or before the date that is ten (10) days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  The Debtors, the Wind Down Debtor, and the Plan Administrator, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

#### 3.        The Plan Administrator

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the businesses and affairs of the Debtors and the Wind Down Debtor, including: (1) liquidating, receiving, holding, and investing, supervising, and protecting the Wind Down Debtor Assets; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (3) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind Down Debtor; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind Down Debtor; (7) administering and paying taxes of the Post- Effective Date Debtor, including filing tax returns; (8) representing the interests of the Wind Down Debtor or the Estates before any taxing authority in all matters, including any action, suit, proceeding or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind Down Debtor shall be terminated.

#### 4. Setoffs

Except as otherwise expressly provided for herein, the Wind Down Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtors or Wind Down Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Wind Down Debtor of any such claims, rights, and Causes of Action that the Wind Down Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtors or Wind Down Debtor (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

#### 5. Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under this Plan includes both principal and accrued but unpaid interest, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### F. Procedures for Disputed Claims and Interests

#### 1. Disputed Claims Process

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtor, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

#### 2. Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Wind Down Debtor shall have the sole authority: (1) to file, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, from and after the Effective Date, the Wind Down Debtor shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.J of the Plan.

#### 3. Adjustment to Claims Without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Wind Down Debtor without the Wind Down Debtor having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

17

### 4.      Single Satisfaction of Claims

Holders of Allowed Claims may assert such Claims against the Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtors based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

### 5.      Disallowance of Claims and Interests

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Wind Down Debtor allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Wind Down Debtor, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

### G.      Executory Contracts and Unexpired Leases

Unless otherwise set forth in the Plan, as of the Effective Date, all executory contracts and unexpired leases not assumed by the Debtors shall be rejected.

### H.      Conditions Precedent to Effective Date

#### 1.      Conditions Precedent

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article XI.B of the Plan:

     i.    the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtors and reasonably acceptable to the Prepetition Secured Lender, and such order shall approve of and incorporate the terms of the Purchase Agreement;

    ii.    the Sale Transactions shall have closed;

    iii.    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

    iv.    the Plan Administrator shall have been appointed;

    v.    the Distribution Reserve Accounts shall have been funded; and

    vi.    the final version of the Plan Supplement, if any, and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan and shall be in form and substance reasonably acceptable to the Prepetition Secured Lender

#### 2.      Waiver of Conditions

The Debtors may waive any of the conditions to the Effective Date set forth in Article IX of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

#### 3.      Effect of Non-Occurrence of Conditions to Consummation

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a

waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## I.     Effect of Confirmation

### 1.     Binding Effect

On the Effective Date, and effective as of the Effective Date, this Plan shall be binding upon Debtor, the Wind Down Debtor, the Debtors, and all present and former Holders of Claims against and Interests in Debtor, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under the Plan.

### 2.     Injunction

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind Down Debtor, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

### 3.     Debtor Releases

**Notwithstanding anything contained in this Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Wind Down Debtor, its Estate, and its Releasing Parties from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Wind Down Debtor, or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Case, the Disclosure Statement, the Plan, the Restructuring Transaction,  release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such**

act or omission is determined by a Final Order to have constituted actual fraud or gross negligence. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Sale Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) Reinstated with respect to, or executed to implement, the Plan, and further notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not prejudice, infringe, limit, or otherwise effect any party's rights, if any, under the Indemnification Provisions.

4.      **Releases by Holders of Claims and Interests**

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for good and valuable consideration, each Releasing Party is deemed to have released and discharged each Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Case, the Disclosure Statement, the Plan, or the Sale Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted actual fraud or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Sale Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) Reinstated with respect to, or executed to implement the Plan, and further notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not prejudice, infringe, limit, or otherwise effect any party's rights, if any, under the Indemnification Provision.

5.      **Exculpation**

The Exculpated Parties shall neither have, nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; provided, further that, the Buyer shall not be exculpated from the Buyer's obligations under the APA, the Sale Order, the Plan or any related documents or orders of the Bankruptcy Court.

6.      **Release of Liens**

Except (a) with respect to the Liens securing Other Secured Claims (depending on the treatment of such Claims) and Prepetition Secured Loan Claims, or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall

be fully released and discharged, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Wind Down Debtor, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind Down Debtor and its successors and assigns.

