# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

_____

|  |  |  |
|---|---|---|
| | ) | |
| **In re:** | ) | |
| | ) | **Chapter 11** |
| **Banyan Cay Resort & Golf, LLC,** *et al.,* [1] | ) | |
| | ) | |
| | ) | **Case No. 23-12386-EPK** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

_____

## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

NOTHING CONTAINED IN THIS CHAPTER 11 PLAN SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE EFFECTIVE DATE OF THIS PLAN ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

**PACK LAW**
51 NE 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500

Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882

Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*

Dated: June 22, 2023

---

[1] The Debtors are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf, LLC; (iv) Banyan Cay Dev., LLC; (v) Banyan Cay Villas, LLC; and (vi) Banyan Cay Maintenance, LLC. The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401.

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ...................................................... 1
- A.    Defined Terms ........................................................................................................ 1
- B.    Rules of Interpretation ........................................................................................ 11
- C.    Computation of Time ........................................................................................... 11
- D.    Governing Law ..................................................................................................... 11
- E.    Reference to Monetary Figures ........................................................................... 11
- F.    Reference to the Debtors or the Wind Down Debtors ......................................... 12
- G.    Controlling Document ......................................................................................... 12

ARTICLE II ADMINISTRATIVE, PROFESSIONAL, AND PRIORITY TAX CLAIMS ..................... 12
- A.    Administrative Expense Claims ........................................................................... 12
- B.    Professional Claims ............................................................................................. 12
- C.    Priority Tax Claims .............................................................................................. 13

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..................... 13
- A.    Classification of Claims and Interests ................................................................. 13
- B.    Treatment of Claims and Interests ....................................................................... 14
  1. Class 1 – Other Secured Claims .............................................................. 14
  2. Class 2 – Priority Non-Tax Claims .......................................................... 14
  3. Class 3-A – Prepetition Secured Loan Claims ......................................... 15
  4. Class 3-B – Maintenance Secured Loan Claims ....................................... 15
  5. Class 4-A – Settled Asserted Construction Lien Claims .......................... 16
  6. Class 4-B – Unsettled Asserted Construction Lien Claims ...................... 16
  7. Alternative Combined Class 4 – Asserted Construction Lien Claims ....... 16
  8. Class 5 – General Unsecured Claims ....................................................... 17
  9. Class 6 – EB-5 Claims .............................................................................. 17
  10. Class 7 – Intercompany Claims ............................................................... 17
  11. Class 8 – Section 510(b) Claims .............................................................. 18
  12. Class 8 – Intercompany Interests ............................................................ 18
  13. Class 10 – Interests in Maintenance ........................................................ 18
  14. Class 11 – Class B Interests in Parent ..................................................... 18
  15. Class 12 – Class A Interests in Parent ..................................................... 19
- C.    Special Provision Governing Unimpaired Claims .............................................. 19
- D.    Elimination of Vacant Classes ............................................................................ 19
- E.    Voting Classes; Presumed Acceptance by Non-Voting Classes .......................... 19
- F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .... 19
- G.    Controversy Concerning Impairment .................................................................. 20
- H.    Subordinated Claims ........................................................................................... 20

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................... 20
- A.    Separate Plans ..................................................................................................... 20
- B.    Sources of Consideration for Plan Distributions ................................................ 20
- C.    Wind Down Debtors ............................................................................................. 21
- D.    Plan Administrator .............................................................................................. 21
- E.    Corporate Action ................................................................................................ 21
- F.    Vesting of Assets in the Wind Down Debtors ...................................................... 22
- G.    Effectuating Documents; Further Transactions .................................................. 22
- H.    Section 1146(a) Exemption ................................................................................. 22
- I.    General Settlement of Claims .............................................................................. 23
- J.    Preservation of Rights of Action ......................................................................... 23

K.    Closing the Chapter 11 Case ........................................................................... 24
ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............ 24
    A.    Rejection of Executory Contracts and Unexpired Leases .................................. 24
    B.    Indemnification ........................................................................................... 24
    C.    Cure of Defaults and Objections to Cure and Assumption ............................... 25
    D.    Contracts and Leases Entered Into After the Petition Date .............................. 26
    E.    Insurance Policies ....................................................................................... 26
    F.    Compensation and Benefits .......................................................................... 26
    G.    Nonoccurrence of Effective Date .................................................................. 26
    H.    Reservation of Rights ................................................................................... 26
ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 26
    A.    Distributions on Account of Claims and Interests Allowed as of the Effective Date ....... 26
    B.    Rights and Powers of the Debtors and Plan Administrator .............................. 27
        1.    Powers of the Debtors and Plan Administrator .................................... 27
        2.    Expenses Incurred On or After the Effective Date ............................... 27
    C.    Special Rules for Distributions to Holders of Disputed Claims and Interests .......... 27
    D.    Delivery of Distributions ............................................................................. 27
        1.    Record Date for Distributions to Holders ........................................... 27
        2.    Distribution Process ........................................................................ 28
        3.    Compliance Matters ........................................................................ 28
        4.    Undeliverable and Unclaimed Distributions ....................................... 29
        5.    Minimum; De Minimis Distributions ................................................ 29
    E.    Claims Paid or Payable by Third Parties ........................................................ 29
        1.    Claims Paid by Third Parties ............................................................ 29
        2.    Claims Payable by Insurance Carriers ................................................ 29
        3.    Applicability of Insurance Policies .................................................... 30
    F.    Setoffs ....................................................................................................... 30
    G.    Allocation Between Principal and Accrued Interest ........................................ 30
ARTICLE VII THE PLAN ADMINISTRATOR ................................................................. 30
    A.    The Plan Administrator ................................................................................ 30
        1.    Appointment of the Plan Administrator .............................................. 31
        2.    Retention of Professionals ................................................................ 31
        3.    Compensation of the Plan Administrator ............................................ 31
        4.    Plan Administrator Expenses ............................................................ 31
    B.    Wind Down ................................................................................................ 32
    C.    Exculpation; Indemnification; Insurance; Liability Limitation ......................... 32
    D.    Tax Returns ................................................................................................ 32
    E.    Dissolution of the Wind Down Debtors ......................................................... 33
ARTICLE VIII RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR .......................... 33
    A.    Establishment of Reserve Accounts ............................................................... 33
    B.    Undeliverable Distribution Reserve ............................................................... 33
        1.    Deposits ........................................................................................ 33
        2.    Forfeiture ...................................................................................... 33
        3.    Disclaimer ..................................................................................... 34
        4.    Distribution from Reserve ................................................................ 34
    C.    Priority Non-Tax Claims Reserve .................................................................. 34
    D.    Plan Administrator Expense Reserve .............................................................. 34
    E.    Other Secured Claims Reserve ..................................................................... 34
    F.    GUC Reserve ............................................................................................. 35
    G.    Asserted Construction Lien Reserve ............................................................. 35

|  | H. | General Account and Distribution Reserve Account Adjustments | 36 |
|---|---|---|---|
| ARTICLE IX | | PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS | 36 |
|  | A. | Allowance of Claims and Interests | 36 |
|  | B. | Claims Administration Responsibilities | 36 |
|  | C. | Estimation of Claims | 37 |
|  | D. | Adjustment to Claims Without Objection | 37 |
|  | E. | Time to File Objections to Claims | 37 |
|  | F. | Interest | 37 |
|  | G. | Distribution Pending and After Allowance | 37 |
|  | H. | Single Satisfaction of Claims | 38 |
|  | I. | Disallowance of Claims and Interests | 38 |
| ARTICLE X | | SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS | 38 |
|  | A. | Injunction | 38 |
|  | B. | Exculpation | 39 |
|  | C. | Protection Against Discriminatory Treatment | 39 |
|  | D. | Recoupment | 39 |
|  | E. | Document Retention | 39 |
|  | F. | Reimbursement or Contribution | 39 |
|  | G. | Release of Liens | 40 |
| ARTICLE XI | | CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE | 40 |
|  | A. | Conditions Precedent to the Effective Date | 40 |
|  | B. | Waiver of Conditions Precedent | 40 |
|  | C. | Effect of Non-Occurrence of Conditions to Consummation | 41 |
| ARTICLE XII | | MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | 41 |
|  | A. | Modification of Plan | 41 |
|  | B. | Effect of Confirmation on Modifications | 41 |
|  | C. | Withdrawal of Plan | 41 |
| ARTICLE XIII | | RETENTION OF JURISDICTION | 41 |
| ARTICLE XIV | | MISCELLANEOUS PROVISIONS | 43 |
|  | A. | Immediate Binding Effect | 43 |
|  | B. | Additional Documents | 43 |
|  | C. | Payment of Statutory Fees | 43 |
|  | D. | Reservation of Rights | 44 |
|  | E. | Successors and Assigns | 44 |
|  | F. | Service of Documents | 44 |
|  | G. | Term of Injunctions or Stays | 44 |
|  | H. | Entire Agreement | 45 |
|  | I. | Plan Supplement Exhibits | 45 |
|  | J. | Non-Severability | 45 |
|  | K. | Closing of Chapter 11 Case | 45 |
|  | L. | Waiver or Estoppel | 45 |

## Introduction

Banyan Cay Resort & Golf, LLC, *et al.*, as Debtors and Debtors in Possession, propose this *Chapter 11 Joint Plan of Liquidation* pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings set forth in <u>Article I.A</u> below.

