UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| Banyan Cay Resort & Golf, LLC, *et al.*[1] | ) |
|  | ) Case No. 23-12386 |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**OBJECTION OF THE GATTO PARTIES TO
THE LENDER'S EMERGENCY MOTION**

Domenic F. Gatto, Sr., Domenic J. Gatto, Jr. and Kim A. Pillar (collectively, the "Gatto Parties"), by and through their undersigned counsel, hereby submit this objection (the "Objection") in connection with *U.S. Real Estate Credit Holdings III-A, LP's Emergency Motion to (I) Compel Debtors to Comply with Paragraph 7 of the Sale Order; (II) Amend the Sale Order to Substitute Lender's APA; and (III) Authorize U.S. Real Estate Credit Holdings III-A, LP's Credit Bid* [Docket No. 308] (the "Emergency Motion")[2] filed by U.S. Real Estate Credit Holdings III-A, LP ("Lender"), and respectfully state as follows:

1. The Emergency Motion must be denied because the relief sought therein, namely an order compelling the Debtors to "comply with the Sale Order" and directing transfer of title to the Property to the Lender is not supported by the facts or the law.

---

[1] The "Debtors" are: (i) Banyan Cay Investment, LLC; (ii) Banyan Cay Mezzanine Borrower, LLC; (iii) Banyan Cay Resort & Golf LLC; (iv) Banyan Cay Dev. LLC; (v) Banyan Cay Villas, LLC; and (vi) Banyan Cay Maintenance, LLC. The address of the Debtors is 1900 Banyan Club Road, West Palm Beach, Florida 33401.

[2] Capitalized terms used but not otherwise defined herein shall be as defined in the Emergency Motion or in that certain Order approving bid procedures [Docket No. 109], as the case may be.

2.      To be clear, the Gatto Parties do not object to the Lender's ability to submit a credit bid for purposes of purchasing the Property.  But, the Gatto Parties do object to the Lender's attempt to completely ignore the requirements of section 363 of the Bankruptcy Code and the well-established law that mandates specific findings before any such bid is accepted and approved. *See, e.g.*, *Matter of Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (emphasis added) (citations and internal quotation marks omitted) ("When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold.  In general, a debtor must *demonstrate* that the proposed purchase price is the highest and best offer. In this matter, for reasons stated in the factual findings, the Debtor has not met its burden. There has been *no showing* that the marketing of the assets has been diligent or sufficient."); *In re 388 Route 22 Readington Holdings*, 2021 U.S. App. LEXIS 30892 (3d Cir. 2021) (finding that the bankruptcy court appropriately approved a sale under section 363 when it was presented with sufficient evidence that the property was sold for appropriate value, including that an auction process was held, well marketed, and generated sufficient interest in the property).

3.      Indeed, there is no basis for the Lender's request to simply "amend" the Sale Order and be "substituted" in as the winning bidder.  The Lender had a full and fair opportunity to submit a bid by the Bid Deadline in connection with the sale process that has now ended, but did not do so. Specifically, the Bid Procedures provided as follows:

> **2. Credit Bid**
> To the fullest extent permissible under Bankruptcy Code section 363(k), the Prepetition Secured Lender, ZJC, LLC and Bellefrau may credit, as a Qualified Bid or subsequent Bid at the Auction, in their sole and absolute discretion, any portion and up to the entire amount of their secured claim with respect to the portion of the Assets secured thereby (the "Credit Bid"). [Docket No. 109].

4.        For reasons known only to the Lender (whether deliberate or miscalculation), the Lender chose not to submit any such Credit Bid and, thus, never became a "Qualified Bidder" for purposes of the Auction.  To now suggest that it can transpose itself into the Sale Order and take title to the Property based upon a credit bid that (i) has not been tested in the market or otherwise shown to be "highest and best" or (ii) was not made at an auction/sale, is just plain wrong. The Debtors should not be compelled to accept the Lender's newly submitted credit bid unless and until such credit bid (i) complies with the Bankruptcy Code, and (ii) is shown to maximize estate value, be for fair value, and be supported by evidence. The current "credit bid" does no such thing.

