

**ORDERED in the Southern District of Florida on December 7, 2023.**

Erik P. Kimball
Chief United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                    Case No. 23-12386-EPK
                                                          Chapter 11
**Banyan Cay Resort & Golf, LLC**, *et al.*,              (Jointly Administered)

    **Debtor.**
_____/

### ORDER DENYING DEBTORS' MOTION REGARDING
### CLAIMS OF U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP

This matter came before the Court for hearing on December 6, 2023 on the *Debtors' (I)*
*Motion to Determine Deficiency Claim of U.S. Real Estate Credit Holdings III-A, LP, (II)*
*Motion to Clarify That No Outstanding Debtor in Possession Financing Obligations are Owed*
*Thereto, (III) Objection to Claim, and (IV) Request for Related Relief* [ECF No. 392] (the
"Motion"). The Court carefully considered the Motion, the objection [ECF Nos. 410 and 412]
filed by U.S. Real Estate Credit Holdings III-A, LP ("USREC"), and the arguments of counsel.

In the Motion, the debtors ask the Court to rule that when USREC credit bid to
purchase essentially all the debtors' real property and related personalty, that credit bid was
applied first to satisfy in full USREC's secured claim arising from debtor-in-possession
financing provided during this case and second to USREC's pre-petition secured claim. As a

result, the debtors ask the Court to confirm that USREC's post-petition loan is no longer outstanding in any regard, to determine that the remainder of USREC's pre-petition claim is an unsecured deficiency claim, and to liquidate that claim.

When the debtors filed their chapter 11 petitions in February and March 2023, they were in the process of developing and constructing a 200-acre resort and golf complex in West Palm Beach, Florida called Banyan Cay Resort & Golf Club. The debtors filed these jointly administered chapter 11 cases to complete the marketing and sale of the entire development under 11 U.S.C. § 363. The debtors retained the investment banking firm who had been assisting the debtors in marketing their assets prior to bankruptcy. ECF Nos. 11, 88. The debtors then filed a comprehensive motion asking the Court to approve a sale procedure including a stalking-horse contract with Westside Property Investment Company, Inc. ("Westside") and an auction. ECF No. 31. Westside agreed to a cash purchase price of $102,100,000. On May 1, 2023, the Court entered an order approving sale and bidding procedures as requested by the debtors. ECF No. 109 (the "Sale Procedures Order").

Because the debtors had substantial ongoing expenses and insufficient operating income, the debtors sought approval of debtor-in-possession financing as well as authority to use cash collateral. USREC was the debtors' principal pre-bankruptcy secured lender with filed claims exceeding $97 million. *E.g.*, Claim Nos. 29 and 30; Case No. 23-12386. To facilitate the marketing and sale of the debtors' assets in a controlled manner, USREC agreed to permit use of its cash collateral and also to provide post-petition financing to the debtors. On May 18, 2023, the Court entered its final order approving the use of cash collateral and additional borrowing from USREC. ECF No. 131 (the "DIP Financing Order").

In the DIP Financing Order, the debtors and USREC agreed that USREC's "Prepetition Obligations" were $96.5 million plus 6.25% interest from the petition date and plus costs and attorneys' fees from March 24, 2023. The debtors agreed that this claim was

secured by nearly all their assets. USREC agreed to permit the debtors to use its cash collateral in exchange for replacement liens and monthly interest payments. USREC agreed to provide up to $3.8 million in new financing during the bankruptcy case, secured by a priming lien on substantially all the debtors' assets, by a lien on certain previously unencumbered property, and by liens junior to certain other secured creditors on a relatively small portion of the debtors' assets.

In addition to replacement liens and liens securing the new advances, the Court approved the parties' agreement that USREC would have the benefit of administrative expenses senior to every other administrative expense both as adequate protection of USREC's pre-petition liens and as additional protection for its post-petition advances, subject only to a limited carve-out for fees owing to the United States Trustee, fees owing to the Clerk of Court, and certain professional fees. The super-priority administrative expense granted to USREC as adequate protection for its pre-petition liens protects against any diminution of its pre-petition collateral, including as a result of the debtor-in-possession financing provided by USREC.[1]

As early as the DIP Financing Order, the Court approved the debtors' agreement that USREC retain the right to credit bid up to the full amount of its pre-petition and post-petition obligations. Paragraph 25 of the DIP Financing Order provides that the "DIP Lender and Prepetition Secured Lender shall be permitted, but not compelled, to credit bid up to the full amount of the (x) Pre-Petition Obligations, plus (y) the DIP Obligations in connection with