### J. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

i.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests, including with respect to the amount necessary to Reinstate any and all Claims under section 1124 of the Bankruptcy Code;

ii. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

iii. resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

iv. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

v.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

vi. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

vii. enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

viii. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

ix.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

x.  hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to **Error! Reference source not found.** of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in **Error! Reference source not found.** of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; (d) related to section 1141 of the Bankruptcy Code; or (e) without limiting the foregoing, any suits, adversary proceedings, or Causes of Action by the Debtors or the Wind Down Debtor, as applicable, against Jacob Companies, Inc., Donald R. Perry, Lexxcom LLC, the EB-5 Lender, and each of their respective Affiliates;

xi.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

xii.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

xiii.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

xiv.  enter an order or Final Decree concluding or closing the Chapter 11 Case;

xv.  enforce all orders previously entered by the Bankruptcy Court; and

xvi.  hear any other matter not inconsistent with the Bankruptcy Code.

**K.    Miscellaneous Provisions of the Plan**

**1.    Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**2.    Transfer Taxes**

Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall be exempt and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by § 1146 of the Bankruptcy Code, if

any, shall not be subject to any state, local or federal law imposing sales tax; (b) Pursuant to § 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the register's office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.

### 3. Modifications to Plan and Plan Supplement

The Plan and/or the Plan Supplement may be amended, modified, or supplemented by the Debtors in the manner provided for by Section 1127 of the Bankruptcy Code, or as otherwise permitted by law, without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, provided that notice and an opportunity to object shall be provided with respect to any material post-confirmation modifications to this Plan. In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Supplement, or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

### 4. Other Amendments

The Debtors may make appropriate technical adjustments and modifications to the Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 5. Revocation or Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any claims by or against the Debtors, their Estates, or any other Person or to prejudice in any manner the rights of the Debtors, or any Person in further proceedings involving the Debtors.

### 6. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtors or the Wind Down Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtors or Wind Down Debtor, as applicable.

### 7. Time

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan, unless otherwise set forth herein or provided by the Bankruptcy Court.

### 8. Binding Effect of Plan

Upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on the Debtors, Debtor, and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims and Interests voted to accept or reject this Plan or are deemed to accept or reject this Plan), all Persons or Entities that are parties to or are subject to any settlements, compromises, releases, exculpations, discharges, or injunctions described in this Plan, each Person or Entity acquiring or retaining property under this Plan, and any and all non-Debtor parties to executory contracts or unexpired leases with Debtor.

### 9. Entire Agreement

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### 10. Section 1125(e) Good Faith Compliance

The Debtors and their Related Persons shall be deemed to have acted in good faith under Section 1125(e) of the Bankruptcy Code.

### 11. Notices

All notices, requests, and demands in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

| | |
|---|---|
| **The Debtors or the Wind Down Debtor** | **Banyan Cay Resort & Golf,** *et al.*<br>1601 Jackson St<br>Suite 200<br>Fort Myers, FL 33901<br>Attn.: Gerard A. McHale, Jr.<br>Email: jerrym@thereceiver.net |
| **Counsel to the Debtors or the Wind Down Debtor** | **Pack Law**<br>51 NE 24th Street<br>Suite 108<br>Miami, FL 33137<br>Attn.: Joseph Pack, Esq. and Jessey Krehl, Esq.<br>Email: joe@packlaw.com; jessey@packlaw.com |
| **United States Trustee** | **Office of the United States Trustee for the Southern District of Florida**<br>51 SW First Avenue<br>Room 1204<br>Miami, FL 33130<br>Attn.: Heidi A. Feinman<br>Email: heidi.a.feinman@usdoj.gov |

Notice shall be given to the above parties and their successors.  Any Person may change the address to which notices are to be sent for purposes of the Plan by sending written notice pursuant to this provision to the Debtors.