The Plan proposes the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors seek to consummate the Sale Transactions as soon as practicable after Confirmation of the Plan and use the Sale Proceeds to fund the Distribution Reserve Accounts hereunder. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. On March 30, 2023, the Bankruptcy Court entered an order [Docket No. 18] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). Reference is made herein to the Disclosure Statement for a discussion of the Debtors' history, business, property and operations, projections, risk factors, a summary and analysis of this Plan, the Sale Transactions, and certain related matters.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

**A.     Defined Terms**

1.     "*Administrative Expense Claim*" means any Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Debtors' Estate and operating the Debtors' business, including wages, salaries, or commissions for services rendered after the Petition Date and through the Effective Date, claims under section 503(b)(9) of the Bankruptcy Code, reasonable and documented claims of Professionals approved for payment by the Debtors' Estate to the extent allowed under Sections 330 or 503 of the Bankruptcy Code, all fees and charges assessed against the Debtors' Estate under section 1930 of chapter 123 of title 28 of the United States Code, and all Claims that are entitled to be treated as Administrative Expense Claims and that are Allowed pursuant to a Final Order of the Bankruptcy Court subject to reasonableness.

2.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

3.     "*Allowed*" means with respect to Claims: (a) any Claim, proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order; provided, further, that the Plan Administrator may affirmatively determine to deem Allowed any Claim described in clause (a) notwithstanding the fact that the period within which an objection may be interposed has not yet expired. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

Notwithstanding anything to the contrary herein and to the maximum extent provided by applicable law, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, as applicable. For the avoidance of doubt, to the maximum extent provided by applicable law and except as provided herein or otherwise agreed, no Entity may File a Proof  of Claim after the Claims Bar Date without further order of the Bankruptcy Court. "Allow" and "Allowing" shall have correlative meanings.

4.      "*Apportioned Prepetition Secured Loan Claim Liability*" means, with respect to each Debtor, the proportion of Allowed Prepetition Secured Loan Claims that shall be apportioned to and paid by such Debtor under the terms of the Plan, which proportions are (i) as to Banyan Cay Resort & Golf, LLC, 74.86%, (ii) as to Banyan Cay Dev., LLC, 22.26%, (iii) as to Banyan Cay Villas, LLC, 2.88%, and (iv) as to each of Banyan Cay Maintenance, LLC, Banyan Cay Mezzanine Borrower, LLC, and Banyan Cay Investment, LLC, 0%.

5.      "*Asserted Construction Lien Claim*" means all Settled Asserted Construction Lien Claims and all Unsettled Asserted Construction Lien Claims.

6.      "*Asserted Construction Lien Reserve*" means a separate, segregated account to be established and maintained by the Plan Administrator and funded with the Asserted Construction Lien Reserve Amount pursuant to Article VIII hereof.

7.      "*Asserted Construction Lien Reserve Amount*" means $3,500,000.00, or such greater number as the Plan Administrator shall determine in the exercise of reasonable business judgment is necessary to administer the Asserted Construction Lien Claims as set forth herein.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida or such other court having jurisdiction over the Chapter 11 Case.

10.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as amended from time to time and as applicable to the Chapter 11 Case, and the general, local, and chamber rules of the Bankruptcy Court.

11.     "*Bellefrau Claim*" means the Allowed Claim of Bellefrau Group, LLC, as set forth in Claim No. 4 in Case No. 23-12389.

12.     "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in New York are required or authorized by law to remain closed.

13.     "*Cash*" means legal tender of the United States of America and equivalents thereof.

14.     "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, which was not conveyed to the Purchaser in connection with the Sale Transaction and which was property of the Debtors as of the Effective Date.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under

contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests on or before the Claims Objection Bar Date; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

15.     "*Chapter 11 Case*" means the Debtors' chapter 11 case filed in the Bankruptcy Court on the Petition Date.

16.     "*Claim*" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, against the Debtors.

17.     "*Claims Bar Date*" mean, as applicable, the General Claims Bar Date or the Governmental Claims Bar Date.

18.     "*Claims Objection Bar Date*" means the first Business Day that is 180 days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court upon a motion filed by the Plan Administrator served only on the Bankruptcy Rule 2002 service list (which motion to extend the objection deadline shall not be deemed a modification of the Plan).

19.     "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

20.     "*Class A Interest*" means the Class A Interests in the Parent, as set forth in the Parent Operating Agreement.

21.     "*Class B Interest*" means the Class B Interests in the Parent, as set forth in the Parent Operating Agreement.

22.     "*Closing*" means the closing of the transactions contemplated inn the Purchase Agreements, as defined more specifically therein.

23.     "*Confirmation*" means the ruling by the Bankruptcy Court confirming the Plan or the entry of the Confirmation Order on the docket of the Chapter 11 Case.

24.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

25.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order, as such hearing may be continued from time to time.

26.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.     "*Consummation*" means the occurrence of the Effective Date.

28.     "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) for cure of the Debtors' defaults under an Executory Contract or an Unexpired Lease assumed by such Debtors pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code and subject to rights and remedies, including rights of setoff,

counterclaim, or recoupment and claims for breaches of contract and/or duties imposed by law, as applicable.

29.    "*Debtors*" means, collectively, each of the following: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf, LLC; (iv) Banyan Cay Dev., LLC; (v) Banyan Cay Villas, LLC; and (vi) Banyan Cay Maintenance, LLC.

30.    "*DIP Facility*" means "DIP Financing" as defined in the Final DIP Order.

31.    "*DIP Facility Claims*" means all Claims arising from the DIP Facility.

32.    "*DIP Lender*" means U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership, and/or its lender assigns.

33.    "*Disallowed*" means, with respect to any Claim, or any portion thereof, that such Claim, or any portion thereof, is not Allowed.

34.    "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Chapter 11 Joint Plan of Liquidation*, dated June 11, 2023 [Docket No. 159], as amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

35.    "*Disputed*" means, with respect to any Claim, any Claim that is not yet Allowed.

36.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Wind Down Debtor, on or after the Effective Date, the first of which shall occur on the Effective Date, upon which the Plan Administrator shall make distributions to Holders of Allowed Claims and/or Interests entitled to receive distributions under the Plan.

37.    "*Distribution Record Date*" means the Confirmation Date.

38.    "*Distribution Reserve Accounts*" means the Priority Non-Tax Claims Reserve, the Unclaimed Distributions Reserve, the Plan Administrator Expense Reserve, the Other Secured Claims Reserve, the Asserted Construction Lien Deficiency Claims, and the GUC Reserve established pursuant to this Plan.

39.    "*EB-5 Claim*" means the means any Claim held by Banyan Cay Resort Fund, LLC against Banyan Cay Mezzanine Borrower, LLC.

40.    "*EB-5 Lender*" means Banyan Cay Resort Fund, LLC.

41.    "*Effective Date*" means the date that is three (3) Business Days after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article XI of the Plan have been satisfied or waived in accordance with Article XI of the Plan.

42.    "*Entity*" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

43.    "*Equity Interest*" means any Interest in the Debtors.

44.    "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code.

4

45.    "*Estate*" means the estate of the Debtors created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

46.    "*Exchange Act*" means the Securities Exchange Act of 1934, as now in effect or hereafter amended.

47.    "*Excluded Assets*" means any assets of the Debtors excluded under each of the Purchase Agreements.

48.    "*Exculpated Parties*" means collectively: the Debtors and all of their current and former members (including *ex officio* members), officers, directors, employees, partners, attorneys, financial advisors, accountants, managed funds, investment bankers, investment advisors, actuaries, professionals, agents, affiliates and representatives of each of the Debtors (whether current or former, in each case in his, her or its capacity as such).

49.    "*Executory Contract*" means a contract or lease to which the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

50.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022 closing the Chapter 11 Case.

51.    "*Final DIP Order*" means the final agreed *Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, (III) Authorizing the Debtors to Obtain Postpetition Financing, (IV) Granting Super Priority Claims to the DIP Lender,* entered on May 18, 2023 [Docket No. 131].

52.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

53.    "*General Account*" means a general account (a) into which shall be deposited revenues and proceeds of all assets of the Debtors and Cash in an amount in excess of the amount required to adequately maintain any other account or reserve described in or contemplated by the Plan; provided that the General Account shall not include funds required to be deposited into such account or reserve, and (b) from which shall be made payments to any Distribution Reserve Account (other than GUC Reserve) that does not contain Cash in an amount sufficient to adequately maintain such Distribution Reserve Account.

54.    "*General Claims Bar Date*" means the deadline for each person or entity (including without limitation, each individual, partnership, joint venture, corporation, estate, or trust) other than a governmental unit (as defined in § 101(27) of the Bankruptcy Code) to file a Proof of Claim in respect of a prepetition Claim against any of the Debtors, which deadline was June 7, 2023.

55.    "*General Unsecured Claim*" means any Claim against the Debtors as of the Petition Date, other than: (a) an Administrative Expense Claim; (b) a Priority Non-Tax Claim; (c) a Priority Tax Claim; (d) an Other Secured Claim; (e) a Prepetition Secured Loan Claim; (f) an Asserted Construction Lien Deficiency Claim, (g) an EB-5 Claim, (h) an Intercompany Claim; or (i) a Section 510(b) Claim.

56.     "*Governmental Claims Bar Date*" means the deadline for each governmental unit (as defined in § 101(27) of the Bankruptcy Code) to file a Proof of Claim in respect of a prepetition Claim against any of the Debtors, which deadline was September 25, 2023.