5.        Importantly, the Lender's reliance upon paragraph 7 of the Sale Order to obtain the requested relief in the Emergency Motion is misplaced.  Paragraph 7 of the Sale Order simply acts as a reservation for the Lender to credit bid – which no one opposes. As the architect of many of the provisions of the Sale Order, the Lender is bound by the plain meaning of the drafting and cannot now distort the language for its own convenience.  Specifically, paragraph 7 provides, in relevant part, as follows:

> To the extent the Successful Bidder fails to close on or before the Closing Deadline, *the Prepetition Secured Lender reserves the right to credit bid pursuant to Section 363(k)* up to the full amount of its debt and to close on the Sale of the Assets pursuant to Section 363(k). (emphasis added) [Docket No. 183].

7.        However, a credit bid, by the express language of Bankruptcy Code section 363(k), must be at a sale: "at a sale … the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k).  There is currently no sale process in place for consideration of the Lender's newly submitted credit bid.

8. The record is clear that, here, the Sale closed and the Auction itself was terminated on June 11, 2023 [*see* Docket No. 158]. Prior to the Closing of the Sale or the termination of the Auction, Lender did not assert any Credit Bid. The Lender cannot now re-write paragraph 7 of the Sale Order to permit it to use its newly submitted credit bid to obtain title to the Property without establishing that the requirements of section 363 have been satisfied.

9. In this regard, the Emergency Motion is void of any evidence to support that the Lender's newly submitted credit bid is actually fair value, the "highest and best" or otherwise justifies the requested findings in the proposed order.[3] To be clear, the Lender's principal balance of their debt was approximately $83.6 million dollars. The Lender has accrued approximately $16 million in fees and interest during the life of the loan. The Lender now seeks to assert a credit bid of approximately $96.5 million (plus $400,000.00 for Lot 21, and other undefined consideration).

10. To make a finding that the "Credit Bid Transaction" is the highest and best offer, a Court must have evidence, yet none has been submitted with the Emergency Motion. The Lender failed to provide an affidavit, declaration or other indication or proof that its credit bid is reflective of the current market value for the Property. To the contrary, the Lender has instructed the Debtors and their real estate broker, Keen-Summit, to immediately cease all marketing and sale offers for the assets – impeding the Debtors' ability to appropriately market test the current credit bid. Moreover, there has been continued interest in the Property from known entities and

---

[3] For example, paragraph 4(g) of the proposed order seeks a finding that "[t]he Lender is purchasing the Property in good faith and is a good faith purchaser withing the meaning of section 363(m) of the Bankruptcy Code… ." and paragraph 4(h) of the proposed order seeks a finding that "[t]he consideration provided by the Lender for the Property under the Lender APA constitutes reasonably equivalent value and fair consideration… ."

the receipt of offers in the last couple of days in excess of the credit bid submitted by the Lender.[4] [5]

11. Under the current facts and circumstances, and taking into account the prior orders entered in these cases (including the Sale Order), the Debtors should be instructed to reopen the sale process using the Lender's Credit Bid Transaction as the opening bid for the Property. Importantly, while the Debtors and Lender have negotiated an extension to the debtor in possession financing that would fund these cases through August 31, 2023 [Docket No. 315], that is an arbitrary date, seemingly designed to force a transfer of title as quickly as possible. Given all of the efforts made by the Debtors and their professionals to date, the Court should set a timeline for submission of competing bids to a reasonable amount of time (*i.e.*, four (4) weeks), thereby giving only serious bidders the opportunity to come forward and submit bids.

12. It is axiomatic that, if a secured party wishes to obtain relief from a bankruptcy court, the secured lender should fund the necessary and actual expenses of the chapter 11 case. Here, the Lender is asking this Court for entry of an order authorizing it to take title to the Property under section 363 of the Bankruptcy Code and, therefore, it should be required to fund the administrative expenses of these cases. If the Lender does not agree to do so, the Court should dismiss these cases.