---

[1] Although the section of the DIP Financing Order providing super-priority administrative expense status as further protection for USREC's post-petition loans states that the administrative expense is payable from all pre-petition and post-petition property of the debtors including specifically avoidance actions and their proceeds, that language is unnecessary as the grant of super-priority status under section 364(c)(1) automatically includes such rights. The super-priority administrative expense granted to USREC in the DIP Financing Order is the same whether applied to its pre-petition or post-petition loans.

any sale of the Collateral." ECF No. 131 ¶ 25.  This provision is unique among the documents material to this matter as it uses two separate defined terms for USREC.  The term DIP Lender refers to USREC in its capacity as post-petition lender.  The term Prepetition Secured Lender refers to USREC in its capacity as pre-petition lender.  Paragraph 25 of the DIP Financing Order confirms that USREC may separately credit bid each of its secured claims.

The Court reiterated USREC's right to credit bid in the Sale Procedures Order.  ECF No. 109 ¶ 13 and Ex. B-1 ¶ B.2.  The bid procedures attached to and approved by the Sale Procedures Order specifically provide that USREC may credit bid "any portion and up to the entire amount of their secured claim."  It is clear from the terms and structure of the bid procedures that USREC's credit bid right includes both its pre-petition and post-petition secured claims.  The use of the phrase "any portion" is consistent with paragraph 25 of the DIP Financing Order, confirming that USREC may credit bid its pre-petition and post-petition secured claims independently as it sees fit.

Because no interested party was willing to bid more than Westside, the debtors did not conduct an auction.  ECF No. 158.  On June 26, 2023, the Court entered a final order approving the sale of substantially all the debtors' assets.  ECF No. 183 (the "Sale Order").  Paragraph 7 of the Sale Order states, in pertinent part:  "To the extent the Successful Bidder fails to close on or before the Closing Deadline, the Prepetition Secured Lender[2] reserves the right to credit bid pursuant to Section 363(k) up to the full amount of its debt and to close on the Sale of the Assets pursuant to Section 363."

At the last moment, Westside backed out of the transaction and abandoned its deposit.  USREC filed a motion to compel the debtors to complete the sale to USREC pursuant to

---

[2] In the Sale Order, the term "Prepetition Secured Lender" denotes USREC both in its capacity as pre-petition lender and in its capacity as debtor-in-possession lender during the bankruptcy.  *See, e.g.*, ECF No. 183 at 11-12.

paragraph 7 of the Sale Order.  ECF No. 308.  USREC's motion included a form of proposed

asset purchase agreement (the "USREC Purchase Agreement").  The debtors consented to

USREC's motion to compel.  ECF No. 318.  Following a hearing, on August 18, 2023 the Court

entered an order in a form agreed by the debtors approving the sale of substantially all of the

debtors' assets to a nominee of USREC pursuant to the credit bid provision in paragraph 7 of

the Sale Order.  ECF No. 322 (the "Substitute Sale Order").   Among other things, the

Substitute Sale Order directs the debtors to "promptly execute" the USREC Purchase

Agreement in substantially the form attached to USREC's motion to compel.  The Court

approved the credit bid transaction set forth in the USREC Purchase Agreement.  To

facilitate an additional month of operations until closing of the sale to USREC, the Court

approved the parties' agreement to continued use of USREC's cash collateral.  ECF No. 321.

Paragraph 2.4 of the USREC Purchase Agreement, approved by the Court as part of

the Substitute Sale Order, provides:

> Purchase Consideration.  In consideration for the sale, transfer and delivery of
> the Assets, Purchaser shall pay to Sellers, as credit bid to reduce the amount
> of the Foreclosure Judgment as permitted by the Sale Order: (i) the Credit Bid
> Amount; (ii) the Lot 21 Credit Bid Amount; plus (iii) the assumption by
> Purchaser of any Assumed Liabilities, as set forth on Schedule 7 hereof (the
> "Purchase Price").  In no event shall the Credit Bid Amount be payable by
> Purchaser in cash.

The term "Foreclosure Judgment" refers to USREC's pre-petition judgment against the

debtors, the basis for its pre-petition secured claim.  The term "Credit Bid Amount" means

$96.5 million, the agreed principal amount of USREC's pre-petition secured claim.  The

term "Lot 21 Credit Bid Amount" means $400,000 specifically allocated to USREC's post-

petition secured claim.  Schedule 7 to the USREC Purchase Agreement is blank so there

were no "Assumed Liabilities".