## IV.    RISKS AND CONSIDERATIONS

### A. Bankruptcy Considerations

Although the Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent set forth in the Plan, and there can be no assurance that such conditions will be satisfied or waived.  In the event the conditions precedent described in the Plan have not been satisfied or waived (to the extent possible) by the Debtors (as provided for in the Plan), then the Confirmation Order

will be vacated, no Distributions will be made pursuant to the Plan, and the Debtors and all Holders of Claims and Interests will be restored to the *status quo ante* as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date had never occurred.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class created encompasses Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

The Plan provides for no Distribution to certain Classes. The Bankruptcy Code conclusively deems these Classes to have rejected the Plan. Pursuant to Section 1129(a)(10) of the Bankruptcy Code, notwithstanding the fact that these Classes are deemed to have rejected the Plan, the Bankruptcy Court may confirm the Plan if at least one Impaired Class votes to accept the Plan (with such acceptance being determined without including the vote of any "insider" in such class). As to each Impaired Class that has not accepted the Plan, the Plan may be confirmed if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to these Classes. The Debtors believe that the Plan satisfies these requirements.

### B.    Tax Consequences

Creditors should consult with their own tax advisor concerning any tax related implications and: (i) any deductions which may be applicable to them as bad debt deductions, or (ii) income tax implications based upon forgiveness of debt, if applicable, based upon the provisions of the Plan.

<u>Pursuant to IRS Circular 230 Notice</u>: To ensure compliance with IRS Circular 230, Holders of Claims or Interests are hereby notified that: (i) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims or Interests for the purpose of avoiding penalties that may be imposed on them under the United States Tax Code; (ii) such discussion is written in connection with the promotion or marketing by the Debtor or the Debtors, on behalf of the Debtors' Estates, of the transactions or matters addressed herein; and (iii) Holders of Claims or Interests should seek advice based upon their particular circumstances from an independent tax advisor.

### C.    No Duty to Update Disclosures

The Debtors have no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified in the Plan, or unless the Debtors are required to do so pursuant to an order of the Bankruptcy Court. Delivery of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

### D.    Representations Outside this Disclosure Statement

This Disclosure Statement contains representations concerning or related to the Plan that are authorized by the Bankruptcy Code and the Bankruptcy Court. Please be advised that any representations or inducements outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by Holders of Claims or Interests that are entitled to vote to accept or reject the Plan.

### E.    No Admission

The information and representations contained in the Plan shall not be construed to constitute an admission of, or be deemed evidence of, any legal effect of the Plan on the Debtor or Holders of Claims and Interests.

## V.    PLAN CONFIRMATION AND CONSUMMATION

### A.    Plan Confirmation Hearing

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a plan.  On, or as promptly as practicable after the filing of the Plan and this Disclosure Statement, the Debtors will request pursuant to the requirements of the Bankruptcy Code and the Bankruptcy Rules, that the Bankruptcy Court schedule the Plan Confirmation Hearing.  Notice of the Plan Confirmation Hearing will be provided to all known creditors, equity holders, or their representatives. The Plan Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Plan Confirmation Hearing or any subsequent adjourned Plan Confirmation Hearing.

Pursuant to Bankruptcy Code § 1128(b), any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to Chambers, together with proof of service thereof, and served upon (i) counsel for the Debtors (Joseph Pack, Esq., Pack Law, 51 Northeast 24th Street, Suite 108, Miami,                                    Florida                                    33137); (ii) the U.S. Trustee, and (iii) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan.

**UNLESS AN OBJECTION TO CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO CONFIRM THE PLAN.**

### B.    Plan Confirmation Requirements under the Bankruptcy Code

At the Plan Confirmation Hearing, the Bankruptcy Court will consider the terms of the Plan and determine whether the Plan terms satisfy the requirements set out in Section 1129 of the Bankruptcy Code. The Debtors believe that the Plan satisfies or will satisfy the following requirements of Section 1129, certain of which are discussed in more detail below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.
- The Debtors have complied with the applicable provisions of the Bankruptcy Code.
- The Plan is proposed in good faith and not by any means forbidden by law.
- Any payment made or promised by the Debtors under the Plan for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases has been disclosed to the Bankruptcy Court, and any such payment: (i) if made before the confirmation of the Plan, is reasonable; or (ii) if such payment is to be fixed after confirmation of the Plan, is subject to the approval of the Bankruptcy Court as reasonable.
- Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Expense Claims, Allowed

Proffessional Claims, Allowed Priority Tax Claims, and United States Trustee Fees will all be paid in full.

### C.    Plan Consummation

Upon confirmation of the Plan by the Bankruptcy Court, the Plan will be deemed consummated on the Effective Date.  Distributions to Holders of Claims or Interests receiving a Distribution pursuant to the terms of the Plan will follow consummation of the Plan.