57.     "*GUC Reserve*" means a separate, segregated account to be established and maintained by the Plan Administrator and funded with the GUC Reserve Amount pursuant to Article VIII hereof.

58.     "*GUC Reserve Amount*" means the amount of the Sale Proceeds, after the payment of Administrative Expense Claims, Professional Claims, Priority Tax Claims, Prepetition Secured Loan Claims, and Maintenance Secured Loan Claims, and the establishment of each of the Distribution Reserve Accounts other than the GUC Reserve, to be used by the Plan Administrator in accordance with Article VIII hereof, which GUC Reserve Amount shall not exceed the total asserted amount of General Unsecured Claims.

59.     "*GUC Reserve Replenishment Amount*" means, as to Debtor Banyan Cay Dev. LLC, after the Plan Administrator sells Lot 21, the amount of such sale proceeds after the Plan Administrator Expense Reserve Replenishment Amount has been transferred to the Plan Administrator Expense Reserve.

60.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

61.     "*Holder*" means any Entity holding a Claim or an Interest.

62.     "*Impaired*" means a Claim or an Interest that is not Unimpaired.

63.     "*Indemnification Provisions*" means the Debtors' indemnification provisions currently in place as of the Petition Date whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, or contracts for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates; *provided, however,* that each of Jacob Companies, Inc., Donald R. Perry, Lexxcom LLC, and each of their respective Affiliates shall not be included in or benefit from any Indemnification Provision.

64.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

65.     "*Intercompany Interest*" means any Interest in a Debtor held by another Debtor.

66.     "*Interest*" means any common stock, limited liability company interest, Equity Security, equity, ownership, profit, interest, unit, or share in the Debtors, including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in the Debtors, whether or not arising under or in connection with any employment agreement and whether or not certificated, transferrable, preferred, common, voting, or denominated "stock" or a similar security.

67.     "*Interim DIP Order*" means the final agreed Order Authorizing Use of Cash Collateral, Granting Adequate Protection, Authorizing the Debtors to Obtain Postpetition Financing, Granting Super Priority Claims to the DIP Lender, entered on April 24, 2023 [Docket No. 94].

68.     "*Lien*" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

69.     "*Lot 21*" means that certain single-family estate lot owned by Debtor Banyan Cay Dev. LLC that is not being sold pursuant to the Sale Transactions, with resect to which the Prepetition Secured Lender shall reserve all of its rights under the Plan.

70.    "*Maintenance*" means Debtor Banyan Cay Maintenance, LLC.

71.    "*Maintenance Secured Loan Claims*" means the Bellefrau Claim and the ZJC Claim.

72.    "*Other Secured Claim*" means any Secured Claim other than a Prepetition Secured Loan Claim or a Maintenance Secured Loan Claim.

73.    "*Other Secured Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Other Secured Claims Reserve Amount pursuant to Article VIII.

74.    "*Other Secured Claims Reserve Amount*" means $202,683.24.

75.    "*Parent*" means Debtor Banyan Cay Investment, LLC, debtor in Case No. 23-12390.

76.    "*Parent Operating Agreement*" means the *Operating Agreement of Banyan Cay Investment, LLC*, dated as of September 30, 2020, as amended, supplemented, or otherwise modified from time to time, including all exhibits and schedules thereto, and including, without limitation, the *First Amendment to Amended and Restated Operating Agreement of Banyan Cay Investment, LLC*, dated as of August 27, 2021.

77.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

78.    "*Petition Date*" means March 29, 2023 the date on which the Debtors commenced the Chapter 11 Cases.

79.    "*Plan*" means the Debtors' *Chapter 11 Joint Plan of Liquidation*, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, as applicable.

80.    "*Plan Administrator*" means, as applicable, the Wind Down Debtors or any Entity or Person the Wind Down Debtors select to make or to facilitate distributions in accordance with the Plan.

81.    "*Plan Administrator Expense Reserve*" means a segregated account established by the Plan Administrator established in accordance with Article VIII.

82.    "*Plan Administrator Expense Reserve Amount*" means $500,000.00 plus the amount of approved, applied for, or otherwise asserted but not yet paid Professional Claims on the Effective Date.

83.    "*Plan Administrator Expense Reserve Replenishment Amount*" means after the Plan Administrator sells Lot 21, the amount of such sale proceeds the Plan Administrator determines in their reasonable business judgment is necessary to pay already accrued and unpaid expenses of the Plan Administrator plus such greater amounts the Plan Administrator deems is necessary to complete the Plan Administrator's duties under the Plan, including those set forth in Article VII, *provided, however*, that under no circumstances shall such amount be less than the expenses of the Plan Administrator already accrued as of the date that the Plan Administrator Reserve Replenishment Amount is transferred to the Plan Administrator Expense Reserve, to the extent such sale proceeds exceed such already accrued expenses.

84.    "*Plan Supplement*" means the documents to be filed in a supplement to the Plan no later than July 18, 2023, or such later date as may be approved by the Bankruptcy Court on notice to parties in interest that includes the necessary documentation to effectuate the Plan.

7

85. "*Plan Transaction Documents*" means all definitive documents and agreements to which the Debtors will be a party as contemplated by the Plan, including: (a) all motions and proposed court orders that the Debtors files on or after the Petition Date and seeks to have heard on an expedited basis at the "first day hearing"; (b) the Plan; (c) any documentation or agreements related to item (b) set forth above; (d) the Confirmation Order and pleadings in support of entry thereof; (e) any filings seeking to assume or to assume and assign any Executory Contract or Unexpired Lease; (f) any document filed by the Debtors to implement any of the foregoing; and (g) each other document that will comprise the Plan Supplement. The form and substance of each document comprising the Plan Transaction Documents shall be acceptable to the Debtors.

86. "*Prepetition Secured Lender*" means U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership.

87. "*Prepetition Secured Loan Claim*" means the Claim of the Prepetition Secured Lender for the Prepetition Obligations, as such term is defined in the Final DIP Order.

88. "*Priority Non-Tax Claim*" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or Priority Tax Claim.

89. "*Priority Non-Tax Claims Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the Priority Non-Tax Claims Reserve Amount pursuant to Article VIII hereof.

90. "*Priority Non-Tax Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors, which amount shall be funded by the Debtors and used by the Plan Administrator for the payment of Allowed Priority Non-Tax Claims to the extent that such Priority Non-Tax Claims have not been paid in full on or before the Effective Date.

91. "*Priority Tax Claim*" means any Claim of a Governmental Unit entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

92. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan; provided that for the purposes of determining the Pro Rata share of the GUC Reserve, the proportion of an Allowed Class 4 Claim shall be compared to the aggregate amount of Allowed Class 4 Claims of GUC Holders only.

93. "*Professional*" means any Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 326, 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

94. "*Professional Claim*" means any Claim by a Professional for Professional Fees.

95. "*Professional Fees*" means the accrued, contingent, and/or unpaid compensation for services rendered (including hourly, transaction, and success fees), and reimbursement for expenses incurred, by Professionals, that: (a) are awardable and allowable pursuant to sections 326, 327, 328, 329, 330, 331, 363, 503(b), and/or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been

previously paid (regardless of whether a fee application has been filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Professional.

96.    "*Proof of Claim*" means a proof of Claim filed against the Debtors in the Chapter 11 Case.

97.    "*Purchase Agreement*" means, singularly and collectively, each of the *Amended and Restated Asset Purchase Agreement* by and among the Debtors and Westside Property Investment Company, Inc., dated as of April 28, 2023 [Docket No. 109-A], the *Agreement to Purchase and Sale of Real Property*, by and among Debtor Banyan Cay Dev. LLC and Banyan Cay Estates, LLC, dated as of June 16, 2021 [Docket No. 97-A], and any other further agreement approved by the Bankruptcy Court that provides for the purchase and sale of the Debtors' assets, each as amended, supplemented, or modified from time to time.

98.    "*Purchaser*" means each purchasing party under a Purchase Agreement, together with its successors and permitted assigns.

99.    "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder to demand or receive payment of such Claim prior to the stated maturity of such Claim from and after the occurrence of a default.

100.    "*Retained Causes of Action*" means, collectively, all Causes of Action of the Debtors, whether arising before or after the Petition Date, other than the following: (a) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by the Debtor and Wind Down Debtors as of the Effective Date (but not before), except for Causes of Action brought as counterclaims or defenses to claims asserted against the Wind Down Debtors and its Affiliates; (b) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law; and (c) all Causes of Action released, waived or deemed satisfied pursuant to the Purchase Agreement; *provided, however*, and notwithstanding anything to the contrary in the above definition, any and all Causes of Action of the Debtors against Jacob Companies, Inc., Donald R. Perry, Lexxcom LLC, the EB-5 Lender, David Finkelstein, American Immigration Group, LLC, and each of their respective Affiliates shall be Retained Causes of Action.

101.    "*Sale Order*" means that certain Order of the Bankruptcy Court approving the sale of the Assets (as defined in the Purchase Agreement with Westside Property Investment Company, Inc., which sale was approved at the hearing before the Bankruptcy Court on June 15, 2023.

102.    "*Sale Proceeds*" means all proceeds from the Sale Transactions, including the right to enforce the Purchase Agreement.