13. If, however, the Lender agrees to fund these cases, given that the Lender has submitted a credit bid of approximately $96.5 million (which is the same amount as the "Agreed Pre-Petition Principal Amount" established in the Final DIP Order [*see* Docket No. 131] (as

---

[4] To the extent that the Lender attempts to argue that the prior sale process serves as a market test for its current credit bid, such argument fails because the previously closed Auction which required a $105 million overbid cannot constitute a market test for the current approximate $96.5 million credit bid.
[5] The aggregate value of the recently received offers, when taken together with the approximate $10.5 million Estate Lots Sale, exceeds the Lender's newly submitted credit bid.

5

defined below)), the Lender has conceded that it is no longer oversecured. Accordingly, the Lender is not entitled to any further post-petition interest, costs or fees in these cases under section 506(b) of the Bankruptcy Code. *See, e.g., Orix Credit Alliance, Inc. v. Delta Res., Inc. (In re Delta Res., Inc.)*, 54 F.3d 722, 729 (11th Cir. 1995) (*per curiam*) (citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365 (1988)) ("Since this provision [506(b)] permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest."), *In re Electric Machinery Enterprises, Inc.*, 371 B.R. 549, 551 (Bankr. M.D. Fla. 2007) ("In *Timbers* the Supreme Court concluded that because section 506(b) permitted post-petition interest to be paid only of out an equity cushion, an undersecured creditor who had no such equity cushion fell within the general rule of disallowing post-petition interest."), *In re Broomall Printing Corp.*, 131 B.R. 32, 37 (Bankr. D. Md. 1991) (citation omitted) (noting that when postpetition interest accruals exceed the equity cushion, the oversecured creditor becomes undersecured and is no longer entitled to receive additional postpetition interest).

14. Last, the Gatto Parties strenuously disagree generally with the tone and characterization of the Emergency Motion. However, as the Gatto Parties have emphasized time and again, the focus of these cases should be the restructuring at hand, and any claims and issues among the various parties could, should, and will, be addressed at a later date. To that end, the Emergency Motion, and indeed the Lender APA attached thereto, notes that the Lender preserves its rights, claims and defenses against the Gatto Parties. As such, the Gatto Parties (1) similarly reserve all of their respective rights, claims and defenses against the Lender and (2) further ask that any order entered in connection with the Emergency Motion include the following language,

6

which appeared (in substantially the same form), in the final order authorizing the debtor in possession financing [Docket No. 131] (the "Final DIP Order"):

> "Notwithstanding anything to the contrary in this order, nothing herein shall waive, release or otherwise affect any of the rights, claims and defenses of Domenic J. Gatto, Jr., Kim A. Pillar and Domenic F. Gatto, Sr., on the one hand, and U.S. Real Estate Credit Holdings III-A, LP and its affiliates, including USREC Banyan Cay, LLC, on the other, against each other arising from or related to any of the Pre-Petition Loan Documents (as defined in the Final DIP Order)."

15. The Gatto Parties continue to review the Emergency Motion and related pleadings and reserve all rights and arguments related thereto.

Dated: August 14, 2023

*/s/ Eduardo F. Rodriguez*
Eduardo F. Rodriguez
Florida Bar No. 036423
**EFR LAW FIRM**
800 S. Douglas Road, Suite 350
Coral Gables, Florida 33134
Office: (305)340-0034
Mobile: (305)978-9340
Email: eddie@efrlawfirm.com

*– and –*

Gerard S. Catalanello, Esq. (admitted *pro hac vice*)
Stephen M. Blank, Esq. (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, New York 10016
Office: (212) 210-9400
Facsimile: (212) 210-9444
Email: Gerard.Catalanello@alston.com
         Stephen.Blank@alston.com

*Counsel to Domenic F. Gatto, Sr., Domenic J. Gatto, Jr. and Kim A. Pillar*