Paragraph 2.4 of the USREC Purchase Agreement indicates that most of the credit

bid presented by USREC—$96.5 million—was allocated to USREC's pre-petition secured

claim.  Only $400,000 of the post-petition secured claim was used to credit bid on assets that were collateral for the post-petition financing but did not secure the pre-petition financing.  This left a substantial portion of USREC's debtor-in-possession financing outstanding after completion of the credit bid sale.[3]  Not only did the debtors specifically consent to USREC's motion to compel, which included the draft USREC Purchase Agreement with paragraph 2.4 quoted above, but the debtors and USREC tendered a proposed order, which the Court entered, approving the USREC Purchase Agreement and directing the debtors to execute and perform that agreement.

At the hearing on the Motion, the debtors argued that paragraph 2.4 of the USREC Purchase Agreement is vague.  The Court disagrees.  By stating that USREC made a "credit bid to reduce the amount of the Foreclosure Judgment as permitted by the Sale Order" and then setting out three components of that credit bid, the parties agreed that the credit bid was to be applied to USREC's pre-petition obligations except as provided otherwise in that paragraph.  The "Lot 21 Credit Bid Amount" is explicitly allocated to USREC's post-petition claim, appropriately so as that credit bid is for property that was not collateral for USREC's pre-petition claim.  It is no accident that the principal Credit Bid Amount is $96.5 million, the exact amount agreed by the debtors in the DIP Financing Order as USREC's outstanding pre-petition principal.  In the USREC Purchase Agreement, the debtors and USREC agreed that most of USREC's credit bid would be allocated to its pre-petition secured claim, and the Court approved that agreement.

---

[3] USREC claims that $1,068,850.03 (plus accruing interest) remains outstanding on its post-petition debtor-in-possession financing, which amount USREC says reflects reductions for the Westside deposit paid to USREC ($3,063,000) and the $400,000 Lot 21 Credit Bid Amount, and the addition of accrued but unpaid interest.  ECF No. 412.  This Order is without prejudice to any objection to the amount of USREC's remaining post-petition claim.

In the present Motion, the debtors argue that despite their own agreement in the USREC Purchase Agreement, USREC's credit bid should first be applied to its post-petition secured claim, completely satisfying that claim, and then to its pre-petition claim, leaving only a portion of the pre-petition claim as an unsecured deficiency claim having no priority of payment. The debtors argue that to apply USREC's credit bid primarily to its pre-petition claim, leaving part of the post-petition claim outstanding, violates the well-settled distribution priority scheme presented by the Bankruptcy Code. The debtors argue that a secured creditor with more than one secured claim is required to credit bid its claims in the order of priority, starting with the most senior claim. The debtors argue that to permit USREC to preserve part of its post-petition claim would fly in the face of precedent in this circuit prohibiting the granting of liens on post-petition assets to secure pre-petition obligations.

The debtors' arguments fail for several reasons.

When this Court entered the Substitute Sale Order [ECF No. 322] it approved the USREC Purchase Agreement and directed the debtors to execute and perform that agreement. Paragraphs 2, 3, 4(d), 4(j), 4(k), and 5 of the Substitute Sale Order incorporate the USREC Purchase Agreement and state that it is binding on the debtors, the bankruptcy estate, and creditors. The USREC Purchase Agreement thus obtained the weight of an order of this Court. The debtors did not object to any provision of the USREC Purchase Agreement and consented to the relief granted in the Substitute Sale Order. No one, including the debtors, appealed the Substitute Sale Order, which became final long ago. The debtors thus waived any right to object to the Substitute Sale Order or the USREC Purchase Agreement. Even if the credit bid allocation set out in paragraph 2.4 of the USREC Purchase Agreement was contrary to law, as the debtors argue, it is binding on the debtors. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269-76 (2010); *Travelers*

*Indem. Co. v. Bailey*, 557 U.S. 137, 151-154 (2009) (absent lack of due process, an un-appealed order of the bankruptcy court is binding even if the court lacked subject matter jurisdiction to enter it).  The debtors' Motion must be denied on this ground alone.