### D.    Best Interests of Creditors Test

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if Debtors were liquidated under chapter 7 of the Bankruptcy Code on the effective date.

Debtors' costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that such a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code.  Other costs of liquidating the Debtors' Estates would include the expenses incurred during the bankruptcy case and allowed by the Bankruptcy Court in the chapter 7 case, such as reimbursable compensation for Debtors' professionals, including, but not limited to, attorneys, financial advisors, appraisers, accountants.

The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards pre-chapter 11 priority and unsecured claims.  The Debtors believe that in a chapter 7 liquidation, Holders of Claims and Interests would receive less distribution that such Holders would receive under the Plan.

### E.    Liquidation Analysis

As noted above, the Debtors believe that the proposed terms of the Plan provide all Holders of Impaired Claims and Interests property with a value not less than the value such Holders would receive in a chapter 7 liquidation of Debtors' assets.  The Debtors believe the net effect of a conversion of this case to chapter 7 would increase the administrative expenses of the Estates, and decrease the proceeds available for distribution to Holders of Impaired Claims and Interests.  The Debtors' belief is based primarily on (a) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a chapter 7 trustee, as well as the fees and expenses of the trustee's professional advisors, (b) the discounted value of the Debtors' assets attributable to the chapter 7 process and the expeditious liquidation and forced sale atmosphere attendant to chapter 7 liquidations, as set forth in a liquidation analysis (the "Liquidation Analysis") prepared by the Debtors and submitted herewith as **Exhibit B**.  As the Liquidation Analysis shows, no creditors or Interest Holders would receive a distribution in a chapter 7 case that is greater than the distribution they may be entitled to under the Plan.

The liquidation values in the Liquidation Analysis assume the Property would be liquidated in the context of a chapter 7 case and assumes the present value of such liquidation values.  While the Debtors believe that the assumptions utilized in the Liquidation Analysis are reasonable, any liquidation analysis is speculative and is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtors. Thus, there can be no assurance as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Debtors' conclusions or concur with such assumptions in making its determinations under Section 1129(a)(7) of the Bankruptcy Code.

For example, the Liquidation Analysis contains estimates of the amount of Claims which will ultimately become Allowed Claims, and such estimates may ultimately be overinclusive or underinclusive. Moreover, no order or finding has been entered by the Bankruptcy Court or any other court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed Claims set forth in the Liquidation Analysis. The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including any determination of the value of any Distribution to be made on account of Allowed Claims under the Plan.

The Liquidation Analysis is being provided solely to disclose to Holders of Claims the effects of a hypothetical chapter 7 liquidation of the Debtors, subject to the assumptions set forth therein. The Disclosure Statement Supplement will include an updated Liquidation Analysis, which updated Liquidation Analysis will include comparisons of the estimated Distributions under the Plan to Distributions in a hypothetical Chapter 7 liquidation.

### F. Feasibility

Pursuant to § 1129(a)(11) of the Bankruptcy Code, a plan proponent must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor or its successor under the plan, unless such liquidation or reorganization is proposed under the plan. Here, that requirement is inapplicable, as the Plan does in fact provide for liquidation of Debtors' assets.

### G. Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described below, each class of claims or equity interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. As a general matter under the Bankruptcy Code, a class is "impaired," unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such claim or equity interest; or (c) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled to any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds (2/3) in amount and a majority in number actually voting cast their ballots in favor of acceptance. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

### H. Section 1129(b)

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm a plan even if a class of impaired claims or interests votes to reject the plan if the plan does not unfairly discriminate and is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

#### 1. No Unfair Discrimination

The "no unfair discrimination" test requires that the plan not provide for unfair treatment with respect to classes of claims or interests that are of equal priority, but are receiving different treatment under the plan. Here, the Plan does not discriminate. The Plan calls for payment in full of *pari passu* Secured

Claims of the Debtors (with the Claim of the EB-5 Lender subordinated to Claims against Banyan Cay Resort & Golf, LLC, Banyan Cay Dev. LLC, and Banyan Cay Villas, LLC).  As for the General Unsecured Claims, the Debtors propose to treat that class according to the priority set forth in the Bankruptcy Code.