103.    "*Sale Transaction*" means the certain transaction between the Debtors and the Purchaser as set forth in the Purchase Agreements.

104.    "*Section 510(b) Claim*" means any Claim subject to subordination arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

105.    "*Secured Claim*" means any Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a

Bankruptcy Court order to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) subject to setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

106. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, or any similar federal, state, or local law.

107. "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

108. "*Settled Asserted Construction Lien Claim*" means any Claim, asserted on account of a construction, materialman, contractor, subcontractor, or similar lien, that has been settled with the Holder of such Claim and the Debtors, as set forth in the Plan Supplement.

109. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

110. "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Wind Down Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Wind Down Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

111. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

112. "*Unsettled Asserted Construction Lien Claim*" means any Claim, other than a Settled Asserted Construction Lien Claim, asserted on account of a construction, materialman, contractor, subcontractor, or similar lien (a) proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); or (b) that is listed in the Schedules of the Debtors.

113. "*Wind Down*" means the wind down and dissolution of the Debtors' Estates following the Effective Date as set forth in Article VII hereof through and until the closing of the Chapter 11 Cases.

114. "*Wind Down Debtors*" means the Debtors, or any successor or assigns thereto, by merger, consolidation, sale, or otherwise, on or after the Effective Date.

115. "*Wind Down Debtors Assets*" means: (a) all Causes of Action not previously sold, settled, exculpated or released by the Debtors or their Estates; (b) the Excluded Assets; (c) the Debtors' rights under the Purchase Agreement, including all rights of recovery under the Purchase Agreement and any ancillary agreements among the Debtors and the Purchaser; (d) the Distribution Reserve Accounts; (e) Lot 21, and (f) all other assets of the Debtors or of the Estates existing on the Effective Date after giving effect to all distributions required to be made as of, prior to, or after the Effective Date by an Entity other than the Plan Administrator. For the avoidance of doubt, the Post- Effective Date Assets shall not include any claims or Causes of Action released pursuant to Article X.A hereof or exculpated pursuant to Article X.D hereof.

116. "*ZJC Claim*" means the Allowed Claim of ZJC, LLC, as set forth in Claim No. 1 in Case No. 23-12389.

10

**B.      Rules of Interpretation**

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (l) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" and (m) any immaterial effectuating provisions may be interpreted by the Debtors or the Wind Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**C.      Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Wind Down Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtors or Wind Down Debtors, as applicable.

**E.      Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

11

**F.      Reference to the Debtors or the Wind Down Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Wind Down Debtors mean the Debtors and the Wind Down Debtors, as applicable, to the extent the context requires.

**G.      Controlling Document**

In the event of an inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control.  In the event of an inconsistency between the Plan and the Disclosure Statement, the Plan shall control.  In the event of any inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

# ARTICLE II
## ADMINISTRATIVE, PROFESSIONAL, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

**A.      Administrative Expense Claims**

On the Effective Date or as soon thereafter as such Allowed Administrative Expense Claims become due and payable according to their terms, unless otherwise agreed to by the Holder of an Allowed Administrative Expense Claim and the Debtors or the Wind Down Debtors, as applicable, each Holder of an Allowed Administrative Expense Claim (other than Holders of Professional Claims and Priority Tax Claims) will receive in full and final satisfaction, settlement, release, and discharge of, and, in exchange for, such Holder's Administrative Expense Claim (i) an amount of Cash equal to the unpaid amount of such Allowed Administrative Expense Claim, or (ii) receive treatment as is consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

**B.      Professional Claims**

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and serve final requests for payment of Professional Claims no later than July 10, 2023.  Objections to any Professional Claim must be filed and served on the Wind Down Debtors and the applicable Professional before the day that is two (2) Business Days before the hearing that is set with respect to such Professional Claim.

From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Wind Down Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.        **Priority Tax Claims**

On the Effective Date, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or the Wind Down Debtors, as applicable, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.        **Classification of Claims and Interests**

Except for the Claims addressed in <u>Article II</u> of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest is also classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  Below is a chart assigning each Class a number for purposes of identifying separate Classes.

| Class | Claims or Interests | Status | Voting Rights |
|-------|--------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3-A | Prepetition Secured Loan Claims | Impaired | Entitled to Vote |
| 3-B | Maintenance Secured Loan Claims | Impaired | Entitled to Vote |
| 4-A | Settled Asserted Construction Lien Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4-B | Unsettled Asserted Construction Lien Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | EB-5 Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Intercompany Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Interests in Maintenance | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Class B Interests in Parent | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 12 | Class A Interests in Parent | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.**      **Treatment of Claims and Interests**

Each Holder of an Allowed Claim or Allowed Interest, in accordance with section 1123(a) of the Bankruptcy Code, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by: (a) the Debtors; and (b) the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.      Class 1 – Other Secured Claims

      a.      *Classification*: Class 1 consists of any Other Secured Claims against the Debtors.

      b.      *Treatment*: Each Holder of an Allowed Other Secured Claim, as determined by the Debtors or the Wind Down Debtors, as applicable, shall receive, at the Plan Administrator's Election:

            (i)      payment in full in Cash in an amount equal to its Allowed Other Secured Claim with a distribution from the Other Secured Claims Reserve;

            (ii)      the Wind Down Debtors' interest in the collateral securing such Holder's Allowed Other Secured Claims; or

            (iii)      such other treatment agreed to by the Holder of such Allowed Other Secured Claim and the Debtor or the Wind Down Debtors.

      c.      *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Priority Non-Tax Claims

      a.      *Classification*: Class 2 consists of any Priority Non-Tax Claims against the Debtors.

      b.      *Treatment*: Each Holder of an Allowed Priority Non-Tax Claim, as determined by the Debtors or the Wind Down Debtors, as applicable, shall receive:

            (i)      payment by the Plan Administrator from the Priority Non-Tax Claims Reserve, as set forth in Article VIII of this Plan, the amount of such Holder's Allowed Class 2 Claim on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), and (B) fifteen Business Days following the date such Claim is Allowed by non-appealable order. The Cash payment shall be in exchange for and in full satisfaction and discharge of the Holder's Allowed Priority Claim; or

            (ii)      such other treatment on account of such Allowed Priority Non-Tax Claim as determined by the Debtors or the Wind Down Debtors, as applicable,

14

as agreed to in writing by such Holder of such Allowed Priority Non-Tax Claim.

    c.    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3-A – Prepetition Secured Loan Claims

    a.    *Classification*: Class 3-A consists of the Prepetition Secured Loan Claims.

    b.    *Treatment*: Each Holder of an Allowed Prepetition Secured Loan Claim, as determined by the Debtors or the Wind Down Debtors, as applicable, shall receive, at the Plan Administrator's Election:

        (i)    upon the Closing, payment in Cash from each Debtor in an amount equal to such Debtor's Apportioned Prepetition Secured Loan Claim Liability;

        (ii)    such other treatment agreed to by the Holder of such Allowed Prepetition Secured Loan Claim and the Debtor or the Wind Down Debtors.

Each Holder of an Allowed Prepetition Secured Loan Claim shall reserve all of its rights, as the senior secured Claim Holder against Banyan Cay Resort & Golf, LLC; Banyan Cay Dev. LLC; and Banyan Cay Villas, LLC, in such Debtors' property, including but not limited to Lot 21, the Asserted Construction Lien Claim Reserve, and the GUC Reserve, to the extent Distributions therefrom (or from the proceeds thereof) are necessary to pay any such unpaid Allowed Prepetition Secured Loan Claim after the Effective Date, and with respect to such Distributions, with a full reservation as to the Apportioned Prepetition Secured Loan Claim Liability.

    c.    *Voting*: Class 3-A is Impaired under the Plan. Holders of Allowed Prepetition Secured Loan Claims are entitled to vote to accept or reject the Plan.

4.    Class 3-B – Maintenance Secured Loan Claims

    a.    *Classification*: Class 3-B consists of the Maintenance Secured Loan Claims.

    b.    *Treatment*: Each Holder of an Allowed Maintenance Secured Loan Claim shall receive payment in Cash in an amount equal to its Allowed Maintenance Secured Loan Claim, as asserted in such Holder's Proof of Claim, less the Debtors' Apportioned Obligations (as defined in Section 5.6(c) of the Purchase Agreement selling such Holder's Collateral) owed to the Palm Beach County Tax Collector at the time of Closing and the pro rata portion of U.S. Trustee fees owed by Banyan Cay Maintenance, LLC for the calendar quarter in which the Closing takes place that are attributable to the Distribution to such Holder.

    c.    *Voting*: Class 3-B is Impaired under the Plan. Holders of Allowed Maintenance Secured loan Claims are entitled to vote to accept or reject the Plan.

5.      Class 4-A – Settled Asserted Construction Lien Claims

    a.      *Classification*: Class 4-A consists of any Settled Asserted Construction Lien Claims against the Debtors.

    b.      *Treatment*: Each Holder of an Allowed Settled Asserted Construction Lien Claim shall receive Cash in an amount equal to its Settled Asserted Construction Lien Settlement Amount from the Asserted Construction Lien Claim Reserve as set forth in Article VIII of this Plan, in exchange for the settlement of such Holder's Claim to a sum-certain, such Holder's agreement to provide releases to the Debtors, the Prepetition Secured Lender, and Jacob Industries, LLC, and such Holder's agreement to cooperate with the Debtors in analyzing all Construction Lien Claims, all as set forth in the Plan Supplement.

    c.      *Voting*: Class 4-A is Unimpaired under the Plan.  Holders of Allowed Settled Construction Lien Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Settled Construction Lien Claims are not entitled to vote to accept or reject the Plan.