Even if the debtors were not bound by their own agreement with USREC, approved by this Court in a final, un-appealed order, the law the debtors present does not compel the relief they request.  While the debtors cite several decisions for the relatively obvious point that junior lienholders cannot credit bid on an estate asset unless provision is made for senior lienholders, the debtors cite no reasoned law requiring a creditor with more than one secured claim to credit bid those claims in a particular order.  For the proposition that a secured creditor with more than one secured claim must credit bid its claims in the order of priority, the debtors cite a single, unreported decision, *In re Spillman Development Group, Ltd*., No. 05-14415-FRM, 2007 Bankr. LEXIS 2151, at *8 (Bankr. W.D. Tex. June 19, 2007).  The *Spillman* court provides nothing to support its bald statement on the issue.  That the distribution of assets from this bankruptcy estate must comply with the typical priority adhering in bankruptcy, as this Court has confirmed in several orders in this case, does not necessarily require a secured creditor with multiple liens on the same property to credit bid senior liens first.

Nor is the Court swayed by the debtors' argument that to permit USREC to credit bid its pre-petition claim ahead of the claim arising from debtor-in-possession financing somehow violates the prohibition against so-called cross-collateralization in *Shapiro v. Saybrook Manufacturing Co. (In re Saybrook Manufacturing Co.)*, 963 F.2d 1490, 1493-96 (11th Cir. 1992).  In *Saybrook*, the 11th Circuit ruled, in the context of post-petition financing provided by a pre-petition secured lender, that it is not permissible for the debtor to grant a lien on post-petition assets to secure existing pre-petition obligations.  The Court

does not agree that *Saybrook* applies in connection with credit bidding as the debtors argue. The 11th Circuit did not hold, nor is the Court aware of any other reasoned decision holding, that a secured creditor with multiple liens on the same collateral must marshal its secured claims when it is the only lienholder on such assets. But even if *Saybrook* somehow does apply in this context, the allocation of USREC's credit bid in paragraph 2.4 of the USREC Purchase Agreement seems more consistent with that decision. The debtors and USREC agreed that USREC would credit bid the entire agreed pre-petition claim, $96.5 million, against the pre-petition collateral, and $400,000 of the post-petition claim against collateral obtained solely as a result of the post-petition debtor-in-possession financing. In contrast, if the debtors' view is correct USREC would have been required to credit bid its entire post-petition claim against not only the collateral it acquired post-petition but also against its pre-petition collateral. Again, the Court does not believe *Saybrook* applies here at all. But if it did, the debtors' approach appears less aligned with *Saybrook* than the credit bid allocation the debtors actually agreed to and this Court approved.

Finally, even if the debtors were right, they likely would not achieve what they hope. The debtors' primary complaint is that the credit bid allocation they agreed to in the USREC Purchase Agreement leaves USREC with the benefit of the super-priority administrative expense it obtained as part of the debtor-in-possession financing, and thus a first priority right to any estate assets including proceeds from avoidance actions and other suits. Because USREC claims a substantial portion of its debtor-in-possession financing remains outstanding, that means every dollar that comes into the estate must be paid to USREC until it is paid in full. But even if USREC had credit bid its entire post-petition claim, leaving no debtor-in-possession claim outstanding, USREC would still have the benefit of the same super-priority administrative expense as adequate protection for its pre-petition liens. Because that adequate protection right covers diminution in the value of USREC's

pre-petition collateral as a result of the imposition of the post-petition financing, and because it appears unlikely that USREC's pre-petition collateral increased in value during this bankruptcy case, USREC would have an adequate protection claim benefitted by a super-priority administrative expense probably equivalent to the outstanding post-petition amount it now holds as a result of the agreed credit bid allocation.  In other words, the debtors' proposed allocation of the credit bid to USREC's post-petition claim would simply leave more of the pre-petition claim outstanding and unpaid, a direct result of the imposition of the post-petition financing, thus requiring adequate protection possibly in the same amount.  In either case, USREC is entitled to use its super-priority administrative expense to make up the shortfall.  That means USREC is entitled to be paid from all estate recoveries, no matter the source, until its claims are paid in full.

For the foregoing reasons, the Court ORDERS and ADJUDGES that the *Debtors' (I) Motion to Determine Deficiency Claim of U.S. Real Estate Credit Holdings III-A, LP, (II) Motion to Clarify That No Outstanding Debtor in Possession Financing Obligations are Owed Thereto, (III) Objection to Claim, and (IV) Request for Related Relief* [ECF No. 392] is DENIED.

# # #

Copy to Joseph Pack, Esq.

*Attorney Pack is to provide a copy of this Order to all relevant parties and file a certificate of service.*