### 2.    Fair and Equitable

The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured.  The Plan satisfies the fair and equitable requirement if no Class of Claims receives more than 100% of the allowed amount of the Claims in such Class.  Further, if a Class of Claims is considered a dissenting Class ("Dissenting Class"), i.e., a Class of Claims that is deemed to reject the Plan because the required majorities in amount and number of votes is not received from the Class, the following requirements apply:

#### a.    Class of Secured Claims

Each holder of an impaired secured Claim either (i) retains its liens on the subject property, to the extent of the allowed amount of its secured Claim and receives deferred cash payments having a value, as of the effective date of the plan of at least the allowed amount of such Claim, (ii) has the right to credit bid the amount of its Claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof), or (iii) receives the "indubitable equivalent" of its allowed secured Claim.  Here, to the extent that there are Allowed Secured Claim Holders, the Plan provides for them to receive full payment of the amounts of their Allowed Secured Claims in an agreed amount, ahead of the General Unsecured Creditors (except with respect to the Claim of the EB-5 Lender, whose claim is junior in priority to General Unsecured Creditors).

#### b.    Class of Unsecured Creditors

Either (i) each holder of an impaired unsecured Claim receives or retains under the plan property of a value equal to the amount of its allowed Claim or (ii) the Holders of Claims and Interests that are junior to the Claims of the Dissenting Class will not receive any property under the Plan.  Here, no junior Claim Holders will receive more than the General Unsecured Creditors  and shall each receive their Pro Rata Share of the Distributions and all senior Allowed Claims are paid in full.

#### c.    Class of Interests

Either (i) each interest holder will receive or retain under the plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock and (b) the value of the stock, or (ii) the holders of interests that are junior to the interests of the Dissenting Class will not receive any property under the plan.  Here, the Plan satisfies this final requirement as well because, under the Plan, there is no more junior class than the Interest Holders that will receive a Distribution of property. At this time, the Debtors do not anticipate that any Holder of an Allowed Interest will receive or retain any Interest in the Debtors, the Estates, or any property thereof.  Each such Interest will be cancelled as of the Effective Date.

### 3.    Fair and Equitable

The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured.  The plan satisfies the fair and equitable requirement if no Class of Claims receives more than 100% of the allowed amount of the Claims in such Class.  Further, if a Class of Claims is considered a dissenting Class ("Dissenting Class"), i.e., a Class of Claims that is deemed to reject the Plan because the required majorities in amount and number of votes is not received from the Class, the following requirements apply:

#### a.    Class of Secured Claims

Each Holder of an Impaired Secured Claim either retains the liens securing its claims or receives the indubitable equivalent of its secured claim.

**b.   Class of Unsecured Creditors**

The Holders of General Unsecured Claims will also receive their Pro Rata Share of Distributions after all senior Allowed Claims are paid in full, pursuant to the Bankruptcy Code's priority scheme.  No junior Claim Holders will receive more than the General Unsecured Creditors.

**c.   Class of Interests**

Either (i) each interest holder will receive or retain under the plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock and (b) the value of the stock, or (ii) the holders of interests that are junior to the interests of the Dissenting Class will not receive any property under the plan.  Here, the Plan satisfies this final requirement as well because, under the Plan, there is no more junior class than the Interest Holders that will receive a Distribution of property. At this time, the Debtors do not anticipate that any Holder of an Allowed Interest will receive or retain any Interest in the Debtors, the Estates, or any property thereof.  Each such Interest will be cancelled as of the Effective Date.

**VI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

The Debtors believe the Plan is in the best interests of creditors and should accordingly be accepted and confirmed.  If the Plan as proposed, however, is not confirmed, the following alternatives may be available to Debtors: (i) a liquidation of the Debtors' assets pursuant to chapter 7 of the Bankruptcy Code; (ii) an alternative chapter 11 plan may be proposed and confirmed; or (iii) the Debtors' Chapter 11 Cases may be dismissed.

**A.   Chapter 7 Liquidation**

If a plan pursuant to chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Chapter 11 Cases may be converted to a liquidation case under chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed pursuant to applicable provisions of chapter 7 of the Bankruptcy Code to liquidate the assets of Debtors for distribution in accordance with the priorities established by the Bankruptcy Code.  The Debtors believe that such a liquidation would result in smaller distributions being made to the creditors than those provided for in the Plan because (i) additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and (ii) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation.