6.      Class 4-B – Unsettled Asserted Construction Lien Claims

    a.      *Classification*: Class 4-B consists of any Unsettled Asserted Construction Lien Claims against the Debtors.

    b.      *Treatment*: Each Holder of an Allowed Unsettled Asserted Construction Lien Claim shall receive Cash in an amount equal to its Pro Rata Share from the Asserted Construction Lien Claim Reserve as set forth in Article VIII of this Plan, after administration of and payment to Holder of Class 4-A Allowed Settled Construction Lien Claims.

    c.      *Voting*: Class 4-B is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.      Alternative Combined Class 4 – Asserted Construction Lien Claims

To the extent that, as of the Effective Date, there are no Settled Asserted Construction Lien Claims, or in connection with Confirmation of the Plan, Confirmation may be impacted, withheld, or delayed as determined by the Bankruptcy Court or by the Debtors and Holders of Settled Asserted Construction Lien Claims, due in whole or in part to the classification, treatment, or any other matters related to the Class 4-A Settled Construction Lien Claims and Class 4-B Unsettled Construction Lien Claims, such Classes shall be combined into the Alternative Combined Class 4 in order to effectuate Confirmation of the Plan.  In such event, the benefits of the classification and treatment of the Class 4-A Settled Asserted Construction Lien Claims, including the general reduction of the Asserted Construction Lien Claim pool effectuated by the releases contemplated therein and the certainty of the ultimate payments thereto will be lost to the Debtors' estates and the Wind Down Debtors will be required to negotiate, settle, dispute, and object to, each as applicable all Asserted Constriction Lien Claims.

    a.      *Classification*: Alternative Combined Class 4 consists of any Asserted Construction Lien Claims against the Debtors.

b.  *Treatment*: Each Holder of an Allowed Asserted Construction Lien Claim shall receive Cash in an amount equal to its Pro Rata Share from the Asserted Construction Lien Claim Reserve as set forth in Article VIII of this Plan.

c.  *Voting*: Alternative Combined Class 4 is Impaired under the Plan.  Holders of Allowed Asserted Construction Lien Claims are entitled to vote to accept or reject the Plan.

8.  Class 5 – General Unsecured Claims

a.  *Classification*: Class 5 consists of any General Unsecured Claims against the Debtors.

b.  *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive Cash in an amount equal to its Pro Rata share of the Cash held in the GUC Reserve as set forth in Article VIII of this Plan.

c.  *Voting*: Class 5 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

9.  Class 6 – EB-5 Claims

a.  *Classification*: Class 6 consists of any EB-5 Claims.

b.  *Treatment*: Each Holder of an Allowed Class65 Claim shall receive available Cash from the General Account in an amount equal to its Allowed EB-5 Claim after the establishment of all Distribution Reserve Accounts and payment of all Administrative Expense Claims, Priority Tax Claims, Other Secured Claims, Priority Non-Tax Claims, Prepetition Secured Loan Claims, Maintenance Secured Loan Claims, Asserted Construction Lien Claims, and General Unsecured Claims in full, in each case as applicable to each Debtor.

c.  *Voting*: Class 6 is Impaired under the Plan.  Holders of Allowed EB-5 Claims are entitled to receive a Distribution under the Plan only after the payment in full of each Claim senior to Allowed Class 5 EB-5 Claims, which contingency may never occur.  Accordingly, Holders of Allowed Class 6 EB-5 Claims are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Allowed EB-5 Claims are not entitled to vote to accept or reject the Plan.

10.  Class 7 – Intercompany Claims

a.  *Classification*: Class 7 consists of any Intercompany Claims.

b.  *Treatment*: Class 7 Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 7 Claim will not receive any distribution on account of such Class 7 Claim.

c.      *Voting*: Class 7 is Impaired. Each Holder of a Class 7 Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

11.    Class 8 – Section 510(b) Claims

a.      *Classification*: Class 8 consists of any Section 510(b) Claims against the Debtors.

b.      *Treatment*: Each Allowed Section 510(b) Claim shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 8 Claim will not receive any distribution on account of such Class 8 Claim.  The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

c.      *Voting*: Class 8 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

12.    Class 8 – Intercompany Interests

a.      *Classification*: Class 9 consists of all Intercompany Interests.

b.      *Treatment*: Class 9 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 9 Interest will not receive any distribution on account of such Class 9 Interest.

c.      *Voting*: Class 9 is Impaired. Each Holder of a Class 9 Interest is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

13.    Class 10 – Interests in Maintenance

a.      *Classification*: Class 10 consists of all Interests in Maintenance.

b.      *Treatment*: Class 10 Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 10 Interest will not receive any distribution on account of such Class 10 Interest.

c.      *Voting*: Class 10 is Impaired. Each Holder of a Class 10 Interest is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

14.    Class 11 – Class B Interests in Parent

a.      *Classification*: Class 11 consists of all Class B Interests in Parent.

b.      *Treatment*: Each Holder of an Allowed Class 11 Interest will receive its Pro Rata share of available Cash from the General Account for Holders of Class B Interests in Parent after the payment of EB-5 Claims in full.

18

      c.     *Voting*: Class 11 is Impaired under the Plan.  Holders of Allowed Class B Interest in Parent are entitled to receive a Distribution under the Plan only after the payment in full of each Claim senior to Allowed Class B Interests in Parent, which contingency may never occur.  Accordingly, Holders of Allowed Class B Interests in Parent are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Class B Interests in Parent are not entitled to vote to accept or reject the Plan.

15.     Class 12 – Class A Interests in Parent

      a.     *Classification*: Class 12 consists of all Class A Interests in Parent.

      b.     *Treatment*: Each Holder of an Allowed Class 12 Interest will receive its Pro Rata share of available Cash from the General Account for Holders of Class A Interests in Parent after the payment of Class B Interests in full.

      c.     *Voting*: Class 12 is Impaired under the Plan.  Holders of Allowed Class A Interest in Parent are entitled to receive a Distribution under the Plan only after the payment in full of each Claim and Interest senior to Allowed Class A Interests in Parent, which contingency may never occur.  Accordingly, Holders of Allowed Class A Interests in Parent are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Class A Interests in Parent are not entitled to vote to accept or reject the Plan.

## C.     Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, the Final DIP Order, or any other Final Order of the Bankruptcy Court, nothing under the Plan shall affect the Debtors' or the Wind Down Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## D.     Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of determining acceptance of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E.     Voting Classes; Presumed Acceptance by Non-Voting Classes

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

## F.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XII hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to

a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**G.      Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.      Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Wind Down Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Separate Plans**

Subject in all respects to the terms of the Plan and the Confirmation Order, (1) the Plan shall be deemed to constitute a separate sub-plan for each of the Debtors and each Class of Claims against or Interests in the Debtors shall be deemed to constitute separate sub-Classes of Claims against and Interests in each of the Debtors, as applicable, (2) the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to each sub-plan, to the extent the same is determined to be so required by the Bankruptcy Code, (3) any Claim against any of the Debtors shall be treated as a Claim only against the applicable Debtor, as applicable, for purposes of voting and Confirmation, (4) such Claims shall be administered as provided in the Plan, (5) the portion of the GUC Reserve available for distributions to Holders of General Unsecured Claims against each Debtor shall be equal to the proportion that the Allowed General Unsecured Claims against each Debtor bears to the aggregate amount of Allowed General Unsecured Claims against all of the Debtors; and (6) the Debtors shall not, nor shall they be required to, separately solicit votes with respect to the each sub-plan, as a vote in favor of the Plan shall be deemed a vote in favor of each sub-plan to the extent any Holder is entitled to vote on more than one sub-plan.

Nothing provided in the Plan shall affect the obligation of each and every Debtor to pay all fees and charges assessed under section 1930 of chapter 123 of title 28 of the United States Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted.

**B.      Sources of Consideration for Plan Distributions**

The Debtors' Cash on hand, the Sale Proceeds, the Priority Non-Tax Claims Reserve, the Other Secured Claims Reserve, the Asserted Construction Lien Reserve, the GUC Reserve, the Debtors' rights under the Purchase Agreement, all Causes of Action not previously settled, released, or exculpated under the Plan, and the remainder of the Wind Down Debtors Assets, if any, shall be used to fund the distributions to Holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and subject to the terms provided herein.

As of the Effective Date, Equity Interests will not be registered under the Securities Act or listed on a national securities exchange, the Wind Down Debtors will not be reporting companies under the Exchange Act, the Wind Down Debtors will not be required to and will not file reports with the SEC or any other entity or party, and the Wind Down Debtors will not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date.