**B.   Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code**

If the Plan is not confirmed, the Debtors, or any party in interest may propose a different plan.  Such a plan might involve an alternative means for the liquidation of the Debtors' assets in a chapter 11 bankruptcy proceeding.  However, in light of the extensive involvement and negotiations with the key parties in the Chapter 11 Cases, the Debtors believe that the terms of the Plan provide for an orderly and efficient liquidation of the Debtors' assets and will result in the realization of the most value for Holders of Claims and Interests against the Debtors' Estates.

**C.   Dismissal of the Debtor's Chapter 11 Case**

Dismissal of all of the Debtors' Chapter 11 Cases would have the effect of restoring (or attempting to restore) all parties to the *status quo ante*.  Upon dismissal of the Chapter 11 Cases, the Debtors would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time-consuming process of negotiation with the various creditors of Debtors, and possibly resulting in costly and protracted litigation in various jurisdictions.  Dismissal will also permit unpaid unsecured creditors to obtain and enforce judgments against the Debtors.  The Debtors believe that these actions could lead ultimately to the liquidation of the Debtors under chapter 7 of the Bankruptcy Code.  Therefore, the Debtors believe that dismissal of the Debtors' Chapter 11 Cases is not a preferable alternative to the Plan.

## VII.    RECOMMENDATION AND CONCLUSION

The Debtors believe the Plan is in the best interests of all creditors and the Estates.  For the avoidance of doubt, the Plan is a plan of liquidation and, consistent with section 1141(d) of the Bankruptcy Code, confirmation of the Plan will *not* result in a discharge of any debt, except as specifically provided otherwise in the Plan, Disclosure Statement, and Confirmation Order.  Nevertheless, the Debtors urge the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their ballots.

Dated:  June 11, 2023

Respectfully submitted,

**Banyan Cay Resort & Golf, LLC,** *et al.*

By:        */s/ Gerard A. McHale, Jr.*
Name:    Gerard A. McHale, Jr.
Title:     Chief Restructuring Officer

**<u>Exhibit A</u>**
**The Plan**


**[FILED BY SEPARATE DOCKET ENTRY]**

**Exhibit B**
**Hypothetical Chapter 7 Liquidation Compared to Plan**

Introduction

The following pages contain a hypothetical chapter 7 liquidation, compared to various scenarios under the proposed Chapter 11 Plan.  Please note that the following materials are provided for informational purposes only to aid Holders of Claims in the Voting Class in casting their vote to accept or reject the Plan, and are not intended as a guaranty of any particular outcome or any associated recovery.  The Example scenarios provided herein should not be interpreted as setting forth the Debtors' positions on any particular issue, and the Debtors reserve all rights with respect to the materials contained herein.  **Nothing contained in these materials shall be an admission of fact or liability on the part of the Debtors.**  In addition to a hypothetical Chapter 7 liquidation, these materials provide five Example scenarios, demonstrating the mechanics of the plan under each scenario.  These Examples are as follows:

- Example A (Facial Amounts): Example A represents the Distributions under the Plan in the event that each Claim asserted against the Debtors is ultimately Allowed in its full, facial amount, after reconciling the Claims Register for duplicative claims.

- Example B (ZJC and Bellefrau Deficiency): Example B represents the Distributions under the Plan in the event the total secured portion of the ZJC Claim and Bellefrau Claims are $2 million, with the remainder of the asserted $2,977,703.08 added to the pool of General Unsecured Claim in the event of an allocation dispute with respect to the Sale Proceeds.  For more information on the potential allocation dispute and the potential ramifications thereof, please see Section II.I *supra*.

- Examples C and D ($1 Million and $2 Million in Objected Liens, Respectively): Examples C and D represent the Distributions under the Plan in the event that the Wind-Down Debtor successfully objects to Other Secured Claims such that $1 million or $2 million, respectively, of such Other Secured Claims are ultimately deemed Disallowed (thus increasing the recovery of junior Classes.

- Example E (Examples B and C Combined): Example E represents the Distributions under the Plan in the event both Example B (ZJC and Bellefrau Deficiency) and Example C ($1 Million in Objected Liens) occur simultaneously.  This is provided for illustration purposes only, and is not intended to represent any position of the Debtors with respect to these example scenarios.