## C.      Wind Down Debtors

On or prior to the Effective Date, the Wind Down Debtors shall continue in existence for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible, (2) resolving Disputed Claims, (3) paying Allowed Priority Non-Tax Claims, Allowed Administrative Claims (including but not limited to Professional Claims), Allowed Other Secured Claims, and Allowed General Unsecured Claims (4) establishing and funding the Distribution Reserve Accounts, (5) enforcing and prosecuting claims, interests, rights, and privileges under the Wind Down Debtors Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (6) filing appropriate tax returns, (7) administering the Plan in an efficacious manner, and (8) preserving tax benefits for or on behalf of the Debtors.  The Wind Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (a) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (b) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Effective Date, the Wind Down Debtors Assets shall vest in the Wind Down Debtors for the purpose of liquidating the Estates and Consummating the Plan.  The Wind Down Debtors Assets shall be held free and clear of all liens, claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  Any distributions to be made under the Plan from the Wind Down Debtors Assets shall be made by the Plan Administrator or its designee(s). Notwithstanding anything herein to the contrary, the Wind Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

## D.      Plan Administrator

The Plan Administrator shall act for the Wind Down Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Wind Down Debtors shall be deemed to have resigned, and a representative of the Plan Administrator shall be appointed as the sole manager and sole officer of the Wind Down Debtors and shall succeed to the powers of the Wind Down Debtors' managers and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind Down Debtors as further described in Article VII hereof.

## E.      Corporate Action

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person.   All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have

21

occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

Upon the Effective Date or as soon as reasonably practicable thereafter, after making all distributions provided for under the Plan, the Debtors shall be deemed to have been dissolved and terminated.

Upon the Effective Date or as soon as reasonably practicable thereafter, the existing boards of directors and managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any all remaining officers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders of such Debtor, or the officers and directors of such Debtor. The directors, managers, and officers of the Debtors and the Plan Administrator, as applicable, shall be authorized to execute, deliver, File, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of this Article IV.E.

The authorizations and approvals contemplated by this Article IV.E shall be effective notwithstanding any requirements under applicable nonbankruptcy law.

## F.    Vesting of Assets in the Wind Down Debtors

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Sale Transactions), or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in the Debtors' Estate, all Causes of Action, and any property acquired by the Debtors under the Plan shall vest in the Wind Down Debtors, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided herein, the Wind Down Debtors may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## G.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Wind Down Debtors, and the officers and members of the boards of directors and/or managers thereof, as applicable, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

## H.    Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtors to the Wind Down Debtors or to any other person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, Equity Security, or other Interest in the Debtors or the Wind Down Debtors; (b) the Sale Transaction; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or

in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**I.**      **General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, including the Purchase Agreement, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness.  Subject to Article IX of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**J.**      **Preservation of Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Wind Down Debtors shall retain and may enforce all rights to commence and pursue any and all of the Retained Causes of Action, and the Wind Down Debtors' rights to commence, prosecute, or settle such Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  For the avoidance of doubt, and except as otherwise set forth herein or in any Order of the Bankruptcy Court, any and all Causes of Action of the Debtors against Jacob Companies, Inc., Donald R. Perry, Lexxcom LLC, the EB-5 Lender, David Finkelstein, American Immigration Group, LLC, and each of their respective Affiliates shall be Retained Causes of Action.

The Wind Down Debtors may pursue the Retained Causes of Action, as appropriate, in accordance with the best interests of the Wind Down Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or the Wind Down Debtors will not pursue any and all available Causes of Action against it.  The Debtor and the Wind Down Debtors expressly reserve all rights to prosecute any and all Retained Causes of Action against any Entity, except as otherwise expressly provided herein.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the Purchase Agreement or by a Bankruptcy Court order, the Wind Down Debtors expressly reserves all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Wind Down Debtors reserve and shall retain the Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the

23

Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtors may hold against any Entity shall vest in the Wind Down Debtors. The Wind Down Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

**K.        Closing the Chapter 11 Case**

Upon the occurrence of the Effective Date, the Plan Administrator shall be permitted to close all of the Chapter 11 Cases and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Banyan Cay Resort & Golf, LLC.

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.        Rejection of Executory Contracts and Unexpired Leases**

Each Executory Contract and Unexpired Lease that has otherwise not been assumed (by an exhibit to the Plan Supplement or by separate motion) shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described rejections.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

**B.        Indemnification**

On and as of the Effective Date, the Indemnification Provisions, as applicable, will be assumed and will survive the effectiveness of the Plan, and the Wind Down Debtors' governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Wind Down Debtors' current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of the Debtors as in effect of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Wind Down Debtors will not amend and/or restate their governance documents before or after the Effective Date to terminate or adversely affect any of the Wind Down Debtors' obligations to provide such indemnification rights or such directors', managers', officers', employees', or agents' indemnification rights.

24

**C.**      **Cure of Defaults and Objections to Cure and Assumption**

The Debtor or the Wind Down Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtors or the Wind Down Debtors to a counterparty must be filed and served on the Wind Down Debtors on or before thirty (30) days after the Effective Date.  If such Cure dispute is not resolved within seven (7) days of the Wind Down Debtors' receipt of such Cure dispute, the counterparty to the applicable assumed Executory Contract or Unexpired Lease shall timely file an objection with the Bankruptcy Court within seven (7) days.  **Any such request and/or objection that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Wind Down Debtors, without the need for any objection by the Wind Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Wind Down Debtors of the Allowed Cure; *provided*, *however*, that nothing herein shall prevent the Wind Down Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure.  The Wind Down Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Wind Down Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed.  **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

If there is any dispute regarding any Cure, the ability of the Wind Down Debtors to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Wind Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any and all Proofs of Claim (but, for the avoidance of doubt, not including Cures) based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtors or Wind Down Debtors (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

25

D.      **Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by the Debtors and any Executory Contracts and Unexpired Leases assumed by the Debtors may be performed by the Wind Down Debtors in the ordinary course of business.

E.      **Insurance Policies**

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

F.      **Compensation and Benefits**

As of the Effective Date, unless specifically rejected by a Final Order of the Bankruptcy Court or otherwise specifically provided for herein, all employment and severance policies, workers' compensation programs, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its present and former employees, officers, and directors, including all health care plans, disability plans, severance benefit plans, and incentive plans, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are deemed assumed under the Plan, and the Debtor's obligations under such plans, policies, and programs, shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, survive Confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code.  Any defaults existing under any of such plans, policies, and programs shall be cured promptly after they become known by the Wind Down Debtors.

G.      **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

H.      **Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Wind Down Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind Down Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      **Distributions on Account of Claims and Interests Allowed as of the Effective Date**

Except as otherwise provided herein, or in a Final Order, or as otherwise agreed to by the Debtors or the Wind Down Debtors (as the case may be) and the Holder of the applicable Claim or Interest, on the first Distribution Date, the Plan Administrator shall make initial distributions under the Plan on account of Claims and Interests Allowed as of the Distribution Record Date, on the Effective Date or as soon as practicable thereafter, subject to the Wind Down Debtors' right to object to Claims and Interests; *provided*,

*however*, that (1) Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.C of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

**B.**    **Rights and Powers of the Debtors and Plan Administrator**

1.    Powers of the Debtors and Plan Administrator

The Plan Administrator shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims made by the Plan Administrator shall be paid without any further notice to or action, order, or approval of the Bankruptcy Court in Cash from the Plan Administrator Expense Reserve if such amounts relate to any actions taken hereunder.

**C.**    **Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged.  Any dividends or other distributions arising from property distributed to Holders of Allowed Claims or Interests, as applicable, in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims or Interests in such Class.

**D.**    **Delivery of Distributions**

1.    Record Date for Distributions to Holders

On the Distribution Record Date, the Claims Register shall be closed and the Plan Administrator shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim or Interest is transferred and the Debtors have been notified in writing of such transfer less than ten (10) days

27

before the Effective Date, the Plan Administrator shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Distribution Process

The Plan Administrator shall make or facilitate all distributions required under the Plan.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to Holders of record as of the Distribution Record Date by the Plan Administrator, as appropriate: (1) to the address of such Holder as set forth in the books and records of the Debtors (or if the Debtors have been notified in writing, on or before the date that is ten (10) days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Plan Administrator has not received a written notice of a change of address on or before the date that is ten (10) days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  The Debtors, the Wind Down Debtors, and the Plan Administrator, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

3.    Compliance Matters

In connection with the Plan, to the extent applicable, the Wind Down Debtors, the Plan Administrator, and any other distributing party shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Wind Down Debtors, the Plan Administrator, and any other distributing party shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Wind Down Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

In the case of any distribution that is subject to withholding, the distributing party may request a Holder of an Allowed Claim to complete and return a Form W-8 or W-9, as applicable to each such Holder, and any other applicable forms.  The distributing party shall have the right not to make a distribution until its withholding obligation is satisfied pursuant to the preceding sentences.  If an intended recipient of a non-Cash distribution is required to provide or has agreed to provide the withholding agent with the Cash necessary to satisfy the withholding tax pursuant to this section and such person fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Wind Down Debtors and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Wind Down Debtors or their property.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

4.      Undeliverable and Unclaimed Distributions

a.      *Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim or Interest is returned to the Plan Administrator as undeliverable, no further distributions shall be made to such Holder unless and until the Plan Administrator is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date.  Undeliverable distributions shall remain in the possession of the Wind Down Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Wind Down Debtors or is cancelled pursuant to Article VI.D.4 of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

b.      *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of six (6) months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Wind Down Debtors.  Upon such revesting, the Claim or Interest of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

5.      Minimum; De Minimis Distributions

No Cash payment of less than $50.00, in the reasonable discretion of the Debtors or the Plan Administrator, as applicable, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

**E.      Claims Paid or Payable by Third Parties**

1.      Claims Paid by Third Parties

Subject to any right of subrogation, a Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or the Wind Down Debtors.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Wind Down Debtors on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the Wind Down Debtors to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon

satisfaction on the Claims Register a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

> 3.    Applicability of Insurance Policies

Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**F.    Setoffs**

Except as otherwise expressly provided for herein, the Wind Down Debtors, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtors or Wind Down Debtors, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Wind Down Debtors of any such claims, rights, and Causes of Action that the Wind Down Debtors may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtors or Wind Down Debtors (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**G.    Allocation Between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Effective Date.