As stated above, each of the Examples provided herein are for demonstration purposes only, and are in no way an admission of fact or liability on the part of the Debtors or a statement of the Debtors' position on any particular issue.  Please carefully review the Disclosure Statement (including Article IV regarding risks and considerations) in reviewing these materials.  While the numbers provided herein are intended to give Holders of Claims entitled to vote on the Plan an idea of the possible Distributions and associated recoveries under various scenarios, the Examples provided are not exhaustive and the underlying assumptions (provided for in the Notes) may be subject to further review or be the result of estimations that ultimately prove to overestimate or underestimate the listed Distributions and recoveries.

**Hypothetical Chapter 7 Liquidation and Chapter 11 Plan Comparisons**

| Assets | Note | Chapter 7 | Chapter 11 Plan Example A (Facial Amounts) | Chapter 11 Plan Example B (ZJC and Bellefrau Deficiency) | Chapter 11 Plan Example C ($1 Million in Objected Liens) | Chapter 11 Plan Example D ($2 Million in Objected Liens) | Chapter 11 Plan Example E (Examples B and C Combined) |
|---|---|---|---|---|---|---|---|
| Real Property | [1] | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 |
| Cash | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Gross Liquidation Proceeds** | | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 | $113,150,000.00 |
| | | | | | | | |
| **Wind Down Expenditures** | | | | | | | |
| Chapter 7 Trustee Fees | [2] | $3,417,750.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Wind-Down Costs and Professional Fees | [3] | $60,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 |
| **Total Wind Down Expenditures** | | $3,477,750.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 |
| | | | | | | | |
| **Liabilities (Excluding GUC and EB-5 Claims)** | | | | | | | |
| DIP Lender's DIP and Senior Secured Claims | [4] | $99,995,739.55 | $99,995,739.55 | $99,995,739.55 | $99,995,739.55 | $99,995,739.55 | $99,995,739.55 |
| Secured Claims of Bellefrau and ZJC, LLC | [5] | $2,977,703.08 | $2,977,703.08 | $2,000,000.00 | $2,977,703.08 | $2,977,703.08 | $2,000,000.00 |
| Real Estate Taxes | | $1,298,516.38 | $1,298,516.38 | $1,298,516.38 | $1,298,516.38 | $1,298,516.38 | $1,298,516.38 |
| Other Secured Claims | [6] | $7,394,505.22 | $6,000,000.00 | $6,000,000.00 | $6,000,000.00 | $6,000,000.00 | $6,000,000.00 |
| Non-Professional Chapter 11 Administrative Expenses | | $650,000.00 | $650,000.00 | $650,000.00 | $650,000.00 | $650,000.00 | $650,000.00 |
| Professional Chapter 11 Administrative Expenses | [7] | $1,796,876.50 | $1,796,876.50 | $1,796,876.50 | $1,796,876.50 | $1,796,876.50 | $1,796,876.50 |
| Priority Tax Claims | | $220,000.00 | $220,000.00 | $220,000.00 | $220,000.00 | $220,000.00 | $220,000.00 |
| **Total Liabilities** | | $114,333,340.73 | $112,938,835.51 | $111,961,132.43 | $112,938,835.51 | $112,938,835.51 | $111,961,132.43 |
| | | | | | | | |
| **Successfully Objected Liens** | [8] | $0.00 | $0.00 | $0.00 | $1,000,000.00 | $2,000,000.00 | $1,000,000.00 |
| | | | | | | | |
| **Estimated Recoveries** | | | | | | | |
| General Unsecured Claims/Recovery | [9] | -$4,661,090.73 | $111,164.49 | $1,088,867.57 | $1,111,164.49 | $2,111,164.49 | $2,088,867.57 |
| GUC Recovery Percentage (Assuming Full $18,223,186.77 GUC Pool) | [10] | 0.00% | 0.61% | 5.67% | 6.10% | 11.59% | 10.88% |
| GUC Recovery Percentage (Assuming $9 million GUC Pool) | [11] | 0.00% | 1.24% | 10.91% | 12.35% | 23.46% | 20.94% |
| EB-5 Claims | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Interests | | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |

Notes

[1]  The listed value includes the contract with the Stalking Horse Bidder for $102,100,000, the contract with Banyan Cay Estates, LLC for $10,500,000, and the estimated value of Lot 21, the Debtors' sole remaining real property, for $550,000.

[2]  The Chapter 7 Trustee Fees are calculated according to the formula provided in section 326 of the Bankruptcy Code.