## ARTICLE VII
## THE PLAN ADMINISTRATOR

**A.    The Plan Administrator**

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the businesses and affairs of the Debtors and the Wind Down Debtors, including: (1) liquidating, receiving, holding, and investing, supervising, and protecting the Wind Down Debtors Assets; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (3) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Wind Down

Debtors; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind Down Debtors; (7) administering and paying taxes of the Post- Effective Date Debtor, including filing tax returns; (8) representing the interests of the Wind Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind Down Debtors shall be terminated.

1.      Appointment of the Plan Administrator

The Plan Administrator shall be appointed by the Debtors. The Plan Administrator shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order. The Plan Administrator shall be the exclusive trustee of the Wind Down Debtors Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).

2.      Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtor from the Plan Administrator Expense Reserve upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Wind Down Debtors Assets, and shall not be subject to the approval of the Bankruptcy Court.

3.      Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and shall be paid out of the Plan Administrator Expense Reserve.

4.      Plan Administrator Expenses

All costs, expenses and obligations incurred by the Plan Administrator in administering this Plan, the Post- Effective Date Debtor, or in any manner connected, incidental or related thereto, in effecting distributions from the Wind Down Debtors thereunder (including the reimbursement of reasonable expenses) shall be a charge against the Wind Down Debtors Assets remaining from time to time in the hands of the Plan Administrator. Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

31

**B.      Wind Down**

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall: (1) cause the Debtors to comply with, and abide by, the terms of the Purchase Agreement; (2) file for each of the Debtors, except the Wind Down Debtors, a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable), including, but not limited to, any actions contemplated in Sections 275–283 of the DGCL; and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. For purposes of clause (2) of the preceding sentence, the Plan shall constitute a plan of distribution as contemplated in the DGCL. The certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders, members, Board of Directors, or equivalent of any Debtor. From and after the Effective Date, except with respect to Holdings as set forth herein, the Debtors (4) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (5) shall be deemed to have cancelled pursuant to this Plan all Interests, and (6) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, except with respect to Holdings as set forth herein, (7) notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

**C.      Exculpation; Indemnification; Insurance; Liability Limitation**

The Plan Administrator, all professionals retained by the Plan Administrator, and representatives of each of the foregoing, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post- Effective Date Debtor. The Plan Administrator may obtain, at the expense of the Wind Down Debtors and with funds from the Plan Administrator Expense Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind Down Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

**D.      Tax Returns**

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its

32

Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

**E.      Dissolution of the Wind Down Debtors**

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Wind Down Debtors shall be deemed to be dissolved without any further action by the Wind Down Debtors, including the filing of any documents with the secretary of state for the state in which the Wind Down Debtors is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind Down Debtors in and withdraw the Wind Down Debtors from applicable state(s).

## ARTICLE VIII
## RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR

**A.      Establishment of Reserve Accounts**

The Plan Administrator shall establish each of the Distribution Reserve Accounts (which, notwithstanding anything to the contrary contained in this Plan, may be affected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Plan Administrator).

**B.      Undeliverable Distribution Reserve**

1.      Deposits

If a Distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is otherwise unclaimed, such Distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such Distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article VIII.B.2 of this Plan.

2.      Forfeiture

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an Undeliverable or Unclaimed Distribution within three months after the first Distribution is made to such Holder shall be deemed to have forfeited its claim for such Undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for the Undeliverable or Unclaimed Distribution against any Debtor, any Estate, the Plan Administrator, the Wind Down Debtors, or their respective properties or assets. In such cases, any Cash or other property held by the Wind Down Debtors in the Undeliverable Distribution Reserve for distribution on account of such claims for Undeliverable or Unclaimed Distributions, including the interest that has accrued on such Undeliverable or Unclaimed Distribution while in the Undeliverable Distribution Reserve, shall become the property of the Wind Down Debtors, notwithstanding any federal or state escheat laws to the contrary, and shall be available for immediate distribution by the Wind Down Debtors; provided that any Undeliverable or Unclaimed Distribution on account of an Allowed General Unsecured Claim shall be transferred to the GUC Reserve.

33

3.      Disclaimer

The Plan Administrator and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim Holder, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Claim Holder provided that in his or her sole discretion, the Plan Administrator may periodically publish notice of Unclaimed Distributions.

4.      Distribution from Reserve

Within fifteen (15) Business Days after the Holder of an Allowed Claim satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an Undeliverable or Unclaimed Distribution (provided that satisfaction occurs within the time limits set forth in Article VIII.B.2 of this Plan), the Plan Administrator shall distribute out of the Undeliverable Distribution Reserve the amount of the Undeliverable or Unclaimed Distribution attributable to such Claim, including the interest that has accrued on such Undeliverable or Unclaimed Distribution while in the Undeliverable Distribution Reserve to the General Account.

**C.      Priority Non-Tax Claims Reserve**

On the Effective Date, the Plan Administrator shall establish the Priority Non-Tax Claims Reserve by depositing from the Wind Down Debtors Assets Cash in the amount of the Priority Claims Reserve Amount. The Priority Non-Tax Claims Reserve Amount shall be used to pay Allowed Priority Claims. If all or any portion of a Priority Claim shall become a Disallowed Claim, then the amount on deposit in the Priority Non-Tax Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Priority Non-Tax Claims Reserve, shall remain in the Priority non-Tax Claims Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Priority Non-Tax Claims Reserve is sufficient to ensure that all Allowed Priority Claims will be paid in accordance with the Plan.

**D.      Plan Administrator Expense Reserve**

On the Effective Date, the Plan Administrator shall deposit Cash from the Wind Down Debtors Assets into the Plan Administrator Expense Reserve in the amount of the Plan Administrator Expense Reserve Amount. The funds constituting the Plan Administrator Expense Reserve are to be used by the Plan Administrator solely to satisfy the expenses of the Wind Down Debtors and the Plan Administrator as set forth in the Plan and to pay Professional Fee Claims incurred but not yet paid as of the Effective Date; provided that all costs and expenses associated with the winding up of the Wind Down Debtors and the storage of records and documents shall constitute expenses of the Wind Down Debtors and shall be paid from the funds held in the Plan Administrator Expense Reserve. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.  Within ten (10) days after the closing of the sale of Lot 21 by the Plan Administrator, the Plan Administrator shall transfer the Plan Administrator Expense Reserve Replenishment Amount from the Other Secured Claims Reserve to the Plan Administrator Expense Reserve.

**E.      Other Secured Claims Reserve**

On the Effective Date, the Plan Administrator shall establish the Other Secured Claims Reserve by depositing from the Wind Down Debtors Assets Cash in the amount of the Other Secured Claims Reserve Amount. The Other Secured Claims Reserve Amount shall be used to pay Allowed Other Secured Claims. If all or any portion of an Other Secured Claim shall become a Disallowed Claim, then the amount on deposit in the Other Secured Claims Reserve attributable to such surplus or such Disallowed Claim,

including the interest that has accrued on said amount while on deposit in the Other Secured Claims Reserve, shall remain in the Other Secured Claims Reserve or be transferred out of the Other Secured Claims Reserve to the extent that the Plan Administrator determines necessary to ensure that the Cash remaining in the Other Secured Claims Reserve is sufficient to ensure that all Allowed Other Secured Claims will be paid in accordance with the Plan.

**F.      GUC Reserve**

On the Effective Date, the Plan Administrator shall establish and thereafter maintain the GUC Reserve in a separate, segregated account by depositing from the Wind Down Debtors Assets Cash in the amount of the GUC Reserve Amount. The GUC Reserve Amount shall be used to pay Allowed General Unsecured Claims held by GUC Holders. If all or any portion of a General Unsecured Claim shall become a Disallowed Claim, then the amount on deposit in the GUC Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the GUC Reserve, shall remain in the GUC Reserve and be distributed to holders of Allowed General Unsecured Claims held by GUC Holders in accordance with the Plan.

The Wind Down Debtors shall not have any reversionary or other interest in or with respect to any of the GUC Reserve Amount. Notwithstanding anything to the contrary herein, neither the Plan Administrator, the Wind Down Debtors nor any other party in interest shall be obligated to fund the GUC Reserve in an aggregate amount in excess of the GUC Reserve Amount, *provided, however*, that within ten (10) days after the closing of the sale of Lot 21 by the Plan Administrator, the Plan Administrator shall transfer the GUC Reserve Replenishment Amount from the Other Secured Claims Reserve to the GUC Reserve.  For the avoidance of doubt, any Allowed Prepetition Secured Loan Claim is senior to any General Unsecured Claim against Banyan Cay Resort & Golf, LLC; Banyan Cay Dev. LLC; and Banyan Cay Villas, LLC, and the Holder of any Allowed Prepetition Secured Loan Claim shall reserve all of its rights in such Debtors' property, including but not limited to Lot 21 and the GUC Reserve to the extent Distributions therefrom (or from the proceeds thereof) are necessary to pay any such unpaid Allowed Prepetition Secured Loan Claim after the Effective Date, and the Plan Administrator shall make such Distributions on account of such Allowed Prepetition Secured Loan Claim, all in accordance with the terms of the Plan.  To the extent any such Distributions are made, the ultimate recovery of Holders of General Unsecured Claims shall be reduced.