[3]  The number provided lists the de minimis expenses of a Chapter 7 Trustee in winding down the Debtors' estates, compared to the baseline Plan Administrator Expense Reserve Amount provided for in the Plan, which Plan Administrator Expense Reserve (together with any replenishments thereof under the terms of the Plan) shall be used under the Plan to compensate the Plan Administrator their professionals on account of work done by the same after the Effective Date.

[4]  The number listed is an estimate of the aggregate obligations due and owing to the Prepetition Secured Lender on account of both the DIP Obligations and the Prepetition Obligations (each as defined in the Final DIP Order).

[5]  The number provided represents the secured portion of ZJC and Bellefrau's Prepetition Secured Loan Claims against the Debtors. The total aggregate asserted amount of ZJC and Bellefrau's claims is $2,977, 703.08. Examples B and E each provide the Distributions and associated recoveries under the Plan in the event of an allocation fight that renders the secured portions of such claims to be $2 million, with the remainder added to the General Unsecured Claims Pool. These numbers are provided for informational purposes only and do not represent any position of the Debtors with respect to the amount of secured claims of either ZJC or Bellefrau.

[6]  The number provided with respect to the hypothetical Chapter 7 liquidation is the full, asserted amount of Other Secured Claims against the Debtors, as the Debtors assume a hypothetical Chapter 7 Trustee would be unable to pursue any claims objections or settlement discussions with Holders of Other Secured Claims on account of the degree of insolvency in the event of a Chapter 7 conversion. In each of the Examples under the Plan, the number listed is the Other Secured Claims Reserve Amount of $6,000,000.

[7]  The number provided is the Debtors' estimate of the total Professional Fee Claims against the Debtors on account of services rendered before the Effective Date, including those of Keen-Summit Capital Partners, LLC, the Debtors' marketing agent and broker, McHale, P.A., the Debtors' Chief Restructuring Officer, and Pack Law, the Debtors' counsel. Please be advised that some or all of these fees and expenses may be paid pursuant to the Debtors' debtor in possession financing facility, and accordingly shall not be included in the ultimate amount of Administrative Expense Claims. In that event, the amount of such fees and expenses will decrease this line and increase the DIP Obligations (see Note 4) by an equal amount. Accordingly, whether such fees are deemed Allowed Administrative Expenses or paid pursuant to the DIP Obligations, the ultimate estimated recoveries provided herein will not change.

[8]  The number provided lists the total amount of Other Secured Claims successfully objected to and Disallowed under each of the hypothetical scenarios. The amount in a hypothetical Chapter 7 liquidation is listed as $0 because the Debtors assume a hypothetical Chapter 7 Trustee would be unable to pursue any claims objections or settlement discussions with Holders of Other Secured Claims on account of the degree of insolvency in the event of a Chapter 7 conversion. The numbers selected are for informational purposes only, and do not represent an admission of fact or liability of the Debtors with respect to the ultimate amount of Allowed Other Secured Claims.

[9]  The number provided represents the total amount to be Distributed to Holder of Allowed General Unsecured Claims under each scenario. Please note that this number in a hypothetical Chapter 7 liquidation is negative, meaning Holders of Allowed General Unsecured Creditors would receive no distribution. In each case, in the event the Plan Administrator Expense Reimbursement is replenished in accordance with the terms of the Plan, the ultimate Distribution may be slightly less.

[10]  The percentage listed compares the total amount to be provided to Holders of Allowed General Unsecured Claims (see Note 9) to the total asserted General Unsecured Claims Pool of $18,223,186.77. In the event of an allocation dispute that renders part of ZJC and Bellefrau's claims General Unsecured Claims, such deficiency is added to the pool of General Unsecured Claims for the purposes of the percentage recovery listed.

[11]  The percentage listed compares the total amount to be provided to Holders of Allowed General Unsecured Claims (see Note 9) to a General Unsecured Claims pool of $9 million , which would require the Wind-Down Debtor to successfully object to and Disallow approximately $9 million of General Unsecured Claims. This number is provided for informational purposes only, and does not represent any admission of fact or liability of the Debtors with respect to the ultimate amount of Allowed General Unsecured Claims. In the event of an allocation dispute that renders part of ZJC and Bellefrau's claims General Unsecured Claims, such deficiency is added to the pool of General Unsecured Claims for the purposes of the percentage recovery listed.