**G.      Asserted Construction Lien Reserve**

On the Effective Date, the Plan Administrator shall establish and thereafter maintain the Asserted Construction Lien Deficiency Reserve in a separate, segregated account by depositing from the Wind Down Debtors Assets Cash in the amount of the Asserted Construction Lien Reserve Amount. The Asserted Construction Lien Reserve shall be used to pay, on the Effective Date, Allowed Settled Asserted Construction Lien Claims held by Allowed Settled Asserted Construction Lien Claim Holders, as set forth in the Plan Supplement. After the full administration of Allowed Settled Asserted Construction Lien Claims, or in the event that the Confirmation order or the terms of the Plan establish the Alternative Combined Class 4 of Asserted Construction Lien Claims, the Asserted Construction Lien Reserve shall be used to pay Allowed Unsettled Asserted Construction Lien Claims or Allowed Asserted Construction Lien Claims, as applicable.

The Wind Down Debtors shall not have any reversionary or other interest in or with respect to any of the Asserted Construction Lien Deficiency Reserve Amount. Notwithstanding anything to the contrary herein, neither the Plan Administrator, the Wind Down Debtors nor any other party in interest shall be obligated to fund the Asserted Construction Lien Deficiency Reserve in an aggregate amount in excess of

the Asserted Construction Lien Deficiency Reserve Amount. For the avoidance of doubt, any Allowed Prepetition Secured Loan Claim is senior to any General Unsecured Claim against Banyan Cay Resort & Golf, LLC; Banyan Cay Dev. LLC; and Banyan Cay Villas, LLC, and the Holder of any Allowed Prepetition Secured Loan Claim shall reserve all of its rights in such Debtors' property, including but not limited to the Asserted Construction Lien Reserve to the extent Distributions therefrom (or from the proceeds thereof) are necessary to pay any such unpaid Allowed Prepetition Secured Loan Claim after the Effective Date, and the Plan Administrator shall make such Distributions on account of such Allowed Prepetition Secured Loan Claim, all in accordance with the terms of the Plan. To the extent any such Distributions are made, the ultimate recovery of Holders of Asserted Construction Lien Claims shall be reduced.

**H.    General Account and Distribution Reserve Account Adjustments**

As applicable, on the Effective Date, the Wind Down Debtors Assets (except for the Distribution Reserve Accounts) shall be transferred to the General Account. Beginning on the first six-month anniversary of the Effective Date and thereafter, on each three-month anniversary of the Effective Date, the Plan Administrator shall determine the amount of Cash required to adequately maintain each of the Distribution Reserve Accounts. Other than with respect to amounts held in the GUC Reserve and the Asserted Construction Lien Deficiency Reserve, if after making and giving effect to any determination referred to in the immediately preceding sentence, the Plan Administrator determines that any Distribution Reserve Account (i) contains Cash in an amount in excess of the amount then required to adequately maintain such Distribution Reserve Account, then at any such time the Plan Administrator shall transfer such surplus Cash to the General Account, or (ii) does not contain Cash in an amount sufficient to adequately maintain such Distribution Reserve Account, then at any such time the Plan Administrator shall transfer Cash from the General Account to the extent Cash is available in the General Account until the deficit in such Distribution Reserve Account is eliminated.

## ARTICLE IX
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**A.    Allowance of Claims and Interests**

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

**B.    Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Wind Down Debtors shall have the sole authority: (1) to file, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, from and after the Effective Date, the Wind Down Debtors shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with

respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to <u>Article IV.J</u> of the Plan.

## C.    Estimation of Claims

On and after the Effective Date, the Wind-Down Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## D.    Adjustment to Claims Without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Wind Down Debtors without the Wind Down Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

## E.    Time to File Objections to Claims

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date, as such may be extended pursuant to the terms of the Plan.

## F.    Interest

Unless (a) otherwise specifically provided for herein or by order of the Bankruptcy Court or (b) necessary to render a Claim Unimpaired as determined by a Final Order, postpetition interest shall not accrue or be paid on Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.

## G.    Distribution Pending and After Allowance

If an objection to a Claim or portion thereof is Filed as set forth in Article IX, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and

until such Disputed Claim becomes an Allowed Claim. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of a court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Plan Administrator shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

**H.      Single Satisfaction of Claims**

Holders of Allowed Claims may assert such Claims against the Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtors based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

**I.      Disallowance of Claims and Interests**

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Wind Down Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Wind Down Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**ARTICLE X**
**SETTLEMENT, INJUNCTION, AND RELATED PROVISIONS**

**A.      Injunction**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors or the Wind Down Debtors: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any**

38

kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

**B.      Exculpation**

The Exculpated Parties shall neither have, nor incur any liability to any Entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; provided, further that, the Buyer shall not be exculpated from the Buyer's obligations under the Purchase Agreements, the Sale Order, the Plan or any related documents or orders of the Bankruptcy Court. Notwithstanding anything herein to the contrary, nothing in this Plan or the Confirmation Order shall release, eliminate, exculpate, discharge or limit the rights and remedies that any Holder of a Claim or Interest may have against any non-Debtor person or entity for any act, omission, matter or thing that occurred prior to the Petition Date.

**C.      Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of <u>Article VI</u> of the United States Constitution, no Governmental Unit shall discriminate against the Wind Down Debtors, or any Entity with which the Wind Down Debtors has been or is associated, solely because the Wind Down Debtors were Debtors under chapter 11, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtors were granted or denied a discharge), or have not paid a debt that is dischargeable in the Chapter 11 Case.

**D.      Recoupment**

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Wind Down Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**E.      Document Retention**

On and after the Effective Date, the Wind Down Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind Down Debtors.

**F.      Reimbursement or Contribution**

If the Bankruptcy Court allows or disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such

Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

**G.** **Release of Liens**

Except (a) with respect to the Liens securing Other Secured Claims (depending on the treatment of such Claims) and Prepetition Secured Loan Claims, or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Wind Down Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind Down Debtors and its successors and assigns.

## ARTICLE XI
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

**A.** **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article XI.B of the Plan:

1. the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtors, and such order shall approve of and incorporate the terms of the Purchase Agreement;

2. the Sale Transactions shall have closed;

3. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

4. the Plan Administrator shall have been appointed;

5. the Distribution Reserve Accounts shall have been funded; and

6. the final version of the Plan Supplement, if any, and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan.

**B.** **Waiver of Conditions Precedent**

The Debtor may waive any of the conditions to the Effective Date set forth in Article XIArticle XI of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

**C.      Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

<h1 style="text-align:center">ARTICLE XII<br>MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN</h1>

**A.      Modification of Plan**

Effective as of the date hereof, (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtors or the Wind Down Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

**B.      Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or solicitation under Bankruptcy Rule 3019.

**C.      Withdrawal of Plan**

The Debtors reserve the right to withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan except the Purchase Agreement, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtors or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

<h1 style="text-align:center">ARTICLE XIII<br>RETENTION OF JURISDICTION</h1>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment

of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.     hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article X of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; (d) related to section 1141 of the Bankruptcy Code; or (e) without limiting the foregoing, any suits, adversary proceedings, or Causes of Action by the Debtors or the Wind Down Debtors, as applicable, against Jacob Companies, Inc., Donald R. Perry, Lexxcom LLC, the

42

EB-5 Lender, David Finkelstein, American Immigration Group, LLC, and each of their respective Affiliates;

11.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.    enter an order or Final Decree concluding or closing the Chapter 11 Case;

15.    enforce all orders previously entered by the Bankruptcy Court; and

16.    hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

### A.    Immediate Binding Effect

Subject to Article XI.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind Down Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### B.    Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Wind Down Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**D.        Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**E.        Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.        Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Wind Down Debtors shall be served on via delivery and electronic mail to:

| | |
|---|---|
| **The Debtors or the Wind Down Debtors** | **Banyan Cay Resort & Golf,** *et al.* <br> 1601 Jackson St <br> Suite 200 <br> Fort Myers, FL 33901 <br> Attn.: Gerard A. McHale, Jr. <br> Email: jerrym@thereceiver.net |
| **Counsel to the Debtors or the Wind Down Debtors** | **Pack Law** <br> 51 NE 24th Street <br> Suite 108 <br> Miami, FL 33137 <br> Attn.: Joseph Pack, Esq. and Jessey Krehl, Esq. <br> Email: joe@packlaw.com; jessey@packlaw.com |
| **United States Trustee** | **Office of the United States Trustee** <br> **for the Southern District of Florida** <br> 51 SW First Avenue <br> Room 1204 <br> Miami, FL 33130 <br> Attn.: Heidi A. Feinman <br> Email: heidi.a.feinman@usdoj.gov |

**G.        Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

44

**H.**     **Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**I.**     **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website, available via the Bankruptcy Court's CM/ECF system.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**J.**     **Non-Severability**

The provisions of the Plan (including its release, injunction, exculpation, and compromise provisions) are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

**K.**     **Closing of Chapter 11 Case**

The Wind Down Debtors shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**L.**     **Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Respectfully submitted,

**Banyan Cay Resort & Golf, LLC,** *et al.*

By:         */s/ Gerard A. McHale, Jr.*

Name:    Gerard A. McHale, Jr.
Title:     Chief Restructuring Officer

45